# EXHIBIT A

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>MECKLENBURG COUNTY<br><br>CAPITALA GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COLUMBUS ADVISORY GROUP LTD, d/b/a NovaFund Advisors; and NOVAFUND ADVISORS, LLC,<br><br>Defendants. | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>18 CVS 8247<br><br><br><br>**ORDER AND OPINION ON MOTION TO DISMISS OR STAY FIRST AMENDED COMPLAINT** |

1.  This action is one of two pending lawsuits arising out of a contract for investment placement services. In early 2016, Plaintiff Capitala Group, LLC ("Capitala") engaged an entity identified as "NovaFund Advisors, a Division of Columbus Advisory Group LTD," to prepare marketing materials for a new investment fund, make introductions to potential investors, and assist with closing the fund. Capitala alleges that the services it actually received were either inferior or illusory. It filed this suit in May 2018 against Columbus Advisory Group LTD ("Columbus") for breach of contract and related claims.

2.  About a month later, NovaFund Advisors, LLC ("NovaFund") sued Capitala in federal court in Connecticut for breach of the same contract. NovaFund alleges a case of mistaken identity—that it, not Columbus, was the placement agent under the contract and that the two companies are now and always have been separate entities. NovaFund also claims that it fully performed all requested services but that Capitala has refused to pay a substantial portion of the contractual fee. Capitala denies this

but, faced with an assertion that it sued the wrong party, has amended its complaint in this action to name both Columbus and NovaFund as defendants.

3. The competing lawsuits remain in their early stages, and neither side believes it should be compelled to litigate in the other's preferred forum. Here, Columbus and NovaFund ask the Court to dismiss all claims for lack of personal jurisdiction or to stay this case pending the outcome of the federal litigation in Connecticut. They also seek to dismiss most claims on the merits for failure to state a claim for relief. For the reasons given below, the Court concludes that it lacks personal jurisdiction over Columbus and NovaFund, dismisses the amended complaint on that basis, and denies all other requested relief as moot.

> *Robinson, Bradshaw & Hinson, P.A., by Robert W. Fuller and Pearlynn G. Houck, for Plaintiff Capitala Group, LLC.*
>
> *Nelson Mullins Riley & Scarborough LLP, by Thomas G. Hooper and Ramona Farzad, for Defendants Columbus Advisory Group LTD and NovaFund Advisors, LLC.*
>
> *Shipman & Goodwin LLP, by Alison P. Baker and Jill M. O'Toole, for Defendant NovaFund Advisors, LLC.*

Conrad, Judge.

## I.
## DISCUSSION

4. When a defendant challenges the exercise of personal jurisdiction, the Court "may decide the matter based on affidavits." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217 (2000). If the parties submit dueling affidavits, "the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (citation, alteration,

and quotation marks omitted); *see also Embark, LLC v. 1105 Media, Inc.*, 231 N.C. App. 538, 542, 753 S.E.2d 166, 170 (2014). "[T]he plaintiff bears the burden of proving, by a preponderance of the evidence, grounds for exercising personal jurisdiction over a defendant." *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68, 698 S.E.2d 757, 761 (2010); *accord Parker v. Town of Erwin*, 243 N.C. App. 84, 97, 776 S.E.2d 710, 721 (2015).

5. The parties have submitted dueling affidavits and additional exhibits in support of and in opposition to Defendants' motion. The Court held a hearing on October 3, 2018, at which all parties were represented by counsel. Having considered all relevant matters, the Court finds the following facts by a preponderance of the evidence.

### A. Findings of Fact

6. Capitala is a North Carolina-based company that manages investment funds and advises institutional investors and others. (*See* Aff. of Joseph B. Alala, III ¶ 4, ECF No. 32.2 ["Alala Aff."].) Defendants are based elsewhere. Columbus is a New York corporation based in New York, (Aff. of Michael Murphy ¶ 3, ECF No. 26.2 ["Murphy Aff."]), and NovaFund is a Delaware limited liability company based in Connecticut, (Aff. of Bryan D. Kelley ¶ 3, ECF No. 26.1 ["Kelley Aff."]).

