# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| NOVAFUND ADVISORS, LLC, |
|     Plaintiff, |
|     v. |
| CAPITALA GROUP, LLC, |
|     Defendant. |

No. 3:18-cv-1023 (MPS)

## RULING ON MOTION TO DISMISS

Plaintiff NovaFund Advisors, LLC ("NovaFund") brings this suit against Defendant Capitala Group, LLC ("Capitala") in connection with Capitala's alleged breach of an agreement whereby NovaFund agreed to assist Capitala with its capital-raising efforts. NovaFund asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b. (ECF No. 1 (hereinafter "Compl.").) Capitala now moves to dismiss the complaint for lack of personal jurisdiction, improper venue, lack of subject-matter jurisdiction under the *Colorado River* doctrine, and failure to state a claim. (ECF No. 24.) For the following reasons, Capitala's motion to dismiss is DENIED.

## I.     Factual Background

### A.     Allegations

The facts below are drawn from the complaint and, where relevant, documents incorporated therein or of which the Court may take judicial notice.

NovaFund is a Delaware limited liability company focused on delivering capital-raising and advisory services to private fund managers. (Compl. ¶ 1.) Its principal place of business is in Darien, Connecticut and its members are Connecticut residents. (*Id.*) Until November 2016, NovaFund was a division of non-party Columbus Advisory Group, LTD. ("Columbus"), a member

of FINRA/SIPC.  (*Id.*)  After that, NovaFund became a division of non-party MD Global Partners, LLC, also a member of FINRA/SIPC.  (*Id.*)  Capitala is a North Carolina limited liability company with a principal place of business in North Carolina and whose members are not citizens of Delaware or Connecticut.  (Compl. ¶ 2.)

In May 2016, NovaFund and Capitala entered into an agreement by which Capitala retained NovaFund as its exclusive placement agent in connection with raising capital for Capitala Private Credit Fund V, LP (hereinafter, "Fund V").  (Compl. ¶ 5.)  The agreement, titled a "Term Sheet Proposal" (hereinafter the "Term Sheet"), set forth the following definition of the "Advisor" who would provide these services:

> **Advisor:**     NovaFund Advisors, a Division of Columbus Advisory Group LTD, member FINRA and SIPC (collectively, "NovaFund").

(ECF No. 31-1 at 2.)[1]  Under the Term Sheet, NovaFund agreed to make best efforts to place partnership interests in Fund V with North American, European, and Asian investors, called the "Target Investors," as well as providing other specified services.  (*Id.*)  In exchange, the Term Sheet obligated Capitala to pay NovaFund compensation in several ways.  First, Capitala was required to pay a monthly retainer fee, up to certain limits not relevant here.  (ECF No. 31-1 at 3; Compl. ¶ 14.)  Second, Capitala was required to pay a "Success Fee," or a certain percentage of the amount of equity capital that any Target Investor committed to Fund V or a "separately managed account." (Compl. ¶ 7; ECF No. 31-1 at 3.)  And third, Capitala was also required to pay a "Tail Fee" based on a percentage of capital commitments from Target Investors that closed into

---

[1] Because the Term Sheet is relied on and cited throughout the Complaint, I conclude that it is integral to the complaint and so I draw from its terms directly when appropriate.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (recognizing exception for "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls. . . .").

Fund V to a subsequent Capitala-sponsored successor fund with a "substantially similar [investment] strategy." (*Id.*) The parties agreed that no fee would be payable on certain carved out investors, but only up to $125 million in commitments. (*Id.*) The Term Sheet provided that among those carved out investors were "investors previously known to Capitala," which were set forth in an attached schedule. (ECF No. 31-1 at 3, 5–7.) The Term Sheet was signed by representatives of three entities: "NovaFund Advisors, "Capitala Group LLC," and "Columbus Advisory Group, Ltd." (ECF No. 31-1 at 4.)

On April 24, 2017, Capitala and NovaFund entered into an "Advisors Addendum" (the "Addendum"). (Compl. ¶¶ 10–12; ECF No. 31-3 at 2.)[2] In the Addendum, the parties agreed that Capitala could retain additional placement agents "focused on non-North American limited partners," and that capital commitments obtained from those jurisdictions would generally not entitle NovaFund to a Success Fee. (*Id.*) Nonetheless, Capitala reaffirmed its obligations to pay a Success Fee to NovaFund for capital commitments obtained from non-North American investors originally solicited by NovaFund prior to the execution of the Addendum. (*Id.*) In addition, the parties agreed that either party could terminate the relationship on or after September 1, 2017, but that Capitala would nonetheless owe NovaFund a Success Fee "on capital commitments from investors introduced to Capitala by Nova either through conference calls or in-person meetings." (*Id.*) The Addendum does not mention Columbus Advisory Group, Ltd. and is signed by Brian Kelley, who is a member and Managing Director of NovaFund, and Joseph B. Alala, who is Chairman and Chief Executive Officer ("CEO") of Capitala. (ECF No. 31-3 at 2; *see also* ECF No. 31-7, Declaration of Bryan D. Kelley ("Kelley Decl."); ECF No. 25-1, Declaration of Joseph B. Alala, III ("Alala Decl.").)

---

[2] I likewise conclude that the Addendum is integral to the complaint and consider its terms.

NovaFund performed its obligations under the Term Sheet, both originally and as amended by the Addendum (collectively, the "Agreement"). (Compl. ¶ 8, 13.) However, Capitala engaged in conduct that "frustrated or prevented" NovaFund's performance. (Compl. ¶ 14.) In particular, Capitala's Chairman and CEO, Joseph B. Alala, threatened to fire and sue NovaFund in early 2017, which had a negative effect on fund-raising activities for the first part of 2017. (*Id.*) Capitala also became non-communicative (making it difficult to arrange meetings with potential investors), stopped paying the required monthly retainer to NovaFund, and, in one instance, excluded NovaFund from a meeting with a consultant related to potential capital commitments for Fund V. (*Id.*)

Although Capitala announced an "anchor closing" on Fund V in September 2016, it refused to have additional closings for Fund V. (Compl. ¶¶ 9, 15.) Instead, Capitala abandoned Fund V in favor of a new venture, Capital Specialty Lending Corp. (hereinafter, the "Successor Fund"), which had a substantially similar investment strategy as Fund V. (Compl. ¶ 16.) NovaFund alleges that Capitala's refusal to have additional closings on Fund V was in bad faith and for the purpose of depriving NovaFund of the benefit of the Agreement. (Compl. ¶ 15.) Capitala also took capital commitments from Target Investors, which were "obtained, sourced, and/or identified by NovaFund," and "caused those Target Investors to commit capital to the Successor Fund." (Compl. ¶ 19.) However, Capitala never formally terminated the parties' relationship and refused to pay NovaFund for its services under the Agreement. (Compl. ¶¶ 17, 18.)