7. The parties first became acquainted in December 2015 or January 2016. (*See* Alala Aff. ¶ 10; Kelley Aff. ¶ 4.) With plans to raise capital for a new private credit fund (known as Fund V), Capitala began searching for a placement agent to assist with marketing and related services. (*See* Alala Aff. ¶ 7.) Acting on a referral,

Capitala reached out to Bryan Kelley, NovaFund's managing director, to gauge his interest in providing placement services. (*See* Alala Aff. ¶ 10; Kelley Aff. ¶¶ 2, 4.) That conversation led to an in-person meeting in New York between Kelley and Joseph Alala, III, the chairman and chief executive officer of Capitala. (Kelley Aff. ¶ 5.) They discussed "moving forward with a formal relationship" but "did not discuss the terms of an engagement." (Kelley Aff. ¶ 5.)

8. In February 2016, there was a second in-person meeting, this time in Charlotte, North Carolina. The accounts of that meeting vary. In his affidavit, Kelley states that the "meeting was short and was simply to make in-person introductions to the rest of Capitala's team." (Kelley Aff. ¶ 6.) Alala, on the other hand, says "Kelley asked for a three hour meeting" and made a "pitch[]" to Capitala. (Alala Aff. ¶¶ 11, 12.) The Court need not decide which of those descriptions is correct, but does find that no terms of any engagement were discussed at the meeting. (*See* Alala Aff. ¶ 11; Kelley Aff. ¶ 6.)

9. At some point after the Charlotte meeting, Capitala began contract negotiations by requesting a written proposal. (*See* Kelley Aff. ¶ 7.) The bulk of the negotiations took place via telephone and e-mail, followed by a meeting in New York in April 2016 to work out final details. (*See* Alala Aff. ¶ 12; Kelley Aff. ¶¶ 7, 8.) A written term sheet ("Term Sheet") was then signed in May 2016. (*See* Kelley Aff. Ex. 1 ["Term Sheet"].)

10. At the hearing, Capitala's counsel suggested that the copy of the Term Sheet offered into evidence by Defendants is not authentic. Capitala believes that the Term

Sheet had only two signature lines—one for NovaFund and one for Capitala. Defendants' exhibit, however, includes an additional, separate line for Columbus. (*See* Term Sheet 3.) This is a serious charge, yet Capitala has not produced a copy of the Term Sheet to support its allegations, and Alala's affidavit does not dispute the authenticity of Defendants' copy. The Court therefore finds, based on the unrebutted evidence, that the Term Sheet provided by Defendants is authentic. (*See* Kelley Aff. ¶ 10.) The Court further finds, again based on the unrebutted evidence, that Columbus was the last party to sign the Term Sheet and did so in New York. (*See* Kelley Aff. ¶ 11; Murphy Aff. ¶ 8.)

11. There is also some uncertainty about the relationship between Columbus and NovaFund. Capitala states that it "retained Columbus with the understanding and based on representations that Columbus was a registered broker dealer and that NovaFund Advisors was a division of Columbus." (Pl.'s Br. in Opp'n 2, ECF No. 32 ["Opp'n"].) Columbus is, in fact, a registered broker-dealer under the Securities Exchange Act of 1934 (though NovaFund is not). (Alala Aff. ¶ 9; Murphy Aff. ¶ 4.) And the Term Sheet does identify the placement agent as "NovaFund Advisors, a Division of Columbus Advisory Group LTD." (Term Sheet 1.) Other evidence, though, shows that Columbus and NovaFund are separate entities. (*See* Kelley Aff. ¶ 3.) Based on all the evidence, the Court finds that Columbus and NovaFund are separate entities but that NovaFund relied on Columbus's registration as a broker-dealer to provide services to Capitala. (*See* Kelley Aff. ¶ 3; Murphy Aff. ¶ 5.)