NovaFund asserts four claims against Capitala. (Compl. ¶¶ 21–44.) NovaFund's first count for breach of contract alleges that Capitala's conduct breached the Agreement and that NovaFund is entitled to the full amount of either the Success Fee or the Tail Fee due under the Agreement. (Compl. ¶¶ 21–23.) NovaFund's second count alleges that Capitala's bad faith

conduct breached the implied covenant of good faith and fair dealing in the Agreement. (Compl. ¶¶ 24–27.) NovaFund's third count is for unjust enrichment, asserted in the alternative. (Compl. ¶¶ 28–34.) NovaFund alleges that Capitala benefitted from NovaFund's introductions to investors and potential investors in Capitala funds and by virtue of the capital commitments NovaFund obtained for Fund V and Successor Fund. (Compl. ¶¶ 29–30.) NovaFund alleges that it was harmed because "it expended time and resources laboring for the benefit of Capitala," and Capitala refused to pay. (Compl. ¶ 32.) NovaFund's fourth count alleges a violation of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b. (Compl. ¶¶ 35–44.) NovaFund alleges the following conduct as the basis for CUTPA claim: that "Capitala, in bad faith and without justification, wrongfully abandoned [Fund V]" (Compl. ¶ 37); that "[u]nbeknownst to NovaFund, Capitala formed the Successor Fund while NovaFund was continuing its performance under the Agreement" and "Capitala later falsely told NovaFund that the Successor Fund did not have the same or similar investment strategy as [Fund V]" (Compl. ¶ 38); that Capitala's failure to pay any fees to NovaFund "in connection with capital commitments to the Successor Fund. . . constitutes a purposeful effort to deprive NovaFund of the fees to which it is entitled" (Compl. ¶ 39); and finally that "Capitala's false statements were purposefully made to dissuade NovaFund from enforcing its rights under the Agreement." (Compl. ¶ 40.) NovaFund seeks compensatory damages, lost profits, punitive damages, attorney's fees and costs under CUTPA, and statutory pre-judgment and post-judgment interest. (Compl. at 8.)

B.    **The North Carolina Action**

On May 17, 2018, Capitala filed a lawsuit in North Carolina Superior Court, Mecklenburg County, Case No. 18-CVS-8247 (hereinafter the "North Carolina action"), seeking a declaratory judgment that Capitala is not required to pay fees to Columbus under the Agreement and damages

resulting from Columbus's breach of contract, unfair trade practices, and fraud. (ECF No. 25-1, Alala Decl. ¶ 19; ECF No. 25-2.) NovaFund filed the suit in this Court against Capitala on June 15, 2018. (ECF No. 1.) As a result, Capitala filed an amended complaint in the North Carolina action on July 5, 2018, adding NovaFund as a defendant and revising its claims to address NovaFund in the alternative. (ECF No. 25-1, Alala Decl. ¶ 22; ECF No. 25-4.) On December 3, 2018 (after briefing on this motion was complete), the court in the North Carolina action dismissed Capitala's amended complaint for lack of personal jurisdiction over NovaFund and Capitala. (ECF No. 42-1.)

### C. The Parties' Affidavits

The following facts are relevant for the purposes of the Court's personal jurisdiction and venue determination, and so I draw them from the affidavits submitted by the parties, construing doubts in plaintiff's favor.

Capitala's primary headquarters are in North Carolina, and it does not have an office or property in Connecticut. (ECF No. 25-1, Alala Decl. ¶ 6; ECF No. 34-1, Second Declaration of Joseph B. Alala, III ("Alala Reply Decl.") ¶ 6.) Columbus is a corporation organized under the laws of the State of New York with its principal place of business in New York, New York. (ECF No. 31-8, Declaration of Michael Murphy ("Murphy Decl.") ¶ 3.) All of NovaFund's employees are in Connecticut, and all of NovaFund's corporate records are in Connecticut. (ECF No. 31-7, Kelley Decl. ¶ 30.) NovaFund and Columbus are, and have always been, separate entities. (ECF No. 31-7, Kelley Decl. ¶ 3; ECF No. 31-8, Murphy Decl. ¶ 5; *but see* ECF No. 25-1, Alala Decl. ¶ 11 ("The Term Sheet entered with Columbus represents that 'NovaFund' was a division of Columbus.").)

In the first week of January 2016, a Capitala Vice President contacted a Managing Director of NovaFund at its Darien, Connecticut office. (ECF No. 31-7, Kelley Decl. ¶ 4.) They and other representatives from NovaFund and Capitala met in New York the following week and at Capitala's offices in North Carolina in February 2016 to discuss a relationship, but not the terms of any engagement or agreement. (ECF No. 31-7, Kelley Decl. ¶¶ 5–6; *but see* ECF No. 34-1, Alala Reply Decl. ¶¶ 4–5 (disputing the substance of these meetings).) Capitala then reached out to NovaFund and requested a draft written proposal, which NovaFund sent from its Connecticut offices. (ECF No. 31-7, Kelley Decl. ¶ 7.) Over the next several months, NovaFund negotiated the terms of the agreement with Capitala by telephone and email from NovaFund's Connecticut offices. (*Id.*) Representatives from Capitala and NovaFund again met in New York in April 2016 to discuss the final details for the engagement and marketing strategy for Fund V. (ECF No. 31-7, Kelley Decl. ¶ 8.) Columbus did not participate in any of the negotiations between NovaFund and Capitala regarding the Term Sheet. (ECF No. 31-8, Murphy Decl. ¶ 7.) When the parties executed the Term Sheet in May 2016, NovaFund executed the Term Sheet first from its offices in Connecticut, Capitala executed next, and Columbus signed the Term Sheet last from its New York offices. (ECF No. 31-7, Kelley Decl. ¶ 11; ECF No. 31-8, Murphy Decl. ¶ 8.) At the time the Term Sheet was executed, Columbus was providing broker-dealer services to NovaFund. (ECF No. 31-7, Kelley Decl. ¶ 17; ECF No. 31-8, Murphy Decl. ¶ 9.) Representatives from Columbus never met anyone from Capitala at any point. (ECF No. 31-8, Murphy Decl. ¶ 10.)

In November 2016, NovaFund switched broker-dealers from Columbus to MD Global Partners, LLC. (ECF No. 31-7, Kelley Decl. ¶ 18; ECF No. 31-8, Murphy Decl. ¶ 14.) Capitala signed a letter from "NovaFund Advisors, LLC" dated November 21, 2016 agreeing to this change

and affirming that all other parts of the Agreement remained the same. (ECF No. 31-2 at 2; ECF No. 31-7, Kelley Decl. ¶ 18.)

Once engaged, NovaFund began performing the services under the Agreement and contacted over 500 potential investors, approximately 15 of whom were based in Connecticut. (ECF No. 31-7, Kelley Decl. ¶ 14.) Virtually all of the services NovaFund performed under the Agreement were performed from NovaFund's offices in Darien, Connecticut. (ECF No. 31-7, Kelley Decl. ¶ 15.) During the engagement, Capitala representatives visited Connecticut at least twice to meet with representatives of a potential investor that NovaFund had introduced to it. (ECF No. 31-7, Kelley Decl. ¶ 29; *but see* ECF No. 34-1, Alala Reply Decl. ¶ 12 (disputing whether NovaFund made the introduction to this investor).) Capitala and NovaFund also met with two other potential investors in Connecticut introduced by NovaFund: one in Glastonbury, Connecticut and one in Norwalk, Connecticut. (ECF No. 31-7, Kelley Decl. ¶ 29; *but see* ECF No. 34-1, Alala Reply Decl. ¶ 11, 13 (disputing meeting with Norwalk investor).) Capitala also met with NovaFund in NovaFund's offices in Connecticut on at least two occasions. (ECF No. 31-7, Kelley Decl. ¶ 29; *but see* ECF No. 25-1, Alala Decl. ¶ 16 (asserting that only one meeting took place).) Capitala paid NovaFund's monthly retainer fee to Columbus in New York, as directed in NovaFund's invoice. (ECF No. 34-1, Alala Reply Decl. ¶ 9; *see also* ECF No. 34-5 at 2 (invoicing fees to Columbus in New York).) Finally, while the Agreement was in effect, Capitala also engaged in numerous telephone conversations and sent numerous emails NovaFund in Connecticut, including an April 2018 email informing NovaFund that it was not owed any fees as a result of the Successor Fund. (ECF No. 31-7, Kelley Decl. ¶¶ 21, 29.)