5

12. As stated in the Term Sheet, NovaFund was to perform its services worldwide, "mak[ing] best efforts to place partnership interests in Fund V with North American, European, Australian and Asian investors." (Term Sheet 1.) NovaFund's services included assisting with investment presentations, marketing materials, and closing the fund. (Term Sheet 1.) The Term Sheet includes a schedule that carves out certain investors known to Capitala, including some based in North Carolina. (*See* Term Sheet, Schedule 1; Alala Aff. ¶ 16.) Read as a whole, the Term Sheet neither requires NovaFund to perform services in North Carolina nor prohibits it from doing so.

13. NovaFund eventually contacted around 500 potential investors and arranged meetings with a smaller subset. (Kelley Aff. ¶¶ 14, 15.) The marketing materials used to solicit these investors include references to Capitala's location in North Carolina. (*See* Alala Aff. ¶¶ 20, 21.) But Kelley states, without rebuttal, that "NovaFund never solicited North Carolina investors, provided information regarding the Fund to North Carolina investors, met with investors in North Carolina, or otherwise provided any services within the state." (Kelley Aff. ¶ 16; *see also* Kelley Aff. ¶¶ 9, 15.) Based on this evidence, the Court finds that no services were actually performed in North Carolina.

14. Before the relationship between Capitala and Defendants deteriorated, Kelley and another representative of NovaFund made one additional visit to North Carolina in October 2016. (Alala Aff. ¶ 17.) The purpose of that visit was to play golf

in a Capitala-sponsored outing. (Alala Aff. ¶ 17.) The visit did not relate to Fund V or involve the performance of services under the Term Sheet.

B. Conclusions of Law

15. "Personal jurisdiction refers to the Court's ability to assert judicial power over the parties and bind them by its adjudication." *In re A.B.D.*, 173 N.C. App. 77, 83, 617 S.E.2d 707, 711 (2005) (citation and quotation marks omitted). The "primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State," including the burden to the defendant of litigating away from home. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017). As the United States Supreme Court has explained, though, "restrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.'" *Id.* at 1780 (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

16. This Court's jurisdiction is constrained both by statute and by the federal due process clause. *See* N.C. Gen. Stat. § 1-75.4; *Bruggeman*, 138 N.C. App. at 614–15, 532 S.E.2d at 217. In most cases, the analysis collapses into one inquiry because the North Carolina Supreme Court has construed section 1-75.4 liberally "to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977); *see also Cambridge Homes of N.C. L.P. v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 412, 670 S.E.2d 290, 295 (2008). Because the

due-process analysis is dispositive in this case, the Court does not separately address its authority under section 1-75.4.

17. Due process requires that a defendant "have certain minimum contacts" with this State "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Although courts "have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction," only the latter is at issue here. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction exists when "the controversy arises out of the defendant's contacts with the forum state." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986). It "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations*, 564 U.S. at 919 (internal citation and quotation marks omitted).

18. There are many relevant factors—the quantity and quality of a nonresident defendant's contacts with this State, the convenience to the parties, and the interests of this State in adjudicating the dispute. *See, e.g.*, *Cooper v. Shealy*, 140 N.C. App. 729, 734, 537 S.E.2d 854, 857–58 (2000). But even "direct and intentional" contacts with this State sometimes do not give rise to jurisdiction. *Cambridge Homes*, 194 N.C. App. at 413, 670 S.E.2d at 296. "Nonresident defendants must engage in acts by which they purposefully avail themselves of the privilege of conducting activities

8

within the forum State to support a finding of minimum contacts." *Id.* (citation omitted).