## II. Legal Standard

### A. Rule 12(b)(1)

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court construes the complaint liberally and accepts all factual allegations as true. *See Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

### B. Rule 12(b)(2)

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the "plaintiff bears the burden of showing the court has jurisdiction over the defendant," and the "burden is apportioned based on how far the case has progressed." *Corning Inc. v. Shin Etsu Quartz Products Co.*, 242 F.3d 364, at *2 (2d Cir. 2000) (summary order). "The district court has considerable procedural leeway in deciding 12(b)(2) motions, and it may accept affidavits if it so chooses." *Id.* (internal quotation marks omitted). "[W]here . . . the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction." *Id.* "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker v. Am. Telecasting, Inc.*, 261 F. 3d 196, 208 (2d Cir. 2001); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("But where the issue is addressed on affidavits, all allegations

are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").

### C.    Rule 12(b)(3)

A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of personal jurisdiction. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). The "plaintiff has the burden of showing that venue in the forum district is proper." *MacCallum v. New York Yankees P'ship*, 392 F. Supp. 2d 259, 262 (D. Conn. 2005) (citation omitted). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co.*, 417 F.3d at 355 (citation omitted). "In analyzing whether the plaintiff has made the requisite *prima facie* showing that venue is proper, we view all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

### D.    Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), I take the plaintiff's factual allegations in the complaint "to be true and draw[] all reasonable inferences in" its favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"In adjudicating a motion to dismiss [under Rule 12(b)(6)], a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citation omitted). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls . . . ." *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157.

In addition, "[m]atters judicially noticed by the District Court are not considered matters outside the pleadings." *In re Thelen LLP*, 736 F.3d at 219 (citation omitted). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 (citation omitted).

## III. Discussion

Capitala moves to dismiss the complaint for lack of subject-matter jurisdiction under the *Colorado River* doctrine, lack of personal jurisdiction, improper venue, and failure to state a claim. I address these arguments in turn, starting with the Court's subject-matter jurisdiction.

### A. *Colorado River* Abstention

Capitala argues that the Court should exercise its discretion to dismiss this action under Rule 12(b)(1) under the doctrine of abstention authorized by *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (ECF No. 25 at 22–28.) But *Colorado River* applies only where "state and federal courts exercise concurrent jurisdiction simultaneously." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 120 (2d Cir. 1999). Capitala's argument for abstention is premised exclusively on the existence of the North Carolina action against Columbus and

NovaFund.  (ECF No. 25 at 22–28; ECF No. 34 at 5–7.)  NovaFund filed a notice on the docket attaching a decision by the judge in that case granting NovaFund's and Columbus' motion to dismiss for lack of personal jurisdiction because neither defendant in that case "purposefully availed" itself of the privilege of conducting activities in North Carolina under the Due Process Clause.  (*See* ECF No. 42-1 at 10–14.)  The North Carolina case therefore appears to have been dismissed in its entirety.  (ECF No. 42-1 at 14.)  "[S]everal courts have held when the parallel action in state court is dismissed, the abstention doctrine is inapplicable."  *Dunne v. Doyle*, No. 3:13-CV-01075 VLB, 2014 WL 3735287, at *9 (D. Conn. July 28, 2014); *see also Fisher v. O'Brien*, No. 09 CV 42 CBA LB, 2010 WL 1269793, at *4 (E.D.N.Y. Mar. 9, 2010) (denying defendants' *Colorado River* argument as moot as where the parties settled the underlying state action), *report and recommendation adopted*, No. 09-CV-42 CBA LB, 2010 WL 1286365 (E.D.N.Y. Mar. 30, 2010).  Accordingly, *Colorado River* abstention is not applicable and the Court DENIES Capitala's motion to dismiss under Rule 12(b)(1).

### B.      Personal Jurisdiction

Capitala next argues that the action should be dismissed under Fed. R. Civ. P. 12(b)(2) because there is no personal jurisdiction over Capitala in Connecticut.  (ECF No. 25 at 9.)  "In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state. If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process."  *Whitaker*, 261 F.3d at 208 (internal citations and quotation marks omitted).

### 1.      Connecticut's Long-Arm Statute

NovaFund argues that is unsettled whether foreign LLCs are governed by Connecticut's long-arm statute for corporations, Conn. Gen. Stat. § 33-929(f), or for partnerships, Conn. Gen.

Stat. § 52-59b. (ECF No. 31 at 16–17.) Following Connecticut's leading case on the issue, I have previously applied the partnership long-arm statute to foreign LLCs. *See Protegrity Corp. v. TokenEx, LLC*, No. 3:13-CV-1719 MPS, 2015 WL 222163, at *2 (D. Conn. Jan. 14, 2015) (analyzing personal jurisdiction over a foreign LLC under Conn. Gen. Stat. § 52–59b); *see also Matthews v. SBA, Inc.*, 149 Conn. App. 513, 546 (2014) (holding that Connecticut's "general long arm jurisdiction provision, § 52–59b, rather than [Connecticut's] corporation specific long arm provision, § 33–929, applies to foreign LLCs"), *cert. denied*, 312 Conn. 917 (2014).[3] I see no reason to adopt a different approach here.

Conn. Gen. Stat. § 52–59b grants jurisdiction over any foreign entity covered by the statute that:

> (1) Transacts any business within the state;
>
> (2) commits a tortious act within the state. . .; [or]
>
> (3) commits a tortious act outside the state causing injury to person or property within the state. . . [and satisfies other requirements]

Conn. Gen. Stat. § 52-59b(a). Capitala argues that it is not subject to jurisdiction under any of the three provisions. (ECF No. 25 at 8–15; ECF No. 34 at 2–4.) Because I conclude that NovaFund has made a *prima facie* showing that Capitala transacts business within Connecticut under § 52-59b(a)(1), I need not reach the alternative grounds.

---

[3] NovaFund notes that Connecticut's recently amended Uniform Limited Liability Act does not have a long-arm provision specific to LLCs, and no Connecticut Appellate or Supreme Court case on the issue have been decided since the amendment. (ECF No. 31 at 16 n.1.) *See also Confectionary Arts Int'l, LLC v. CK Prod. LLC*, No. 3:16CV2015 (JBA), 2018 WL 1141357, at *3 (D. Conn. Mar. 1, 2018) (post-amendment case observing that "Connecticut's long-arm statute applicable to non-resident individuals, Section 52-59(b), has also been held to apply to non-resident LLCs.").

NovaFund must satisfy two requirements to establish jurisdiction under Conn. Gen. Stat. § 52-59b(a)(1). *Protegrity Corp.*, 2015 WL 222163, at *2. First, Novafund "must make a *prima facie* showing that [Capitala] 'transacts any business' in Connecticut." *Id.* And second, NovaFund's "cause of action against [Capitala must arise] from [Capitala's] business activity in this state." *Id.* "[A]lthough the term 'transacts any business' is not defined by statute," the Connecticut Supreme Court has "construed the term 'to embrace a single purposeful business transaction.'" *Ryan v. Cerullo*, 282 Conn. 109, 119 (2007) (quoting *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981)). Courts nonetheless "do not resort to a rigid formula" but instead "balance considerations of public policy, common sense, and the chronology and geography of the relevant factors" in determining whether the plaintiff's cause of action arose from the defendant's transaction of business within this state. *Zartolas*, 184 Conn. at 477.

NovaFund has made a *prima* facie showing that Capitala transacts business in Connecticut. Because the claims here arose out of contract, the parties cite variations on the following factors to determine whether a contract can serve as the basis for personal jurisdiction:

> (i) whether the defendant has an on-going contractual relationship with a [Connecticut] corporation; (ii) whether the contract was negotiated or executed in [Connecticut], and whether, after executing a contract with a [Connecticut] business, the defendant has visited [Connecticut] for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted) (interpreting "transacts any business" subsection of New York statute upon which the Connecticut long-arm statute was modeled)[4]; *see Dunne,* 2014 WL 3735619, at *7

---

[4] *See Protegrity Corp.*, 2015 WL 222163, at *2 n.4 (observing that the Connecticut Supreme Court "find[s] pertinent" judicial interpretations of the New York statute).