19. After careful consideration, the Court concludes that this requirement of purposeful availment has not been met. Although Defendants entered into a contract with a North Carolina entity (Capitala), that contract is not, standing alone, sufficient to give rise to jurisdiction. Courts have long held that a defendant who enters into a contract with a party in another State does not "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *see also Lulla v. Effective Minds, LLC*, 184 N.C. App. 274, 278–79, 646 S.E.2d 129, 133–34 (2007); *CFA Med., Inc. v. Burkhalter*, 95 N.C. App. 391, 396, 383 S.E.2d 214, 217 (1989). Rather, the parties' negotiations or course of dealing must establish some "substantial connection" with the forum State. *CFA Med.*, 95 N.C. App. at 394, 383 S.E.2d at 216.

20. That connection does not exist here. First, it is undisputed that *Capitala* initiated contact with Defendants. (*See* Alala Aff. ¶ 10; Kelley Aff. ¶ 4.) This is "a critical factor in assessing whether" Defendants purposefully availed themselves of the privilege of conducting activities within North Carolina. *Cambridge Homes*, 194 N.C. App. at 413, 670 S.E.2d at 296; *see also Tejal Vyas, LLC v. Carriage Park, Ltd. P'ship*, 166 N.C. App. 34, 40, 600 S.E.2d 881, 886 (2004); *CFA Med.*, 95 N.C. App. at 395, 383 S.E.2d at 216; *Curvcraft, Inc. v. J.C.F. & Assocs., Inc.*, 84 N.C. App. 450, 452, 352 S.E.2d 848, 849 (1987).

21. Capitala insists that, after it made first contact, "the tables turned" and NovaFund pursued the business opportunity. (Opp'n 14.) Based on the record before it, the Court disagrees. The evidence shows that Capitala began contract negotiations by requesting a written proposal from NovaFund. (*See* Kelley Aff. ¶ 7.) That NovaFund responded favorably to Capitala's overtures does not support the exercise of jurisdiction. "Any contact by defendants with [Capitala] in North Carolina resulted from an initiation and request by [Capitala]." *Tejal Vyas*, 166 N.C. App. at 40, 600 S.E.2d at 887.

22. Second, the parties negotiated largely through remote means, via telephone and e-mail. (Alala Aff. ¶ 12; Kelley Aff. ¶ 7.) The only in-person negotiations took place in New York, not North Carolina. (Alala Aff. ¶ 12; Kelley Aff. ¶ 8.) And when it came time to finalize the Term Sheet, both Defendants executed it outside of North Carolina—NovaFund at its offices in Connecticut, and Columbus at its offices in New York. (Kelley Aff. ¶ 11; Murphy Aff. ¶ 8.) This, too, weighs against finding purposeful availment. *See, e.g.*, *CFA Med.*, 95 N.C. App. at 396, 383 S.E.2d at 217; *see also WLC, LLC v. Watkins*, 454 F. Supp. 2d 426, 440 (M.D.N.C. 2006).

23. Third, the terms of the contract between the parties have no strong connection to North Carolina. The Term Sheet has no choice-of-law provision or forum-selection clause, for example. In addition, it does not require Defendants to perform services within North Carolina. Rather, it broadly states that NovaFund would target investors in North America, Europe, Australia, and Asia. (*See* Term Sheet 1.) "Where performance under a contract was intended to be performed outside

of the forum in question, courts have been reluctant to assert personal jurisdiction over non-resident defendants." *WLC*, 454 F. Supp. 2d at 438; *see also Lulla*, 184 N.C. App. at 279–80, 646 S.E.2d at 133–34; *CFA Med.,* 95 N.C. App. at 396, 383 S.E.2d at 217; *Modern Globe, Inc. v. Spellman*, 45 N.C. App. 618, 624–25, 263 S.E.2d 859, 863–64 (1980), *disc. review denied*, 300 N.C. 373, 267 S.E.2d 677 (1980).

24.  Fourth, regardless of what the Term Sheet contemplated, NovaFund did not actually perform services for Capitala in North Carolina. Following the execution of the Term Sheet, NovaFund contacted nearly 500 potential investors from its home office in Connecticut, none of which were located in North Carolina. (*See* Kelley Aff. ¶ 14.) Neither Defendant returned to North Carolina to meet with investors or performed any other services here—another factor weighing against the exercise of personal jurisdiction. *See, e.g.*, *Lulla*, 184 N.C. App. at 279–80, 646 S.E.2d at 133–34; *CFA Med.*, 95 N.C. App. at 396, 383 S.E.2d at 217; *Modern Globe*, 45 N.C. App. at 624–25, 263 S.E.2d at 863.