(applying variant of factors to Conn. Gen. Stat. § 52–59b(a)(1)); *Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 490 (D. Conn. 2006) (same). "Although all are relevant, no one factor is dispositive." *Agency Rent A Car Sys., Inc.*, 98 F.3d at 29.

The first factor favors the exercise of personal jurisdiction. The applicable contract, the Term Sheet, is most plausibly read as a contract between Capitala, Columbus, and NovaFund, a Connecticut entity. Capitala's argument to the contrary—that this factor cuts against jurisdiction because NovaFund was not a party to the Term Sheet—is not persuasive. (ECF No. 25 at 11–12, 31–33; ECF No. 34 at 3.) As later discussed, the "Advisor" designated by the parties to provide the services under the Term Sheet is "NovaFund Advisors, a Division of Columbia Advisory Group LTD, member FINRA and SIPC," which is defined "collectively" as "NovaFund." (ECF No. 31-1 at 2 ("collectively, 'Novafund.'").) Capitala's contrary interpretation would read out the word "collectively" and would ignore the fact that the Term Sheet is signed on behalf of *three* different entities, not two: "NovaFund Advisors," "Capitala Group LLC" and "Columbus Advisory Group, Ltd." (ECF No. 31-1 at 4.) In addition, NovaFund has submitted evidence that (1) Capitala signed an acknowledgement of a notice in November 2016 from NovaFund by which NovaFund replaced Columbus with MD Global Partners LLC as its broker-dealer (ECF No. 31-2); (2) Capitala and NovaFund – with no mention of Columbus – executed an addendum to the Term Sheet in April 2017 (ECF No. 31-3); and (3) NovaFund and Columbus are and always have been separate entities. (ECF No. 31-7, Kelley Decl. ¶ 3; ECF No. 31-8, Murphy Decl. ¶ 5.) I must construe all of this evidence in NovaFund's favor. Accordingly, because the applicable contract involved a Connecticut entity, this factor favors jurisdiction.

The second factor also favors the exercise of personal jurisdiction. NovaFund has submitted affidavits that demonstrate that Capitala initiated contact with NovaFund at its

Connecticut offices regarding the proposal which would ultimately become the Term Sheet. (ECF No. 31-7, Kelley Decl. ¶ 4.) While most of the subsequent in-person negotiations took place outside of Connecticut, NovaFund's email and telephone negotiations over the agreement's terms also took place from its Connecticut offices over the next several months. (*Id.* ¶ 7.) In addition, Capitala visited Connecticut to meet with NovaFund in its offices on at least two occasions, which could readily be construed as meeting regarding the Agreement or the services thereunder. (*Id.* ¶ 29.)[5] Further, Capitala made trips to Connecticut to meet with NovaFund and investors introduced by NovaFund as part of its performance of its obligations under the Agreement. (*Id.*) Although the Term Sheet does not appear to have been finally executed in Connecticut (*see* ECF No. 31-7, Kelley Decl. ¶ 11 (final execution in New York)), the above evidence tips the balance towards NovaFund under the second factor.

The third factor is neutral, as the Agreement has no choice-of-law provision. (ECF No. 31-1 at 2.)

The fourth and final factor cuts against the exercise of personal jurisdiction. Capitala's evidence, which NovaFund has not disputed, indicates that payments under the Term Sheet were made to Columbus in New York. (ECF No. 34-1, Alala Reply Decl. ¶ 9; *see also* ECF No. 34-5 at 2 (invoicing fees to New York).) Accordingly, the evidence indicates that the Agreement required Capitala to send notices and payments into New York, not Connecticut.

Because a plurality of the factors favor exercising personal jurisdiction, the Court concludes that NovaFund has made a *prima facie* showing that Capitala "transacts business" within Connecticut for the purposes of Conn. Gen. Stat. § 52-59b(a)(1). This conclusion is consistent

---

[5] Though Capitala's affidavit states that Capitala visited only once, I must resolve doubts in NovaFund's favor. (ECF No. 25-1, Alala Decl. at ¶ 16)

with decisions from other judges in this district. *See Vertrue Inc.*, 429 F. Supp. 2d at 491 (concluding that defendant's "two, day-long business trips to Connecticut and numerous phone conversations, e-mails, mail and facsimile transmissions over an extended period of time for the purpose of negotiating, entering into and carrying out an agreement with a Connecticut corporation certainly qualify as 'transacting business'"); *Screen Tech, Inc. v. Carolina Precision Plastics, LLC*, No. 3:05CV975(SRU), 2006 WL 197360, at *2 (D. Conn. Jan. 25, 2006) (finding "transacting business" prong satisfied where non-resident LLC defendant sent letter to Connecticut plaintiff soliciting proposal, plaintiff negotiated the terms with defendant by email and telephone from Connecticut, non-resident LLC provided Connecticut plaintiff with a purchase order number, and non-resident LLC traveled to Connecticut three times in connection with modifying the parties' agreement); *Nusbaum & Parrino, P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 162 (D. Conn. 2009) (concluding that contract factors support the exercise of personal jurisdiction because "[a]lthough defendants may not have negotiated the terms of the guarantee in Connecticut, after executing it [defendant] both met with [plaintiff's agent] in Connecticut and communicated with him as part of the contractual relationship." (footnote omitted)).

Capitala nonetheless argues that the "[m]ere communications between Capitala and individuals in Connecticut regarding the status of the placement activities are . . . not sufficient to establish jurisdiction over Capitala." (ECF No. 25 at 12.) But, as discussed above, Capitala's contacts with Connecticut go far beyond "mere communications." Capitala visited NovaFund in its Connecticut offices on at least two occasions. (ECF No. 31-7, Kelley Decl. ¶ 29.) Capitala also visited Connecticut on as many as four other occasions to meet with three different prospective investors introduced to Capitala by NovaFund; two of these meetings were attended by NovaFund as well. (*Id.*) Both *Vitale v. Catanese* and *Statek Corp. v. Coudert Bros. LLP* are distinguishable

on this ground. *See Vitale v. Catanese*, 2013 WL 3992394, at *4 (D. Conn. Aug. 2, 2013) (granting summary judgment for lack of personal jurisdiction under Conn. Gen.Stat. § 52–59b(a)(1) where it was undisputed that defendant "has never traveled to Connecticut for any business-related purpose, and has not negotiated any contracts in the state."); *Statek Corp. v. Coudert Bros. LLP*, No. 3:07-CV-00456 (SRU), 2018 WL 834227, at *14–15 (D. Conn. Feb. 12, 2018) (concluding defendant did not transact business under Conn. Gen.Stat. § 52–59b(a)(1) based solely on its "out-of-state business for a Connecticut client" or "mail[ing] to Connecticut bills for services that were performed and directed elsewhere").

Having found that NovaFund has made a *prima facie* showing that Capitala transacts business in Connecticut, I easily conclude that NovaFund has shown that its "cause of action against [Capitala arises] from [Capitala's] business activity in this state." *Protegrity Corp. v. TokenEx, LLC*, 2015 WL 222163, at *2. "A claim 'arises out of' a defendant's transaction of business when there exists a substantial nexus between the business transacted and the cause of action sued upon." *Id.* (quoting *Agency Rent A Car Sys., Inc.*, 98 F.3d at 31). Here, NovaFund's contract, quasi-contract, and CUTPA claims all directly arise out of Capitala's alleged breach of the Agreement, and Capitala's Connecticut business transactions described above were conducted under that Agreement. (*See* Compl. at ¶¶ 21–44.) *See Agency Rent A Car Sys., Inc.*, 98 F.3d at 32 ("The critical fact is that the claim arises out of licensing agreements under which the licensees' New York business transactions are conducted.").