25.  This is not to say that Defendants have no contacts with North Carolina. Rather, the Court concludes that the few contacts Defendants do have with this State are not of the type or quality sufficient to show purposeful availment. Representatives of NovaFund made two trips to North Carolina during the relationship with Capitala. The first came *after* Capitala initiated contact with NovaFund, and no contract terms were discussed. The second trip had a social purpose (to play golf) and was not related to the Term Sheet. Although physical entry into the State is certainly a relevant contact, neither of these visits establishes

purposeful availment. *See, e.g.*, *Le Bleu Corp. v. Standard Capital Grp., Inc.*, 11 F. App'x 377, 380, 381 (4th Cir. 2001) (affirming dismissal for lack of personal jurisdiction though defendants had twice visited North Carolina); *WLC*, 454 F. Supp. 2d at 440 (granting motion to dismiss though defendants had visited North Carolina).

26. Likewise, although representatives of NovaFund sent e-mails and made telephone calls to Capitala's North Carolina offices, these e-mails and "phone calls, like contracts, do not automatically establish the necessary minimum contacts with [North Carolina] for the establishment of personal jurisdiction." *Miller v. Szilagyi*, 221 N.C. App. 79, 92, 726 S.E.2d 873, 883 (2012). These communications largely related to the negotiations over the Term Sheet, and "an exchange of communications between two parties, one of whom is located in the forum state, in furtherance of a contract, will not generally constitute purposeful contact with the forum state for purposes of jurisdiction." *WLC*, 454 F. Supp. 2d at 436–37. This is especially so when, as here, a nonresident defendant's contacts are made in response to "an initiation and request by" the plaintiff. *Tejal Vyas*, 166 N.C. App. at 40, 600 S.E.2d at 887. Defendants' contacts are therefore distinguishable from communications that courts have found sufficient to support jurisdiction in other cases. *See Brown v. Ellis*, 363 N.C. 360, 363, 678 S.E.2d 222, 224 (2009) (finding jurisdiction on the basis of daily phone calls to facilitate tortious relationship); *Carson v. Brodin*, 160 N.C. App. 366, 372–73, 585 S.E.2d 491, 496 (2003) (finding jurisdiction where contract negotiations took place in North Carolina and contract was executed here).

27. In short, Capitala initiated contact with Defendants, the Term Sheet was negotiated remotely and executed by Defendants outside North Carolina, Defendants performed all services under the Term Sheet outside North Carolina, and representatives of NovaFund made only two visits to North Carolina, neither of which involved negotiating the Term Sheet or performing services under it. Taken together, these facts do not demonstrate that Defendants purposefully availed themselves of the privilege of conducting activities in this State. The Court therefore concludes that it may not exercise personal jurisdiction over Columbus or NovaFund.

28. It also bears mention that many of the actions and contacts that are relevant to this analysis are those of NovaFund, not Columbus. Capitala has not pressed any theory—such as an agency or alter ego theory—that would permit the Court to impute NovaFund's contacts to Columbus. Accordingly, even assuming the evidence supported the exercise of jurisdiction as to NovaFund, the Court would separately conclude that Columbus has not purposely conducted activity in this forum that would subject it to jurisdiction here.

## II.
## CONCLUSION

29. After a careful analysis, the Court concludes that it lacks personal jurisdiction over Columbus and NovaFund. The Court therefore **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction. To the extent that Defendants seek dismissal on other grounds or to stay the case under N.C. Gen. Stat. § 1-75.12, the requests are **DENIED** as moot.

**SO ORDERED**, this the 3rd day of December, 2018.

    /s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
  for Complex Business Cases

14