Accordingly, NovaFund has made a *prima facie* showing that personal jurisdiction over Capitala is authorized by Connecticut's long-arm statute.

2.  <u>Due Process</u>

Capitala argues that even if Connecticut's long-arm statute authorizes personal jurisdiction, due process does not.  (ECF No. 25 at 15.)  "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution."  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  "This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Id.*  I address each in turn.

a)  *Minimum Contacts*

Under the minimum contacts analysis, the court "must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."  *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "For purposes of this inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction."  *Id.*  NovaFund invokes only specific jurisdiction here.  (ECF No. 31 at 25.)

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citation and internal quotation marks omitted).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Id.* at 284.  "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State."  *Id.*  And the analysis must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.*  Accordingly, the Supreme Court has upheld the exercise of jurisdiction over "defendants who have purposefully 'reach[ed] out beyond' their State and into another by . . . entering a contractual relationship that 'envisioned continuing and wide-reaching

contacts' in the forum State." *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985)). And a defendant's "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact," even though not a prerequisite. *Id.* However, "the plaintiff cannot be the only link between the defendant and the forum." *Id.*

NovaFund has shown that Capitala's suit-related conduct has a substantial relationship with Connecticut as a forum. NovaFund has presented evidence that Capitala's representatives purposefully reached out beyond its state, North Carolina, and into Connecticut by initially soliciting the contractual relationship with NovaFund that envisioned continuing Connecticut contacts. (ECF No. 31-7, Kelley Decl. ¶ 4.) In particular, the Agreement envisioned that NovaFund would contact potential investors, provide information about the Fund, and schedule meetings with Capitala, all from NovaFund's Darien, Connecticut offices. (ECF No. 31-7, Kelley Decl. ¶¶ 14, 15.) *See Burger King Corp.*, 471 U.S. at 379–80 ("[Defendant] deliberately 'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise. . . [and] entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida."). Fifteen of the potential investors contacted by NovaFund in carrying out its obligations under the contract were based in Connecticut. Moreover, Capitala's representatives "physical[ly] ent[ered]" Connecticut as many as six times either in connection with the negotiation of the Agreement or the services provided under the Agreement (e.g. meeting Connecticut-based potential investors introduced by NovaFund). *See Walden*, 571 U.S. at 285. (*See* ECF No. 31-7, Kelley Decl. ¶ 29.)[6] Accordingly,

---

[6] Capitala disputes both the number of meetings at NovaFund and whether those investors were previously known to Capitala, but I must resolve this dispute in favor of NovaFund at this stage. (*See* ECF No. 34-1, Alala Reply Decl. ¶¶ 11–13; *see also* ECF No. 34-6 at 2–4.)

Capitala's own suit-related conduct, by reaching into Connecticut and by physically entering the state, are sufficient to show that Capitala had a substantial relationship with Connecticut and could have expected to face suit here if it failed to carry out its obligations under the Agreement. *See Vertrue Inc.*, 429 F. Supp. 2d at 496 (concluding that defendant's "acts of seeking out Plaintiff as a potential business partner, making two trips to Connecticut for the purpose of inducing Plaintiff to enter into an agreement with his Companies and maintaining regular communications with Plaintiff in Connecticut up to and after the execution of the Agreement" were sufficient to support minimum contacts).

Capitala's argument that no minimum contacts exist because "[NovaFund]'s claim that Capitala failed to make payments and engaged in other conduct inconsistent with their alleged agreement arises from Capitala's activity in North Carolina, not Connecticut" is unavailing. (ECF No. 25 at 17.) By characterizing NovaFund's claim as solely based on its conduct in failing to pay from North Carolina, Capitala "too narrowly construes the nexus requirement, which merely requires the [plaintiff's] cause of action to 'relate to' defendant's minimum contacts with the forum." *Chloe*, 616 F.3d at 167. The Agreement was a contract to receive advising work performed in Connecticut and to meet with potential investors in Fund V, 15 of whom turned out to be based in Connecticut. The work involved meetings in Connecticut attended by Capitala. All of this was foreseeable once Capitala engaged a Connecticut-based company to assist with the work. NovaFund's claims for breach of the Agreement clearly "relate[s] to" these Connecticut contacts, even assuming any one particular non-payment occurred elsewhere. *See Chloe*, 616 F.3d at 167 (holding that extensive sales of other-branded handbags in New York was a sufficiently related contact to plaintiff's trademark infringement claim based on different brand because it

showed "a larger business plan purposefully directed at New York consumers").[7] Likewise, Capitala's assertion that the Term Sheet was formed following a meeting in North Carolina does not undercut Capitala's multiple visits to Connecticut in connection with the same agreement, which independently support minimum contacts. (ECF No. 25 at 17.) The fact that neither Capitala nor Fund V were based in Connecticut is also not fatal, as Capitala's representatives physically entered Connecticut in connection with the subject matter of the claims. (*Id.*)

Capitala's remaining arguments are easily dispatched. Capitala correctly notes that NovaFund's presence in Connecticut is insufficient. (ECF No. 25 at 18.) But as discussed above, Capitala's connection to Connecticut goes beyond NovaFund's presence and includes *Capitala's* solicitation of a contract with NovaFund, a Connecticut-based company, and its own repeated physical entry into the state for the purposes of carrying out that contract. These same facts blunt Capitala's argument that an out-of-state defendant's communications with a Connecticut plaintiff do not suffice to establish personal jurisdiction. (ECF No. 25 at 18.) *See, e.g., Dunne*, 2014 WL 3735619, at *13 (concluding no minimum contacts where defendant's "*only* connection to Connecticut relating to this dispute are [an] October 9, 2012 email and follow-up communications sent [to a Connecticut-based plaintiff] from New Jersey") (emphasis added); *Harris v. Wells*, 832 F. Supp. 31, 35 (D. Conn. 1993) (concluding no minimum contacts where defendant "executed a joint litigation agreement outside of Connecticut which related to actions and parties in several

---

[7] *Waldman v. Palestine Liberation Org.*, which Capitala cites, involved a suit against the Palestinian Liberation Organization and Palestinian Authority for terror attacks allegedly committed in Israel by their employees. 835 F.3d 317, 322 (2d Cir. 2016). In addition to being factually inapposite, Capitala stands on very different footing here because it affirmatively solicited NovaFund's services and visited Connecticut multiple times in connection with those services. *Id.* at 344 (concluding no minimum contacts where attacks were not expressly aimed at the United States, the deaths and injuries suffered by American plaintiffs were "random and fortuitous," and lobbying activities towards U.S. policy was not "suit-related conduct").

jurisdictions" and his "only direct contact" was a telephone conversation with a Connecticut resident); *Tatoian v. Junge*, No. 3:13-CV-1255 VLB, 2013 WL 6195486, at *6 (D. Conn. Nov. 26, 2013) (concluding no minimum contacts where Connecticut plaintiff never alleges that out-of-state defendant contacted him, but simply passively received plaintiff's funds as an escrow agent.)

Accordingly, Capitala has sufficient minimum contacts with Connecticut based on its suit-related conduct to reasonably anticipate being haled into court here.

### b) Reasonableness

Exercising personal jurisdiction over Capitala is also reasonable. Under this prong, courts "ask whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164. "The Supreme Court has held that courts must evaluate the following factors as part of this 'reasonableness' analysis":

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987)). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citation and internal quotation marks omitted).

The first factor suggests that Capitala may be burdened by being forced to litigate here. Because Capitala is headquartered in North Carolina and has no officers, officers, or regular business in Connecticut (ECF No. 25-1, Alala Decl. ¶ 6), Capitala argues that the majority of its

documents and witnesses are in North Carolina. (ECF No. 25 at 19; ECF No. 34 at 4.) But, as the Second Circuit has recognized, this burden is slight in our modern, inter-connected era. *See Chloe*, 616 F.3d at 173.

The second factor favors Connecticut as the forum state. A state frequently has a "manifest interest in providing effective means of redress for its residents," and NovaFund is a Connecticut LLC. *Id.*; *see also Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (same)[8]; *Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *3 (D. Conn. Jan. 23, 2014) ("Connecticut has a strong interest in ensuring citizens that are victims of tort or deception while in Connecticut may have their grievances addressed in Connecticut.").

The third and fourth factor both favor Connecticut as well. NovaFund has an interest in convenient and efficient resolution of this case in Connecticut, where it is based, its members reside, and its employees and corporate records are located. *See Chloe*, 616 F.3d at 173 ("The third factor necessarily favors [plaintiff] since [plaintiff's] headquarters are in New York and some of its witnesses are located there."). (*See* ECF No. 31-7, Kelley Decl. ¶¶ 3, 30.) And now that the North Carolina action has been dismissed, this Court can resolve all of the issues related to NovaFund's claims in a single forum. *See Kernan*, 175 F.3d at 245 (concluding that the "inefficient holding of separate trials" across multiple jurisdictions favors exercising personal jurisdiction).

The fifth factor is neutral, as no substantive social policies are clearly at issue here. (ECF No. 31 at 28 (conceding same).) *See Kernan*, 175 F.3d at 245 (same).

---

[8] Because I do not resolve the which state's law governs the action at this stage, neither North Carolina's interest in applying its own law nor the availability of a prejudgment remedy under Connecticut law are given weight. (*See* ECF No. 25 at 19; ECF No. 31 at 27.)

Because three factors favor exercising jurisdiction, one does not, and one is neutral, I conclude that exercising personal jurisdiction over Capitala would not offend "traditional notions of fair play and substantial justice." *See id.* (affirming district court's exercise of personal jurisdiction where three of five factors weighed in favor). Accordingly, the Court concludes that it may properly exercise personal jurisdiction over Capitala, and Capitala's motion to dismiss on this ground is DENIED.

### C. Venue

Capitala argues that even if personal jurisdiction exists, the case should be dismissed for improper venue because a substantial part of the facts that give rise to the cause of action did not take place in Connecticut. (ECF No. 25 at 19–21.) Under 28 U.S.C. § 1391(b)(2), an action can be commenced in "a judicial district in which a substantial part of the events giving rise to the action occurred or in which a substantial part of the property that is the subject of the action is located." 28 U.S.C. § 1391(b)(2). The complaint invokes this language, and the parties do not contend that any other subsection of 28 U.S.C. § 1391 applies. (Compl. ¶ 4.)[9]

"[W]hen a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate. First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is,

---

[9] I nonetheless note that venue is unquestionably proper under 28 U.S.C. § 1391(b)(1) given my above conclusion that personal jurisdiction exists over Capitala in Connecticut. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"), *id.* § 1391(c)(2) ("For all venue purposes--an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .").

whether 'significant events or omissions material to [those] claim[s] ... have occurred in the district in question.'" *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (internal citations omitted). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id.* at 432–33. "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433. In particular, "[c]ourts making venue determinations in contract disputes have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (internal quotation marks and citations omitted).

Here, NovaFund's claims primarily sound in contract: NovaFund asserts a claim for breach of the Agreement by Capitala's failure to pay any fees that were owed following NovaFund's performance (Compl. ¶¶ 21–23), implied covenant and unjust enrichment claims based on the same (Compl. ¶¶ 24–34), and a CUTPA claim based on Capitala's abandonment of Fund V, formation of a successor fund, and false representation that the successor fund did not have a similar strategy (Compl. ¶¶ 35–44). The complaint adequately alleges that a substantial part of the events giving rise to these claims occurred in Connecticut. In particular, and as described above, Capitala solicited an initial proposal from and subsequent contract negotiations occurred by email and telephone from NovaFund's Connecticut offices. (ECF No. 31-7, Kelley Decl. ¶ 7.) Further, virtually all of the services NovaFund performed under the Agreement were performed from NovaFund's offices in Darien, Connecticut. (ECF No. 31-7, Kelley Decl. ¶ 15.) Capitala also

visited NovaFund in Connecticut twice, either in connection with the negotiation or performance of the Agreement, and also visited prospective investors in Connecticut identified by NovaFund in performing its obligations under the contract. (*See* ECF No. 31-7, Kelley Decl. ¶ 29.)[10] Capitala's argument that these activities do not give rise to NovaFund's claims (ECF No. 34 at 4–5) takes too narrow a view of the substantiality requirement, which simply requires that significant events material to NovaFund's claims occur in Connecticut, not that *all* material events must occur there. *See Gulf Ins. Co*, 417 F.3d at 357–58 (concluding that venue was proper in the Southern District of New York where declaratory judgment action was based on "submission, approval, and issuance of [an insurance] policy" in that district and where bankruptcy court had issued orders in the district indirectly leading to action, but acknowledging that venue could also exist in New Jersey, where "the original injury, the trial, and the underlying judgment" occurred). *Rose* is inapposite, as there <u>all</u> of the underlying allegedly fraudulent conduct both occurred in and arose out of medical programs in New Jersey, and plaintiff's "*only* allegation related to this venue" was his Connecticut citizenship. *See Rose v. Myers*, No. 3:13CV419 MPS, 2013 WL 6073627, at *1 (D. Conn. Nov. 18, 2013) (emphasis added). NovaFund's evidence that contract-related negotiation and performance occurred in Connecticut demonstrates that significant events material to its claims occurred here. Venue in Connecticut is thus proper under 28 U.S.C. § 1391(b)(2).

### D. Merits

In its motion to dismiss under Rule 12(b)(6), Capitala argues that each of NovaFund's claims for breach of contract, breach of the implied warranty of good faith and fair dealing, unjust

---

[10] I also note, but need not rely on, NovaFund's evidence indicating that in April 2018, Capitala sent an email to NovaFund in its Connecticut offices informing it that it was not owed any fees as a result of the Successor Fund, which NovaFund alleges both breached the contract and was a fraudulent misrepresentation. (ECF No. 31-7, Kelley Decl. ¶ 21; Compl. ¶¶ 23, 38.)

enrichment, and unfair trade practice claims fails to state a claim. For the following reasons, I disagree.

### 1.  Choice of Law

As a threshold issue, the parties dispute whether North Carolina, Connecticut, or New York law applies to each of NovaFund's claims. (ECF No. 25 at 29–31; ECF No. 31 at 35–37.) "[A] federal court sitting in diversity must apply the conflict-of-laws rules of the state in which the federal court sits," here, Connecticut. *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (citation omitted). Connecticut follows the "most significant relationship" approach of the Restatement (Second) for analyzing choice of law issues involving contracts. *See Gen. Acc. Ins. Co. v. Mortara*, 314 Conn. 339, 346 (2014). "Where there is no choice of law provision in the contract, the general rule to be applied is that of § 188 [of the Restatement (Second)]." *Id.* (citation omitted). Under that provision, the court should consider five contacts: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at 348 (quoting Restatement (Second) of Conflict of Laws § 188(2) (1971).). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 188(2). Similar principles apply to an unfair trade practices claim. *See W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 558 (2016) (recognizing the applicable factors under § 145(2) of the Restatement (Second) "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.").

Although the complaint alleges the parties' states of organization and places of business (Compl. ¶¶ 1–2), the analysis of the remaining factors turns on numerous disputed facts that would require the Court to look beyond the complaint and the Agreement, which it may not do on a Rule 12(b)(6) motion to dismiss. Accordingly, the Court concludes that it would be premature to determine which law applies at this stage. *See Bristol–Myers Squibb Co. v. Matrix Labs. Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (summary order) ("Numerous district courts in this Circuit have concluded that choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage."); *N. Am. Tech. Servs., Inc. v. V.J. Techs., Inc.*, No. 10 CV 1384 AWT, 2011 WL 4538069, at *2 (D. Conn. Sept. 29, 2011) (concluding that, "[b]ecause of the 'fact-intensive and context specific' nature of the choice of law analysis and the complexity of the instant case, it is premature to address choice of law at the motion to dismiss stage").[11]

## 2. Breach of Contract (Count One)

Capitala's only argument to dismiss NovaFund's breach of contract claim is that Capitala had no contract with the plaintiff, NovaFund Advisors, LLC, because the Term Sheet was with "NovaFund Advisors, a Division of Columbus Advisory Group, LTD." (ECF No. 25 at 31–33.) The existence of a valid contract between the parties is an element of a breach of contract claim under Connecticut, New York, and North Carolina law.[12] "At the motion to dismiss stage, a district

---

[11] The Court must deny the motion to dismiss if NovaFund states a claim "under at least one of the allegedly applicable laws." *Bristol–Myers Squibb Co.*, 655 F. App'x at 13. The Court will nonetheless analyze NovaFund's claims under all applicable laws, since the result is the same for each. *See Halberstam, Tr. of Zupnick Family Tr. 2008 B v. Allianz Life Ins. Co. of N. Am.*, No. 16CV6854ARRST, 2017 WL 10187689, at *4 (E.D.N.Y. June 9, 2017) (analyzing claims under both New York and New Jersey law at motion to dismiss stage).

[12] *See Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 311 Conn. 282, 291 (2014) (under Connecticut law, "[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (observing that the elements of a breach of contract claim under New York law are:

court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Id.* All three states employ a similar definition of when an agreement is "ambiguous." *See United Illuminating Co. v. Wisvest-Connecticut, LLC*, 259 Conn. 665, 670–71 (2002) ("[A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . [A]ny ambiguity in a contract must emanate from the language used by the parties." (internal citations omitted)); *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 178 (under New York law, "[a]mbiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.") (citation omitted)); *Register v. White*, 358 N.C. 691, 695 (2004) ("An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations.").

Contrary to Capitala's argument, the Term Sheet does not unambiguously show that Capitala contracted with only Columbus. (ECF No. 25 at 31–32; ECF No. 34 at 8.) In the Term Sheet, the "Advisor" to provide services is "NovaFund Advisors, a Division of Columbia Advisory Group LTD, member FINRA and SIPC." (ECF No. 31-1 at 2.) The Term Sheet then defines this Advisor *collectively* as "NovaFund." (ECF No. 31-1 at 2 ("collectively, 'Novafund.'").) The defined entity, "NovaFund," would provide certain advisory services to Capitala. (*Id.*) The Term

"(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages"); *Poor v. Hill*, 138 N.C. App. 19, 26 (2000) (under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.").

Sheet is signed by individuals on behalf of three entities: "NovaFund Advisors," "Capitala Group LLC" (*i.e.* Capitala), and "Columbus Advisory Group, Ltd." (*Id.* at 4.) Capitala argues that NovaFund Advisors's identification as a "Division" of Columbus unambiguously shows that "it is not a separate entity and thus not a party to the contract." (ECF No. 34 at 8.) But Capitala's reading glosses over the term "collectively," which implies that "NovaFund Advisors, a Division of Columbia Advisory Group LTD" is more than one entity. (ECF No. 31-1 at 2.) *See* "Collectively," *Oxford English Dictionary,* accessible at https://en.oxforddictionaries.com/definition/collectively (last visited March 8, 2019) (defining 'collectively' as "[a]s a group; as a whole"). Capitala's further argument that its reading is consistent with the third signature block for the "defined division of Columbus 'NovaFund Advisors'" is likewise unpersuasive—presumably, there would be no need to require a third, separate signature line if NovaFund Advisors were not a separate entity or a party to the contract. (ECF No. 34 at 8.) Based on the documents I may consider at this stage, it is at best ambiguous whether the plaintiff, NovaFund Advisors LLC, is the same entity as the "NovaFund Advisors" in the Term Sheet, or whether the signatory in fact is a division of Columbus by a similar name. Because reasonable inferences must be drawn in the plaintiff's favor on a Rule 12(b)(6) motion, Capitala's motion to dismiss the breach of contract claim for lack of a valid contract with NovaFund is denied.

### 3. Implied Covenant of Good Faith and Fair Dealing (Count Two)

Capitala argues that NovaFund's claim for breach of the implied covenant of good faith and fair dealing should be dismissed for the same reason as its contract claim—that there was no agreement between it and NovaFund. (ECF No. 25 at 33–34.) Because the Court has declined to

dismiss NovaFund's breach of contract claim on this ground, Capitala's argument to dismiss NovaFund's claim for breach of the implied covenant of good faith and fair dealing likewise fails.

4.   Unjust Enrichment (Count Three)

Capitala next moves to dismiss NovaFund's claim for unjust enrichment.   Under Connecticut law, "[u]njust enrichment applies whenever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract .... Indeed, lack of a remedy under a contract is a precondition for recovery based upon unjust enrichment." *MedPricer.com Inc. v. Becton, Dickinson & Co.,* No. 3:13CV01545 MPS, 2014 WL 3700992, at *3 (D. Conn. July 25, 2014) (citation omitted).   Under New York law, the elements of an unjust enrichment claim are "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quotation and citation omitted).   Similarly, "the theory of unjust enrichment . . . is an obligation the law creates in the absence of any agreement." *Id.*   Finally, "[t]o state a claim for unjust enrichment under North Carolina law, the plaintiff must allege facts demonstrating: (1) a measurable benefit conferred on defendant; (2) that the defendant consciously accepted; and (3) the benefit was not conferred on the defendant officiously or gratuitously. The existence of an express contract between the parties . . . precludes a finding of unjust enrichment with regard to matters addressed in that contract." *Cole v. Wells Fargo Bank, N.A.*, No. 1:15-CV-00039-MR, 2016 WL 737943, at *5 (W.D.N.C. Feb. 23, 2016) (citations omitted).

Capitala argues that NovaFund's unjust enrichment claim is precluded by the existence of the Agreement, which addressed the same subject matter.  (ECF No. 25 at 34–35; ECF No. 34 at 9.)  NovaFund responds that Rule 8 permits it to plead claims in the alternative.  (ECF No. 31 at

38–39.) I agree that Rule 8 permits pleading unjust enrichment claims in the alternative where, as here, the existence of an enforceable contract is in dispute.

Rule 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). "Where the parties dispute whether there is an enforceable written contract at all . . .Rule 8(d)(2) of the Federal Rule of Civil Procedure permits a plaintiff to plead claims for breach of contract and, in the alternative, claims for quantum meruit and unjust enrichment." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 243 (S.D.N.Y. 2013) (collecting cases); *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 379 (D. Conn. 2018) (concluding same). NovaFund's complaint explicitly asserts its unjust enrichment "in the alternative." (Compl. ¶ 34.) It alleges that Capitala benefitted from NovaFund's work, both from the introductions Novafund made and commitments it obtained (Compl. ¶¶ 29, 30), that Capitala did not pay or otherwise compensate NovaFund for those benefits (Compl. ¶ 31), and that as a result, NovaFund was damaged through its expenditure of time and resources (Compl. ¶ 32). These allegations adequately state an unjust enrichment claim. Although these allegations are based on (and thus potentially inconsistent with) Capitala's failure to pay under an express contract (Compl. ¶¶ 17 ("Capitala has failed and refused to pay NovaFund in accordance with the [Term Sheet] and Addendum"), 31 ("Capitala did not pay or otherwise compensate NovaFund for the benefit Capitala received.")), Capitala vehemently disputes whether it even has a valid contract with NovaFund. (*See* ECF No. 25 at 31–33.) Accordingly, because NovaFund's adequate enrichment claim is adequately pleaded in the alternative under Rule 8, and the existence of the contract is in genuine dispute, dismissal of this claim would be premature.

This Court has previously reached an identical conclusion at the motion to dismiss stage for an unjust enrichment claim. In *MedPricer.com Inc. v. Becton, Dickinson & Co.*, the plaintiff alleged an unjust enrichment count in the alternative to a breach of contract count based on the same factual allegations. No. 3:13CV01545 MPS, 2014 WL 3700992, at *3 (D. Conn. July 25, 2014). While acknowledging that, ultimately, "[p]roof of a contract enforceable at law precludes the equitable remedy of unjust enrichment" under Connecticut law, I refused to dismiss the unjust enrichment claim where "the existence of an enforceable contract in this case has merely been alleged, not proven" and the defendant contended that the relevant contracts existed, but were unenforceable. *Id.* Like there, the existence of an enforceable contract here has only been alleged, not proven, and Capitala vehemently disputes whether NovaFund is able to enforce it. (*See* ECF No. 25 at 31–33.) The same result is appropriate.

The federal cases cited by Capitala do not address the availability of alternative pleading under Rule 8, and, in any event, involved cases where the existence of a valid contract does not appear to have been in dispute. *See Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 148 (D. Conn. 2015) (dismissing unjust enrichment claim where plaintiff "has not claimed that the contract is void, illusory or otherwise unenforceable"); *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 513 (D. Conn. 2007) (dismissing unjust enrichment claim where plaintiff "does not dispute the validity of the Purchase Agreement"); *Levy v. World Wrestling Entm't, Inc.*, No. CIV.A.308-01289(PCD), 2009 WL 455258, at *2 (D. Conn. Feb. 23, 2009) (dismissing unjust enrichment claim where "[t]here is nothing in the complaint to suggest that the Booking Contracts are invalid in their entirety"); *Cole v. Wells Fargo Bank, N.A*., No. 1:15-CV-00039-MR, 2016 WL 737943, at *5 (W.D.N.C. Feb. 23, 2016) (dismissing unjust enrichment claim where plaintiff did not contest the validity of a Note

and Deed of Trust but simply "demanded more than it was entitled to"); *Lawhead v. PNC Bank*, No. 1:13-CV-00198-MR-DLH, 2014 WL 1266995, at *8 (W.D.N.C. Mar. 26, 2014) (dismissing similar claim based on allocation of insurance proceeds). Therefore, they do not require a different outcome.

Capitala similarly argues that NovaFund may not recover payments owed to *Columbus* under the Agreement through unjust enrichment. (ECF No. 25 at 35.) I reject this argument, because the Term Sheet itself does not unambiguously provide that any payments are owed to Columbus, but instead to "NovaFund" as collectively defined (ECF No. 31-1 at 3 (providing "Fee Proposal" payable to "NovaFund").)

Capitala is free to renew both arguments at a later stage. But the Court will not dismiss NovaFund's unjust enrichment claim as barred by the Agreement where the parties dispute whether the Agreement constituted a valid contract between these parties in the first instance. Accordingly, Capitala's motion to dismiss the unjust enrichment claim is denied.

5.    Unfair Trade Practices (Count Four)

Finally, Capitala argues that North Carolina law should apply to NovaFund's unfair trade practices claim, and that in any event NovaFund has alleged only an intentional breach of contract, which is not actionable under North Carolina or Connecticut law. (ECF No. 25 at 35–38.) As discussed earlier, I do not resolve the choice-of-law issue at this juncture,[13] so I address only Capitala's latter challenge.

---

[13] NovaFund argues that only Connecticut law, not New York law, applies to this claim. (ECF No. 31 at 36, 39–41.) Given the uncertainty on which law applies, Capitala's argument that the claim does not specifically allege that the fraudulent statements took place in Connecticut is also better suited for resolution at the summary judgment stage. (ECF No. 34 at 9–10) *See Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 409 F. Supp. 2d 112, 121–22 (D. Conn. 2006) (adhering to grant of summary judgment on CUTPA claim where wrongful conduct largely took place in New York); *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, 332 F. Supp.

Under Connecticut law, CUTPA provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). "To prevail on a CUTPA claim, the plaintiff must establish both that the defendant engaged in a prohibited act and that the prohibited act was the proximate cause of the harm to the plaintiff." *Priority Sales Mgmt., Inc. v. Carla's Pasta, Inc.*, No. 3:10-CV-1918 CFD, 2011 WL 3819748, at *3 (D. Conn. Aug. 26, 2011). To determine whether a practice is "unfair" or prohibited under CUTPA, courts consider:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers. . .

*Ulbrich v. Groth*, 310 Conn. 375, 409 (2013). "CUTPA was intended to provide a remedy that is separate and distinct from the remedies provided by contract law when the defendant's contractual breach was accompanied by aggravating circumstances." *Id.* at 411. "Conduct that has been held to be substantial aggravating circumstances sufficient to support CUTPA claims includes fraudulent representations, fraudulent concealment, false claims . . . and multiple breaches of contract." *MedPricer.com Inc.*, 2014 WL 3700992, at *3 (citation omitted). "A 'simple breach of contract,' however, does not offend traditional notions of fairness and does not constitute a violation of CUTPA." *Priority Sales Mgmt., Inc.*, 2011 WL 3819748, at *3.

Here, NovaFund has alleged that: (1) that "[u]nbeknownst to NovaFund, Capitala formed the Successor Fund while NovaFund was continuing its performance under the Agreement" and

3d 488, 511 (D. Conn. 2018) (declining to address same question on motion to dismiss). Finally, because the complaint does not purport to plead any claim under the North Carolina statute governing unfair trade practice claims, I do not address the adequacy of these allegations under North Carolina law.

"later falsely told NovaFund that the Successor Fund did not have the same or similar investment strategy as [Fund V]" (Compl. ¶ 38); (2) "Capitala did not pay NovaFund any fees in connection with capital commitments to the Successor Fund" in a "purposeful effort to deprive NovaFund of the fees to which it is entitled" (Compl. ¶¶ 39–40; *see id.* ¶ 19); and finally, (3) NovaFund suffered a loss as a result (Compl. ¶ 43).  In short, NovaFund has alleged that Capitala affirmatively misrepresented to NovaFund the investment strategy of the new successor fund in order to deprive NovaFund of fees to which it was entitled under the Agreement.  This allegation of a fraudulent representation constitutes sufficiently aggravating circumstances to give rise to CUTPA claim. *See Lester v. Resort Camplands Int'l, Inc.*, 27 Conn. App. 59, 71–72 (1992) (affirming CUTPA violation where defendants fraudulently and "unilaterally altered that portion of their contract with the plaintiffs allowing unlimited access" to a campground absent additional payments, in order to increase their profits).

Accordingly, Capitala's motion to dismiss the CUTPA claim is denied.

## IV.    Conclusion

For the foregoing reasons, Capitala's motion to dismiss is DENIED.  (ECF No. 24.)  In light of this disposition, discovery shall commence immediately and the parties shall file a revised Local Rule 26(f) report within **7 day**s.


IT IS SO ORDERED.


    /s/
_____
Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              March 13, 2019