# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NOVAFUND ADVISORS, LLC,

    Plaintiff,

    v.

CAPITALA GROUP, LLC,

    Defendant.

No. 3:18-cv-1023 (MPS)

## RULING ON PENDING MOTIONS (ECF Nos. 67, 70, 96)

This case is centered on an agreement between Plaintiff NovaFund Advisors, LLC ("NovaFund") and Defendant Capitala Group, LLC ("Capitala") whereby NovaFund agreed to assist Capitala with capital-raising efforts. Each party accuses the other of breaching the agreement and engaging in other unfair business practices. NovaFund filed suit against Capitala on June 15, 2018; following a prejudgment remedy motion and hearing, Capitala answered the complaint and asserted counterclaims against NovaFund on March 27, 2019, ECF No. 56.

On April 26, 2019, Capitala moved to amend its counterclaims and to join two new parties to the case. ECF No. 67. NovaFund moved to dismiss Capitala's existing counterclaims on May 8, 2019. ECF No. 70. Most recently, on December 11, 2019, NovaFund moved to amend its complaint to add new claims against Capitala, based on evidence produced in discovery. ECF No. 96. I address each of these three pending motions below, grant in part and deny in part the motion to dismiss Capitala's Counterclaim, grant Capitala's motion to amend its counterclaims and to join new parties, and grant NovaFund's motion to amend its complaint.

## I.    BACKGROUND

The factual allegations below are drawn from Capitala's counterclaim, ECF No. 56 at 7–23, and documents incorporated therein. I draw on these facts in considering Capitala's motion to amend, ECF No. 67, and NovaFund's motion to dismiss Capitala's counterclaims, ECF No. 70.

In considering NovaFund's recent motion to amend its complaint, ECF No. 96, I draw on the facts set forth in NovaFund's complaint, ECF No. 1.

## A. Factual Allegations

NovaFund is a limited liability company with its principal place of business in Darien, Connecticut. Counterclaim, ECF No. 56 ¶ 10. Capitala is a limited liability company with its principal place of business in Charlotte, North Carolina, *id.* ¶ 9, and its business "involves the organization and management of various types of funds and provision of investment management advice to institutional investors, portfolio companies, and clients." *Id.* ¶ 11.

In early 2016, Capitala planned to raise funds for "Fund V," which was "to invest primarily in mezzanine loans and subordinated debt, along with equity co-investments." *Id.* ¶ 12. "Capitala sought to engage a placement agent to assist with the marketing materials, road show, introductions to investors who would acquire limited partnership interests in Fund V, and the ultimate placement of those interests." *Id.* Following a "nationwide search," Capitala engaged "NovaFund[] to serve as the exclusive placement agent for Fund V." *Id.* ¶ 13. Capitala believed that NovaFund was a "division of Columbus," a registered broker-dealer. *Id.* ¶ 14.

On May 9, 2016, Capitala entered into a term sheet with "NovaFund Advisors, a Division of Columbus Advisory Group LTD" (the "Term Sheet") for Fund V. *Id.* ¶ 15–16; Term Sheet, ECF No. 81-1 at 2.[1] The Term Sheet required NovaFund to "make best efforts to place

---

[1] In deciding a motion to dismiss under Rule 12(b), the Court may consider documents attached to, integral to, or incorporated by reference in the complaint. *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("For purposes of [Rule 12(b)], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)). Here, I consider the Term Sheet, ECF No. 81-1, and Addendum, ECF No. 70-2, because Capitala's Counterclaim references and relies upon the terms of both documents. *E.g.*

partnership interests in Capitala Private Credit Fund V, L.P. (the 'Fund') with North American, European, Australian, and Asian investors" and to "assist with the preparation of offering materials and, in coordination with Capitala, contacting potential Fund investors," along with other services. Term Sheet, ECF No. 81-1 at 2; Counterclaim, ECF No. 56 ¶ 17. The Term Sheet also provides that "[a]s compensation for the advisory and exclusive placement services to be provided by NovaFund hereunder, Capitala agrees to pay NovaFund" a monthly "Retainer Fee" and a "Success Fee." Term Sheet, ECF No. 81-1 at 3; Counterclaim, ECF No. 56 ¶¶ 18–19. Capitala alleges that the reference to "exclusive placement services" meant that "NovaFund would not be engaged in providing placement services for another fund . . . competitive with Fund V." Counterclaim, ECF No. 56 ¶ 18.

Capitala also avers that the Term Sheet it signed "contained only two signature blocks: [o]ne for 'NovaFund Advisors' and one for 'Capitala Group, LLC,'" and that "a third signature block and signature—for Columbus Advisory Group, Ltd—was added to the Term Sheet at some point after Capitala signed it and after it was returned fully executed to Capitala." Counterclaim, ECF No. 56 ¶ 16; *compare* Term Sheet, ECF No. 81-1 at 4 (showing two signature blocks) *with* Term Sheet, ECF No. 70-2 at 4 (showing three signature blocks). Other than the signature pages, the two versions of the Term Sheet are identical.

"From the inception of [NovaFund's] engagement [with Capitala], NovaFund's performance was inadequate." Counterclaim, ECF No. 56 ¶ 20. Capitala alleges that NovaFund

---

Counterclaim, ECF No. 56 ¶¶ 15–19 (describing the provisions of the Term Sheet); *id.* ¶ 25 (describing the Addendum).

The parties do not dispute the authenticity of the Addendum attached to NovaFund's motion to dismiss. Ex. 2, ECF No. 70-3. The parties do have a factual dispute regarding the signature page of the Term Sheet. In this ruling, I refer to and rely on the version of the Term Sheet attached to Capitala's opposition brief. Ex. A, ECF No. 81-1.

did not "proactively manag[e] the marketing process and road show, . . . provid[ed] few comments and little to no strategic input . . . . [,] made very few introductions to potential Fund V limited partners for Capitala, . . . failed to set up meetings at important industry conferences," such as "a February 2017 investor conference in Berlin . . . . [,] appeared to be purposefully delaying introductions for Capitala even when investors had indicated an interest in discussing Fund V . . . . [, and failed] to revise the strategy and marketing materials to further advance the fundraising effort for Fund V." *Id.* ¶¶ 20–22. Capitala "became aware" in February 2017 that NovaFund "was arranging meetings and introductions for one or more competing funds, to the exclusion of Capitala, in direct violation of NovaFund's exclusive engagement with Capitala." *Id.* ¶ 23.

Capitala and NovaFund "attempted to salvage the relationship" in early 2017, and "Capitala and Columbus executed an Addendum to the Term Sheet ('Addendum')" on April 24, 2017. *Id.* ¶ 25; Addendum, ECF No. 70-3 at 2. Capitala notes that the Addendum was "agreed to and accepted by 'NovaFund Advisors.'" Counterclaim, ECF No. 56 ¶ 25; Addendum, ECF No. 70-3 at 2 (titled "Capitala Group and NovaFund Advisors Addendum"). The Addendum states, *inter alia*:

> Both Nova and Capitala agree to release and discharge each other and all affiliates, officers and agents, of any and all claims, disputes, demands or causes of action of any nature, which the parties had, now have, or may have, related to Nova's services rendered to Capitala, or Capitala's obligations to Nova, to date.

ECF No. 70-3 at 2.

Following execution of the Addendum, NovaFund continued to "fail[] to use its best efforts as the placement agents for Fund V . . . . [,] failed to make introductions for Capitala with potential investors and failed to assist Capitala in further marketing of Fund V . . . . [,] continued to make introductions which resulted in capital commitments for funds that were in direct

competition with Fund V . . . . [, and] even took potential investor suggestions that *Capitala* gave NovaFund and arranged for capital commitments from those investors to funds that were in direct competition with Fund V." Counterclaim, ECF No. 56 ¶ 26 (emphasis in original). In September 2017, NovaFund "indicated that it would not be identifying additional investors for Fund V." *Id.* ¶ 27. Capitala alleges that NovaFund did not "contribute[] to the closing of even one dollar of investor capital commitment to Fund V." *Id.* ¶ 28.

After "NovaFund withdrew and effectively disengaged," Capitala announced on April 25, 2018 that it would "advise a new, permanent capital vehicle ('2018 Vehicle')," which would "focus[] exclusively on investing in senior debt issued by lower middle market companies." *Id.* ¶ 29. Capitala is not the manager of the 2018 Vehicle; rather, Capitala's "affiliate [Capitala Specialty Lending Corporation ('Capitala SLC')] serves in a contractual sub-advisory capacity . . . to an unaffiliated, third-party fund manager," and the third-party fund manager "identified and closed the capital commitments from investors in the 2018 Vehicle." *Id.* ¶ 30, 32.

On April 27, 2018, NovaFund sent Capitala an email asking for "a list of the entities investing in Capitala SLC and their respective commitments, so it could calculate fees allegedly due NovaFund from Capitala." *Id.* ¶ 32. Capitala responded "explaining that it could not disclose that information because of relevant confidentiality agreements" and that "NovaFund was not due any fee under the Term Sheet." *Id.* ¶ 34. Capitala alleges that "NovaFund also reached out to one or more of Capitala's business relationships and pressured them to reveal whether they had invested with Capitala," thereby "harm[ing] Capitala's business relationship(s)," "adversely impact[ing] Capitala's reputation for respecting client confidentiality," and causing the "sponsor of the 2018 Vehicle" to "incorrectly assum[e]" that Capitala had breached relevant confidentiality agreements. *Id.* ¶ 35.

**B. Procedural History**

On May 17, 2018, Capitala filed a lawsuit in North Carolina Superior Court, Mecklenburg County, Case No. 18-CVS-8247 (the "North Carolina action"), seeking a declaratory judgment that Capitala is not required to pay fees to Columbus under the Term Sheet and seeking damages resulting from Columbus's breach of contract, unfair trade practices, and fraud. *See* Ruling, ECF No. 45 at 5–6. That action was later dismissed for lack of personal jurisdiction over NovaFund. *Id.* at 6; ECF No. 42-1 at 3 (North Carolina Superior Court Order on Motion to Dismiss).

NovaFund filed suit in this court against Capitala on June 15, 2018; following a prejudgment remedy motion and hearing, and my ruling denying Capitala's motion to dismiss the complaint, Capitala answered the complaint and asserted counterclaims against NovaFund on March 27, 2019, ECF No. 56. On April 26, 2019, Capitala moved to amend its counterclaims and to join two new parties to the case. ECF No. 67. NovaFund moved to dismiss Capitala's counterclaims under Fed. R. Civ. P. 12(b)(6) on May 8, 2019. ECF No. 70. Most recently, on December 11, 2019, NovaFund moved to amend its complaint to add new claims against Capitala, based on evidence produced in discovery. ECF No. 96.

## II.     MOTION TO DISMISS COUNTERCLAIM (ECF No. 70)

### A.  Legal Standard

"The analysis of a motion to dismiss for failure to state a claim is equivalent for claims and counterclaims." *ARMOUR Capital Mgmt. LP v. SS&C Techs., Inc.*, No. 3:17-CV-00790, 2019 WL 688308, at *2 (D. Conn. Feb. 19, 2019). "To survive a Rule 12(b)(6) motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept the well-pleaded factual allegations of the counterclaim as true and draw all reasonable inferences in the counterclaimant's favor. *See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

In deciding a motion to dismiss under Rule 12(b), the Court may consider documents attached to, integral to, or incorporated by reference in the counterclaim. *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("For purposes of [Rule 12(b)], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)). Because Capitala's Counterclaim refers to and relies on the terms of both the Term Sheet and the Addendum, I may consider these documents as part of the pleading. *Chambers*, 282 F.3d at 153 (finding that contracts, attached to defendants' motions to dismiss, were properly considered "when disposing of a Rule 12(b)(6) motion" since the contracts were "integral to the Amended Complaint").

## B. Discussion

Capitala asserts six counterclaims against NovaFund. First, it seeks a declaratory judgment that NovaFund "is not entitled to recover any fees from Capitala with respect to Fund V, the 2018 Vehicle, or Capitala SLC." *Id.* ¶ 41. Second, should the Court find that NovaFund "was the party with which Capitala contracted"—even though Capitala believes that its contractual counterparty to the Term Sheet was actually Columbus—Capitala seeks damages for

7

breach of contract and breach of the covenant of good faith and fair dealing. *Id.* ¶¶ 43–46. Capitala also alleges that NovaFund violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 *et seq.*, or, in the alternative, the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a. *Id.* ¶¶ 47–62. Capitala alleges that NovaFund is liable for common law fraud, *id.* ¶¶ 64–69, and finally, it seeks rescission of the contract as illegal and void. *Id.* ¶¶ 93–97.

### 1. Mutual Release in the Addendum

NovaFund's central argument in its motion to dismiss Capitala's Counterclaim is that Capitala's claims are all barred by the release contained in the Addendum. Mot. to Dismiss, ECF No. 70-1 at 8–9.[2] NovaFund argues that the Addendum releases NovaFund "from all of Capitala's claims related to the execution of the parties' contract and NovaFund's performance under the contract," as well as from "claims that NovaFund somehow breached the contract by serving as a placement agent for another investment fund manager." *Id.* at 9. Capitala argues that the Addendum does not bar its claims because both the parties to and the scope of the release are ambiguous, because Capitala's Counterclaim includes allegations of misconduct after the execution of the Addendum, and because fraudulent inducement claims are not barred by releases. Opp'n, ECF No. 81 at 7–13.

---

[2] Although release is an affirmative defense, it may be a basis for dismissal under Rule 12(b)(6) where all the facts necessary to decide the issue are set forth in the complaint or in a document incorporated in the complaint. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."); *WSP USA Corp. v. Marinello*, No. 13 CIV. 4591, 2013 WL 6704885, at *3 (S.D.N.Y. Dec. 19, 2013) ("Affirmative defenses, including the enforcement of a general release, are properly considered by a court as part of a motion to dismiss under Rule 12(b)(6).")

Courts interpret a release of claims based on "well established principles of contract law," "constru[ing the release] to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 498 (2000); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) ("Under New York law, [t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." (internal quotation marks omitted) (alteration in original)); *Register v. White*, 358 N.C. 691, 695 (2004) ("If the terms of the [contract] are plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms." (internal quotation marks omitted)).[3] "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). Connecticut, New York, and North Carolina all employ a similar definition of when an agreement is "ambiguous." *United Illuminating Co. v. Wisvest-Connecticut, LLC*, 259 Conn. 665, 670–71 (2002) ("[A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . [A]ny ambiguity in a contract must emanate from the language used by the parties." (internal citations omitted)); *Eternity Glob.*, 375 F.3d at 178 ("[A]mbiguity exists where a contract term could suggest more

---

[3] I explained in my ruling on Capitala's motion to dismiss NovaFund's complaint that the choice of law analysis in this case is fact-dependent, making it premature to determine which law applies at the motion-to-dismiss stage. ECF No. 45 at 28–29. As I did in that ruling, and as the parties did in their briefing on NovaFund's motion to dismiss Capitala's counterclaims, I will analyze Capitala's counterclaims under the applicable laws of Connecticut, New York, and North Carolina.

than one meaning when viewed objectively by a reasonable intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (alteration in original); *Register*, 358 N.C. at 695 ("An ambiguity exists in a contract when either the meaning of the words or the effect of provision is uncertain or capable of several reasonable interpretations.").

Capitala does not dispute the validity of the Addendum as a contract, but argues that the language of the release in the Addendum is ambiguous and therefore "cannot bar Capitala's counterclaims under Rule 12(b)(6)." Opp'n to Mot. to Dismiss, ECF No. 81 at 7. For instance, Capitala claims that it is ambiguous whether the plaintiff, "NovaFund Advisors, LLC," is the same entity as "NovaFund Advisors," the party to the Addendum, *id.*, and Capitala alleges that it "has no agreements or contractual relationship with [NovaFund Advisors, LLC]," Counterclaim, ECF No. 56 ¶¶ 2, 40. Capitala believes that it executed the Addendum with Columbus Advisory Group, LTD ("Columbus"), that the Addendum "set forth additional agreements between the parties to the original Term Sheet," and that the "Addendum was agreed to and accepted by "NovaFund Advisors," a division of Columbus. Counterclaim, ECF No. 56 ¶ 25, 1.

Even if Capitala is correct that "NovaFund Advisors, LLC" and "NovaFund Advisors" are different entities, it is clear that Capitala intended to release claims against the party that was providing services under the Term Sheet. *See* Counterclaim, ECF No. 56 ¶ 2 (alleging that the Addendum "set forth additional agreements between the parties to the original Term Sheet"); Addendum, ECF No. 70-3 at 2 (releasing claims "related to Nova's services rendered to Capitala, or Capitala's obligations to Nova, to date"). Even if Columbus were the true legal counterparty to the Term Sheet and Addendum, or if Capitala believed that it was when it

entered the agreements, the Addendum unambiguously released claims "related to *Nova's* services." ECF No. 70-3 at 2 (emphasis added). And Capitala's Counterclaim alleges that some NovaFund entity—whether "NovaFund Advisors," a division of Columbus, or "NFLLC," a separate entity—was the party providing services under the Term Sheet. *E.g.*, Counterclaim, ECF No. 56 ¶ 13 ("Capitala engaged Columbus's division, NovaFund, to serve as the exclusive placement agent for Fund V."); *id.* ¶ 20 ("From the inception of its engagement, NovaFund's performance was inadequate."); *id.* ¶ 43 ("If in fact NFLLC was the party with which Capitala contracted . . . then NFLLC breached its agreement with Capitala by failing to use best efforts to place partnership interests in Capitala Fund V . . . .").

As a general matter, therefore, any counterclaims that are "related to Nova's services rendered to Capitala, or Capitala's obligations to Nova, to date [*i.e.*, prior to April 24, 2017]" would be unambiguously within the scope of the release, regardless of the contractual counterparty to the Addendum. ECF No. 70-3 at 2. But for the reasons discussed below, Capitala's allegations, taken as true, do state some claims that fall outside the scope of this release.

### 2. *Declaratory Judgment Claim (Claim I)*

Capitala's first claim for relief is a request for declaratory judgment that "NFLLC is not entitled to recover any fees from Capitala with respect to Fund V, the 2018 Vehicle, or Capitala SLC." Counterclaim, ECF No. 56 ¶ 41. NovaFund moves to dismiss this claim, arguing it is barred by the release and that Capitala's allegation that there is no contractual relationship between it and "NFLLC" is implausible. Mot. to Dismiss, ECF No. 70-1 at 14. NovaFund also argues that "declaratory judgment is a remedy not a separate cause of action," so the claim should be dismissed on that basis. *Id.* at 14 n.3.

NovaFund is correct that "[t]he Declaratory Judgment Act does not . . . . provide an independent cause of action" but "provide[s] a form of relief previously unavailable," such that "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). As discussed below, Capitala has adequately alleged other causes of action regarding its contractual liabilities, including claims for rescission of the Term Sheet and Addendum and for breach of contract. And as Capitala notes in its opposition brief, it did include a request for declaratory judgment in its claim for relief. Opp'n to Mot. to Dismiss, ECF No. 81 at 6 n.6; Counterclaim, ECF No. 56 at 22 (seeking "[a] declaratory judgment holding NFLLC is not entitled to any fees under the Term Sheet or Addendum"). Because I find that Capitala states a claim for rescission and for breach of contract, I also find that it may seek declaratory relief regarding its contract dispute. I grant the motion to dismiss Capitala's "Claim I" as a separate cause of action, but this will not preclude the Court from awarding declaratory relief if it is warranted on Capitala's other claims.

### 3. Breach of Contract Claim (Claim II)

To state a breach of contract claim, a plaintiff must allege formation of an agreement, breach of the agreement by the defendant, and damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540 (Conn. 2014); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (applying New York law); *Prime Commc'ns, L.P. v. Ragsdale Liggett, PLLC*, No. 5:19-CV-238-FL, 2019 WL 5677928, at *5 (E.D.N.C. Oct. 31, 2019) (applying North Carolina law). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are

unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

Here, Capitala pleads its breach of contract claims in the alternative, arguing first that it "has no agreements or contractual relationship with NFLLC," but that "[i]f in fact NFLLC was the party with which Capitala contracted, . . . then NFLLC breached its agreement." Counterclaim, ECF No. 56 ¶¶ 40, 43. Specifically, Capitala alleges that NovaFund "breached its agreement with Capitala by failing to use best efforts to place partnership interests in Capitala Fund V, failing to provide Capitala with exclusive placement services, and abandoning its agreements with Capitala without notice to Capitala . . . . [and] by concealing that it was not a division of Columbus, attempting to provide services without proper licensure, and deceiving Capitala concerning the identity of its contractual counterparty." Counterclaim, ECF No. 56 ¶¶ 43–44. NovaFund argues that Capitala's claims are barred by the release, that NovaFund did not violate any of the provisions of the Term Sheet, and that "[w]ith respect to NovaFund's performance after the Addendum's execution, Capitala fails to sufficiently allege a breach and how that breach caused it harm." Mot. to Dismiss, ECF No. 70-1 at 20–25.

(a) *Effect of Release*

Because I find that the Addendum does bar any claims "related to Nova's services rendered to Capitala . . . to date," and because NovaFund's performance or nonperformance under the Term Sheet is certainly "related to Nova's services rendered to Capitala," the release does bar Capitala's breach of contract claims related to NovaFund's performance *prior* to April 24, 2017, including alleged violations of the exclusivity requirement of the Term Sheet.

As Capitala notes, however, the Counterclaim also alleges "breach[es] of the Term Sheet *after* the Addendum was signed in April 2017." Opp'n to Mot. to Dismiss, ECF No. 81 at 10. For

instance, Capitala alleges that "[a]fter execution of the Addendum, NovaFund continued to default, failing to use its best efforts as the placement agent for Fund V . . . . fail[ing] to make introductions for Capitala with potential investors and fail[ing] to assist Capitala in further marketing of Fund V." Counterclaim, ECF No. 56 ¶ 26. NovaFund admits that these "performance-based allegations after the Addendum's execution" are "not barred by the release." Reply, ECF No. 83 at 6. Capitala also alleges that NovaFund's breach of the alleged exclusivity requirement continued after the release. Counterclaim, ECF No. 56 ¶ 26 ("After the execution of the Addendum . . . . NovaFund continued to make introductions which resulted in capital commitments for funds that were in direct competition with Fund V."). The release cannot be a complete bar, therefore, to this claim.

      *(b) Sufficiency of Pleadings*

Capitala alleges that, continuing after the execution of the Addendum, NovaFund "fail[ed] to use its best efforts[,] . . . . failed to make introductions . . . and failed to assist Capitala in further marketing of Fund V." *Id.* ¶ 26. This alleged post-release conduct violates the specific requirement in the Term Sheet that "NovaFund will make best efforts to place partnership interests in [Fund V] . . . . [and] to assist with the preparation of offering materials and, in coordination with Capitala, contacting potential Fund investors." Term Sheet, ECF No. 81-1 at 2. Based on this alleged post-release conduct, Capitala has plausibly alleged both a duty and a breach.

I also find that Capitala's plausibly alleges a post-release breach of the Term Sheet's purported exclusivity requirement. Capitala avers that, even after April 2017, NovaFund "continued to make introductions which resulted in capital commitments for funds that were in direct competition with Fund V. " Counterclaim, ECF No. 56 ¶ 26. This conduct could plausibly

violate the provision of the Term Sheet stating, "As compensation for the advisory and exclusive placement services to be provided by NovaFund hereunder, Capitala agrees to pay NovaFund a monthly fee . . . ." ECF No. 81-1 at 3. The parties dispute whether this exclusivity language restricted NovaFund or Capitala. Capitala alleges that "NovaFund agreed not to accept an engagement for any investment vehicle that could be competitive with Fund V," Counterclaim, ECF No. 56 ¶ 1, while NovaFund argues that the provision "meant Capitala was prohibited from retaining any other placement agents," Mot. to Dismiss, ECF No. 70-1 at 21. Considering only the allegations contained within Capitala's Counterclaim, I find that the provision is sufficiently ambiguous to prevent dismissal of Capitala's allegations at this stage.[4] Capitala's proposed interpretation is plausible, particularly since payment of a monthly "Retainer Fee" to NovaFund—in addition to commission-based "Success Fee[s]" and "Tail Fee[s]"—makes sense as compensation for NovaFund's forgoing other employment opportunities. Therefore, Capitala's allegation that NovaFund failed to recruit investors exclusively for Fund V even after April 2017 plausibly alleges a breach of NovaFund's contractual duties.

NovaFund also argues that Capitala failed to allege "how [any post-release] breach caused it harm." Mot. to Dismiss, ECF No. 70-1 at 22. At the motion to dismiss stage, however, a plaintiff "need not . . . specify the measure of damages nor plead . . . [specific] proof of causation." *Terex S. Dakota, Inc. v. Carraro Drive Tech, S.P.A.*, No. 3:17-CV-00154, 2018 WL 1211198, at *3 (D. Conn. Mar. 8, 2018). In addition, nominal damages are available in Connecticut, New York, and North Carolina for breach of contract even in the absence of actual

---

[4] I similarly concluded in my ruling on NovaFund's application for prejudgment remedy that the exclusivity provision in the Term Sheet was "at best, ambiguous," and ultimately construed that provision in NovaFund's favor only after considering extrinsic evidence under a "probable cause" standard. ECF No. 58 at 9.

damages. *Lydall, Inc. v. Ruschmeyer*, 282 Conn. 209, 254 (2007) (noting that nominal damages

are available for breach of contract claims in Connecticut); *Ely-Cruikshank Co. v. Bank of*

*Montreal*, 81 N.Y.2d 399, 402 (1993) (Under New York law, "[n]ominal damages are always

available in breach of contract actions."); *Prime Commc'ns*, 2019 WL 5677928, at *6 (applying

North Carolina law and finding, "First, '[i]n a suit for damages for breach of contract, proof of

the breach would entitle the plaintiff to nominal damages at least.' . . . Therefore, where plaintiff

alleges a breach of the obligation to use best efforts, plaintiff's breach of contract claim must

proceed at least on the basis of nominal damages"). Here, Capitala alleges that NovaFund's post-

release conduct caused damages, including "payments made under the agreements, and [] losses

caused by the delay of NFLLC in raising investors for Fund V." Counterclaim, ECF No. 56 ¶ 46.

Though courts may dismiss breach of contract claims "[w]here a party has failed to come

forward with evidence sufficient to demonstrate damages flowing from the breach alleged and

relies, instead, on wholly speculative theories of damages," Capitala has alleged specific conduct

that could plausibly cause specific damages in the form of payments to NovaFund and lost

investors. *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*, 651 N.Y.S.2d 490, 492 (1st

Dep't 1996).[5] At the very least, Capitala has alleged a basis for nominal damages due to

---

[5] NovaFund also argues that this post-release conduct did not cause harm because NovaFund
would "generally" receive compensation only for North American investors, Addendum, ECF
No. 70-3 at 2, and Capitala does not allege that it was "still in the process of raising **any** capital
for Fund V from North American investors" after April 2017. Mot. to Dismiss, ECF No. 70-1 at
22. I agree with Capitala, however, that this argument "goes far outside the allegations of the
counterclaims," ECF No. 81 at 14, and beyond what I may consider at the motion to dismiss
stage. Contrary to NovaFund's arguments, it is far from clear, based on the Addendum, that
"Capitala had shifted its focus to non-North American investors for Fund V, or fund-raising
activities for another vehicle," so I cannot conclude that "NovaFund's alleged failure to provide
advisory services could not have caused Capitala harm." ECF No. 70-1 at 23. Rather, because I
must accept Capitala's plausible allegations as true, I credit Capitala's allegation that
NovaFund's "fail[ure] to use best efforts as the placement agent for Fund V" after April 2017
caused damages in the form of payments to NovaFund and lost investor opportunities.

NovaFund's alleged failure to use best efforts after April 2017. *Prime Commc'ns*, 2019 WL 5677928, at *6. Accepting Capitala's allegations as true, I find that it has adequately alleged a breach of contract claim based on NovaFund's post-release conduct, and I deny the motion to dismiss this claim.

*(c) Breach of the Implied Covenant of Good Faith and Fair Dealing Claim*

As part of its breach of contract claim, Capitala also alleges that "[i]f in fact NFLLC was the party with which Capitala contracted, NFLLC's conduct also constitutes a breach of the covenant of good faith and fair dealing implied in the agreement between the parties." Counterclaim, ECF No. 56 ¶ 45. NovaFund argues that this claim "falls within the [release's] scope and is barred" and "fails to state a claim because it is a mere legal conclusion, devoid of any facts about how NovaFund acted in bad faith in ways that are not barred by the release." Mot. to Dismiss, ECF No. 70-1 at 25 n.8.

A "duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 566 (1984); *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011); *Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 313 (E.D.N.C. 2019); Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). This implied duty requires "that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Alexandru v. Strong*, 81 Conn. App. 68, 81 (2004); *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002); *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228 (1985).

Courts applying New York law have demanded that a contract claim asserting a breach of this implied duty "allege the specific instances or acts that amounted to the breach of those

covenants under the contract in question." *United States ex rel. Smith v. New York Presbyterian Hosp.*, No. 06 CIV 4056 NRB, 2007 WL 2142312, at *16 (S.D.N.Y. July 18, 2007) (dismissing "conclusory, catch-all claim" that "merely incorporates the numerous allegations in [plaintiff's] complaint . . . and then states that some of the alleged activity amounted to a breach of the implied covenants"). Under Connecticut law, a plaintiff must allege "bad faith," which "in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Alexandru v. Strong*, 81 Conn. App. 68, 81 (2004). North Carolina law requires an allegation of bad faith as well, finding that "the implied duty of good faith and fair dealing only arises where a party to a contract performs its contractual obligations in bad faith." *McKinney v. Nationstar Mortg., LLC*, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016).

NovaFund argues that Capitala's allegation of breach of the implied covenant of good faith and fair dealing "is a mere legal conclusion, devoid of any facts, about how NovaFund acted in bad faith in ways that are not barred by the release." Mot. to Dismiss, ECF No. 70-1 at 25 n.8. I disagree. Capitala's Counterclaim makes several allegations of bad faith and fraud against NovaFund.[6] *E.g.*, ECF No. 56 ¶ 23 (suggesting that NovaFund was surreptitiously arranging introductions for competing funds); *id.* ¶ 44 (alleging that NovaFund "conceal[ed] that it was not a division of Columbus, attempt[ed] to provide services without proper licensure, and deceiv[ed] Capitala concerning the identify of its contractual counterparty"); *id.* ¶ 49–51

---

[6] For the reasons discussed below, I find that Capitala's fraud allegations are not unambiguously within the scope of the release, so I do not find that the Addendum bars those allegations as a matter of law. Allegations of fraud and bad faith prior to April 2017, therefore, can support this claim at this stage.

(alleging that NovaFund "deceptively and misleading concealed" information and altered the signature page on the Term Sheet); *id.* ¶ 66 (alleging that NovaFund "knowingly and fraudulently misrepresented that the work being performed under the Term Sheet was being performed or overseen by Columbus and/or MD Global"). Capitala has thus alleged specific instances of bad faith that would violate the implied covenant of good faith and fair dealing, so it has stated a breach of contract claim under this theory as well.

### 4. Fraud Claim (Claim V)

Capitala alleges that NovaFund is liable for common-law fraud because NovaFund "knowingly and fraudulently misrepresented . . . that 'NovaFund' was a division of Columbus," "knowingly and fraudulently participated in the alteration of the signature sheet of the Term Sheet," and "knowingly and fraudulently misrepresented that the work being performed under the Term Sheet was being performed or overseen by Columbus and/or MD Global." Counterclaim, ECF No. 56 ¶¶ 64–66. Capitala asserts that it "relied on these misrepresentations in entering into the Term Sheet," and was injured as a result. *Id.* ¶¶ 67, 69.

NovaFund moves to dismiss this fraud claim, arguing that it "is premised only on allegations that pre-date the execution of the Addendum" and therefore "falls within the release's broad scope and is barred." Mot. to Dismiss, ECF No. 70-1 at 29. NovaFund also argues that Capitala "fails to meet the stringent standards of Rule 9(b)" and fails to allege "how NovaFund caused [Capitala's] harm." *Id.* at 30–31. Capitala argues that its fraud claims are exempt from the release, since fraud is not "related to Nova's services rendered to Capitala, or Capitala's obligations to Nova," since Capitala did not discover NovaFund's "fraudulent activity" until after the execution of the Addendum, and since Capitala alleges "ongoing fraud" in the execution of the Addendum. Opp'n to Mot. to Dismiss, ECF No. 81 at 11–13. Capitala also argues that it

met the requirements of Rule 9(b), since "this requirement is relaxed in situations such as this because the necessary facts are exclusively within *NFLLC's control*." *Id.* at 24 (emphasis in original).

### (a) *Effect of the Release*

Though NovaFund argues that Capitala's fraud claims are barred by the release, I decline to dismiss Capitala's claim on this basis. In the Addendum, the parties released only claims "related to Nova's services rendered to Capitala, or Capitala's obligations to Nova, to date." ECF No. 70-3 at 2. It is ambiguous whether this language encompasses allegations of fraud as to NovaFund's identity and allegations of fraudulent inducement—issues which go to the validity of the contract. The terms "services rendered" and "obligations" could reasonably be interpreted to refer only NovaFund's performance as a placement agent and to Capitala's payment of fees as required by the Term Sheet. The release does not make any explicit reference to the Term Sheet or to the general agreement between NovaFund and Capitala, so issues regarding the execution and validity of the agreement are not clearly included in the release's scope. By enumerating only "services rendered" and "obligations," the language could reasonably suggest that issues regarding the execution and validity of the agreement are not released.

The cases NovaFund cites to argue that fraud and fraudulent inducement claims are included in the release are inapposite. The release language in most of the cited cases specifically mentions an agreement, so claims concerning the validity of the agreement were within the scope of those releases. *MacDonald v. Dragone Classic Moto Cars*, No. 95-cv-499, 2003 WL 22056626, at *3, 8 (D. Conn. Apr. 29, 2003) (holding that settlement agreement barred fraudulent inducement claims where release provision explicitly included "any claims that the settlement was procured by mistake, inadvertence, . . . fraud, or any other reason"); *Centro*

*Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 277 (2011) (finding that release "encompasses unknown fraud claims" where release included "all manner of actions . . . arising under or in connection with the Agreement Among Members and/or arising out of . . . the ownership of membership interest in [defendant]"); *Int'l Bus Machines Corp. v. Simon*, 376 F. Supp. 3d 292, 301 (S.D.N.Y. 2019) (finding that release included fraudulent inducement claim where release included all claims "that arise out of or relate to any  matters related to [the software at issue] and/or the [Software Agreement]"). In other cited cases, the language of the release is broader than the language of the Addendum and is not limited to specific topics such as "services rendered" or "obligations." *Kraus v. Wells Fargo Sec., LLC*, 721 S.E.2d 408 (unpublished) (N.C. Ct. App. 2012) (finding that the release encompassed fraud claims where release included "any and all claims of liabilities of whatever kind or nature, that you have ever had or which you now have, known or unknown," without any limitation on subject matter); *Fin. Servs. of Raleigh, Inc. v. Barefoot*, 594 S.E.2d 37, 39, 43 (N.C. Ct. App. 2004) (holding that even unknown claims were released where release included "all claims of any kind arising out of the subject matter of this litigation"). Because the language of the Addendum is narrower and does not specifically mention the Term Sheet or any agreement between the parties, I cannot conclude that the release unambiguously includes Capitala's allegations of fraud.

  *(b) Sufficiency of Pleadings*

  I agree with NovaFund that Capitala has failed to plead fraud with the particularity required by Rule 9(b), but because fraud claims are not unambiguously barred by the release, I grant Capitala leave to amend this claim.

To state a claim for fraud, Capitala must allege (1) that NovaFund made a false representation as a statement of fact, (2) that the fact was untrue and known by NovaFund to be untrue, (3) that the statement was made with intent to induce Capitala to rely on it, and (4) that Capitala did rely on it to its injury. *Foundation Capital Resources, Inc. v. Prayer Tabernacle Church of Love, Inc.*, No. 3:17-cv-00135, 2018 WL 4697281, at *7 (D. Conn. Sept. 30, 2018); *see also Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir. 2000) (stating similar elements under New York law: material misrepresentation, knowledge of falsity, intent to defraud, reasonable reliance, and damage); *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 414 (E.D.N.C. 2015) (stating similar elements under North Carolina law: false representation or concealment of material fact, reasonably calculated to deceive, made with intent to deceive, which does in fact deceive, causing damage).

Rule 9(b) imposes heightened pleading requirements on fraud allegations, requiring plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[7] Courts have interpreted Rule 9(b) to require plaintiffs to plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what they obtained thereby." *Solum*, 147 F. Supp. 3d at 414; *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) ("[W]hen a complaint charges fraud, it must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."). The Second Circuit has noted that Rule 9(b) requires

---

[7] Because this Court's jurisdiction is based on the diversity of citizenship of the parties, state substantive law defines the elements of a fraud claim, but federal law governs the procedural pleading requirements. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Perkett v. Applied Printing Techs., L.P.*, No. 3:03CV1840, 2004 WL 322895, at *2 (D. Conn. Feb. 17, 2004).

fraud plaintiffs to plead not only the particular "circumstances of the fraud"—the who, what, where, when, and why of the false statements—but also "the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). "[T]hough mental states may be pleaded generally, Plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent." *Id.* (internal quotation marks omitted).

Capitala's fraud counterclaim falls short of the requirements of Rule 9(b). Capitala alleges three specific misrepresentations: (1) that "NFLLC knowingly and fraudulently misrepresented (or concealed . . . ) that 'NovaFund' was a division of Columbus[;]" (2) that "NFLLC also knowingly and fraudulently participated in the alteration of the signature sheet of the Term Sheet" without notifying Capitala; and (3) that "NFLLC also knowingly and fraudulently misrepresented that the work being performed under the Term Sheet was being performed or overseen by Columbus and/or MD Global." Counterclaim, ECF No. 56 ¶¶ 64–66. All three of these are essentially misrepresentations that NovaFund was a division of Columbus or MD Global rather than a separate entity. I agree with NovaFund that these allegations do not adequately specify the "who" and "when" behind the allegedly fraudulent statements. For example, there is no detail as to who from NovaFund informed Capitala "that the work being performed under the Term Sheet was being performed or overseen by Columbus and/or MD Global," or when any such statement was made. *Id.* ¶ 66. I also agree that "Capitala nowhere explains NovaFund's intent to deceive" regarding any of the three alleged misrepresentations. Mot. to Dismiss, ECF No. 70-1 at 31. While the "conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "Plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent." *Loreley*, 797 F.3d at 171. Capitala has not alleged any facts suggesting that NovaFund intended to deceive Capitala as to its identity; the conclusory

allegation that "NFLLC's fraud was willful" is insufficient under Rule 9(b). Nor has Capitala alleged why NovaFund would want to falsely represent that it was a division of Columbus rather than a separate entity. In short, Capitala has failed to satisfy the pleading requirements of Rule 9(b).

Capitala also has not plausibly alleged that it was harmed by NovaFund's alleged misrepresentations. Capitala claims that "[i]t was essential . . . that Columbus be the party engaged for this placement agent work because . . . . Columbus was a registered broker-dealer, as required by the [Securities and Exchange] Act," but does not explain what harm Capitala would suffer if NovaFund was not a registered broker-dealer. Counterclaim, ECF No. 56 ¶ 14. Without any allegations on this issue, I cannot infer that Capitala would be injured by NovaFund's alleged lack of appropriate licensure. Capitala's conclusory statement that "[a]s a proximate result of NFLLC's fraud, Capitala has been injured" is insufficient to state a fraud claim.

For these reasons, I grant the motion to dismiss Capitala's fraud claim, but I grant Capitala leave to amend this claim to address the deficiencies I identified.

### 5. *Unfair and Deceptive Trade Practices Claims (Claims III–IV)*

Capitala alleges that NovaFund violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1 *et seq.*, because it "misleadingly concealed . . . or falsely represented (i) the identity and licensure of Capitala's contractual counterparty, and (ii) that NovaFund would raise funds exclusively for Fund V," and altered the signature page of the Term Sheet. Counterclaim, ECF No. 56 ¶¶ 49–50. In the alternative, Capitala alleges that the same conduct violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a. NovaFund moves to dismiss both claims, arguing that Capitala fails to state a claim under either law. Mot. to Dismiss, ECF No. 70-1 at 25.

*(a) Effect of the Release*

NovaFund argues that Capitala's UDTPA and CUTPA claims are "based on allegations all barred by the Addendum's release." *Id.* at 26, 28. I disagree. As discussed above, the allegations of fraud—misrepresenting "the identity and licensure of Capitala's contractual counterparty" and altering the signature page—are not unambiguously barred by the release in the Addendum. And the allegation that NovaFund "falsely represented . . . that NovaFund would raise funds exclusively for Fund V" includes some conduct after April 2017. *E.g.*, Counterclaim, ECF No. 56 ¶ 26 ("After the execution of the Addendum . . . . NovaFund continued to make introductions which resulted in capital commitments for funds that were in direct competition with Fund V."). Therefore, the release does not clearly bar Capitala's UDTPA and CUTPA claims at this stage.

*(b) Sufficiency of UDTPA Pleadings*

To state a claim under the North Carolina UDTPA, N.C. Gen. Stat. § 75-1.1 Capitala must allege that (1) NovaFund committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to Capitala. *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 41 (2006). An act is "unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is "deceptive if it has the capacity or tendency to deceive." *Id.* (internal quotation marks omitted). "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1. To recover for unfair and deceptive trade practices, a party must show substantial aggravating circumstances attending the breach of contract." *Id.* at 42 (internal citations and quotation marks omitted).

NovaFund argues that Capitala's UDTPA claims are "mere breach of contract allegations," which cannot support a UDTPA claim. I disagree, because Capitala does allege post-release conduct that would constitute "substantial aggravating circumstances attending the breach of contract." *Bob Timberlake Collection*, 176 N.C. App. at 42. While Capitala does not allege how NovaFund's deceptive conduct caused injury, as discussed above, it does allege other forms of unscrupulous conduct. For example, Capitala alleges not only that NovaFund breached the purported exclusivity requirement of the Term Sheet, but also that NovaFund "ma[d]e introductions which resulted in capital commitments for funds that were in direct competition with Fund V" and "[u]pon information and belief, NovaFund even took potential investor suggestions that *Capitala* gave NovaFund and arranged for capital commitments from those investors to funds that were in direct competition with Fund V." Counterclaim, ECF No. 56 ¶ 26. Capitala also alleges "[u]pon information and belief" that, in 2018, NovaFund "reached out to one or more of Capitala's business relationships and pressured them to reveal whether they had invested in Capitala [SLC]," thereby "harm[ing] Capitala's business relationship(s) and adversely impact[ing] Capitala's reputation for respecting client confidentiality." *Id.* ¶ 35. These allegations go beyond breach of the Term Sheet and constitute aggravating circumstances. Courts have recognized that an agent's use of a principal's confidential information to benefit the principal's competitor constitutes an unfair business practice. *See RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2016 WL 3892416, at *5 (M.D.N.C. July 14, 2016) ("Defendant was employed by Plaintiff, signed a contract prohibiting the transmission of confidential information, and then used his status as an employee to steal proprietary and confidential information that derived value from its secret status for the benefit of a would-be competitor of his employer.

Those actions were clearly immoral and unethical . . . . As such, they were an unfair or deceptive act for purposes of the statute.").

Capitala plausibly alleges that this conduct proximately caused injury. The Counterclaim states that NovaFund's "reach[ing] out to . . . Capitala's business relationships" upset those contacts, "harmed Capitala's business relationship(s) and adversely impacted Capitala's reputation for respecting client confidentiality." ECF No. 56 ¶ 35. Capitala also alleges that, by introducing investors to competing funds, NovaFund damaged the success and viability of Fund V. *See id.* ¶ 46 (seeking recovery of "losses caused by . . . diversion by NFLLC of potential investors away from Capitala to competing funds"). Because Capitala has alleged that NovaFund committed an unfair act, in commerce, that proximately caused injury to Capitala, I find that the Counterclaim states a claim under North Carolina's UDTPA.[8]

   *(c)* *Sufficiency of CUTPA Pleadings*

To state a claim under CUTPA, Conn. Gen. Stat. § 42-110b, Capitala must allege (1) that NovaFund engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce in Connecticut, and (2) that Capitala has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices. *Artie's Auto Body, Inc. v. Hartford Fire*

---

[8] NovaFund also argues that the UDTPA claim fails because "NovaFund is a non-North Carolina entity whose allegedly wrongful conduct took place outside of North Carolina." Mot. to Dismiss, ECF No. 70-1 at 28. The case NovaFund cites explains that the UDTPA covers conduct "to the limits of . . . the North Carolina long-arm statute," allowing "personal jurisdiction over defendants in a case involving foreign acts if any injury to person or property occurs within North Carolina and, at or about the time of the injury, the defendants were either working in North Carolina or had products in the North Carolina commerce through the ordinary course of business." *Verona v. U.S. Bancorp*, No. 7:09-CV-057-BR, 2011 WL 1252935, at *12 (E.D.N.C. Mar. 29, 2011). The UDTPA reaches "cases involving a substantial effect on plaintiff's operations in North Carolina." *Id.* Capitala, a North Carolina company, pleads substantial effect on itself and its Fund V as a result of NovaFund's conduct. That is sufficient at the pleading stage.

*Ins. Co.*, 947 A.2d 320, 329 (Conn. 2008). On the first prong, "[i]t is well settled that in determining whether a practice violates CUTPA, the following criteria are to be employed: (1)[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise— whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businessmen]." *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 3:08-CV-1958(CFD), 2010 WL 1882316, at *9 (D. Conn. May 10, 2010). Conduct may "either strongly satisfy one of these criteria or satisfy all of the criteria to a lesser degree." *Id.* As with the UDTPA, a "simple breach of contract . . . does not constitute a violation of CUTPA" unless plaintiffs allege "sufficient aggravating circumstances." *Id.* As to the second prong, "[a]n ascertainable loss is a loss that is capable of being discovered, observed, or established." *Artie's Auto Body*, 947 A.2d at 330 (internal quotation marks omitted). The plaintiff is "not required to prove actual damages of a specific dollar amount," but only that the loss "is measurable even though the precise amount of the loss is not known." *Id.*

NovaFund argues that Capitala's CUTPA claim—which is pled in the alternative to its UDTPA claim—should be dismissed because "it simply recasts its breach of contract and fraud claims . . . and its ascertainable loss allegations fail." Mot. to Dismiss, ECF No. 70-1 at 26. For the same reasons as discussed above regarding the UDTPA claim, I find that Capitala sufficiently alleged aggravating circumstances in addition to the alleged breach of contract, such as providing investor contacts to Capitala's direct competitors. I also find, as discussed above, that Capitala sufficiently alleged damages caused by NovaFund's conduct. While the effect of

28

NovaFund's conduct on the success of Fund V and on Capitala's business reputation might be difficult to prove, it is at least "capable of being discovered," and Capitala need not prove the amount of the loss at this point. The precise effect of NovaFund's conduct on the success of Fund V and on Capitala's reputation is an issue of fact to be determined through discovery and at trial. Therefore, I deny the motion to dismiss the CUTPA claim.

### 6. *Rescission Claim (Claim VI)*

Capitala seeks rescission of the Term Sheet, arguing that it is "illegal, void, unenforceable," and argues that "NFLLC must return to Capitala all compensation paid under the Term Sheet, including but not limited to the retainer fees paid by Capitala." Counterclaim, ECF No. 56 ¶ 97. The Term Sheet is illegal, Capitala claims, because "the Term Sheet requires NFLLC to perform services that may only be performed by individuals or entities registered as brokers" and "NFLLC was not and is not registered as a broker." *Id.* ¶¶ 93–95. In its opposition brief, Capitala clarified that it seeks "rescission of the Term Sheet under Section 29(b) of the Securities and Exchange Act of 1934 (the "1934 Act") because it is an illegal contract and is therefore void." Opp'n to Mot. to Dismiss, ECF No. 81 at 27. NovaFund moves to dismiss this claim arguing that it is barred by the release and that Capitala failed to allege the required elements of a Section 29(b) claim. Reply, ECF No. 83 at 13.

Section 29(b) of the 1934 Act provides:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract . . . ."

15 U.S.C. § 78cc(b). Courts in this Circuit agree that "a party seeking to void a contract under § 29(b) must show that (1) the contract involved a prohibited transaction, (2) he is in contractual

privity with the defendant, and (3) he is in the class of persons the Act was designed to protect."

*RWP Consol., L.P. v. Salvatore*, 534 F. Supp. 2d 364, 368 (D. Conn. 2008); *Found. Ventures, LLC v. F2G, LTD.*, No. 08 CIV. 10066 PKL, 2010 WL 3187294, at *6 (S.D.N.Y. Aug. 11, 2010). Section 15 of the 1934 Act requires brokers and dealers to register with the Securities and Exchange Commission ("SEC") before they "effect any transactions in, or [] induce or attempt to induce the purchase or sale of, any security." 15 U.S.C. § 78o(a)(1). Securities transactions effected or induced or attempted by non-registered broker-dealers are therefore illegal under the 1934 Act. In determining whether a party acted as a broker or dealer within the meaning of the Act, courts looks to factors such as commission-based income, *Schatzki v. Weiser Capital Mgmt., LLC*, No. 10 CIV. 4685, 2016 WL 6662264, at *4 (S.D.N.Y. Nov. 9, 2016) (noting that "commission income" is "a factor deemed highly probative on the issue of whether an unlicensed person is a broker under the Exchange Act"); *Found. Ventures*, 2010 WL 3187294, at *5, and whether the party "participates in negotiations between the issuer and the investor" and "finds investors actively rather than passively," *id.*

I find that Capitala's Counterclaim adequately alleges a Section 29(b) claim for rescission. First, although Capitala does not cite the 1934 Act explicitly in its Counterclaim, it does seek rescission of the contract and alleges all the necessary elements. Capitala alleges that NovaFund "was not and is not registered as a broker with the appropriate federal and state securities regulators and/or self-regulatory agencies"; liberally construed, these statements allege violations of SEC regulations, including Section 15's registration requirement. Counterclaim, ECF No. 56 ¶ 94.

Second, contrary to NovaFund's arguments in its reply brief, ECF No. 83 at 13, Capitala does allege, in the alternative, contractual privity with NovaFund. *E.g. id.* ¶ 44 ("If in fact

NFLLC was the party with which Capitala contracted . . . NFLLC further breached its agreement . . . by . . . attempting to provide services without proper licensure."). Such pleading is permitted by Fed. R. Civ. P. 8(d)(2), which allows parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically."

Third, Capitala alleges a prohibited transaction, since it alleges that NovaFund agreed to serve as a broker-dealer for Fund V without the requisite registration. In the Term Sheet, NovaFund agreed "to make best efforts to place partnership interests in [Fund V]," and to "work[] with Capitala's legal counsel and other relevant parties to document and close the Fund." ECF No. 81-1 at 2. Based on the language of the Term Sheet, Capitala plausibly expected NovaFund's involvement not only in finding investors but in negotiating the ultimate documentation and closing, and it agreed to pay NovaFund in part based on commission, depending on "capital commitments from Target Investors." ECF No. 81-1 at 3.[9] Since courts have interpreted similar provisions as indicative of broker-dealer activity, *Found. Ventures*, 2010 WL 3187294, at *5, it is plausible that NovaFund agreed to serve as an unregistered broker-dealer for Fund V. Such an agreement would make the Term Sheet illegal and voidable under Section 29(b).

In its motion to dismiss papers, NovaFund argues that its employees were affiliated with a licensed broker-dealer, allowing them to "perform the services under the Term Sheet as

_____

[9] NovaFund argues that this argument regarding commission-based payments is a "red herring" because "Capitala explicitly alleges that payments were made to Columbus." Reply, ECF No. 83 at 14 n.13. However, the Counterclaim alleges only that the "monthly retainer" was paid to Columbus, ECF No. 56 ¶ 4, and that "NovaFund initially directed Capitala to pay fees as they came due to Columbus," *id.* ¶ 19. The Counterclaim does not allege that any commission-based payments were actually made to Columbus (or NovaFund) and does not conclusively undermine the language of the Term Sheet suggesting that Success Fees and Tail Fees would be paid to NovaFund based on the capital commitments of Target Investors in Fund V.

registered representatives of that broker-dealer." Reply, ECF No. 83 at 14; *see also* Mot. to Dismiss, ECF No. 70-1 at 36–37. I agree with Capitala, though, that such factual arguments regarding NovaFund employees are improper at the motion-to-dismiss stage. Capitala has not alleged which specific NovaFund employees performed which tasks, so I must accept as true Capitala's allegation that the "Term Sheet requires NFLLC to perform services that may only be performed by individuals or entities registered as brokers," and that "NFLLC was not and is not registered as a broker." Counterclaim, ECF No. 56 ¶¶ 93–94.

Finally, Capitala has alleged that it is within the class of persons the 1934 Act was designed to protect. Courts have construed that third element of a Section 29(b) claim broadly for "member[s] of the securities industry." *See Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.*, 93 F. Supp. 2d 220, 232 (D. Conn. 2000) ("We see no reason to limit the Act's protections to only issuers and investors and to withhold its protections from duly registered members of the securities industry."); *Reg'l Properties, Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 561 (5th Cir. 1982) (finding that a partnership was within the class of persons the Act was designed to protect since, "[w]hile the law was enacted to protect the public interest and the investor, its protection extends beyond those who buy securities"). Capitala, which organizes and manages investment funds, ECF No. 56 ¶ 1, is a member of the securities industry and falls within the protections of the 1934 Act. Therefore, Capitala has stated a claim for rescission of the Term Sheet and Addendum under Section 29(b), and I deny the motion to dismiss Claim VI.

***

For the reasons set forth above, the motion to dismiss is granted with respect to Capitala's fraud claim (Claim V), but I grant Capitala leave to replead. The motion is also granted with

respect to the declaratory judgment claim (Claim I), in that the request for declaratory judgment should not be construed as a separate cause of action, but rather as a form of relief sought on Capitala's other contract claims. As to Capitala's other counterclaims for breach of contract, violations of UDTPA or CUTPA, and rescission, the motion to dismiss is denied.

## III.    MOTION TO AMEND COUNTERCLAIM AND JOIN PARTIES (ECF No. 67)

### A.  Legal Standards

Under Fed. R. Civ. P. 15(a)(2), a party may amend its pleading with the court's leave, which should be "freely give[n] . . . when justice so requires."  Courts "consider[] factors such as undue delay, bad faith, dilatory motive, undue prejudice, and futility of the amendment in assessing whether to permit a party to file" an amended pleading. *Conquistador v. Adimitis*, No. 3:18CV1240, 2018 WL 6344187, at *2 (D. Conn. Dec. 5, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

When a party seeks to add more defendants, Fed. R. Civ. P. 20(a)(2) permits joinder of claims if  "(A) any right to relief is asserted against them jointly, severally, or in the alternative, with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." The district court also must determine whether permissive joinder "will comport with the principles of fundamental fairness." *Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 565 (S.D.N.Y. 2001). The court may "deny a motion for joinder where the addition of the defendants would cause prejudice, expense, and delay by opening up a 'Pandora's box' of discovery." *Id.*

## B. Discussion

Before NovaFund filed its motion to dismiss Capitala's Counterclaim, Capitala sought to amend its Counterclaim to join two additional parties: Columbus Advisory Group Ltd. ("Columbus") and MD Global Partners, LLC ("MD Global"). *See* Mot. to Amend, ECF No. 68. Capitala's proposed amended Counterclaim asserts the same causes of action against the proposed new defendants.[10] ECF No. 67-2. Capitala argues that joinder of Columbus and MD Global is proper under Fed. R. Civ. P. 19(a) or, in the alternative, Fed. R. Civ. P. 20. NovaFund opposes the motion to amend, arguing primarily that the proposed claims against Columbus and MD Global are futile. NovaFund also argues that the motion is untimely and that Capitala has not shown that joinder is proper under either Rule 19(a) or 20. I find that none of these objections has sufficient merit to deny leave to amend.

### 1. Timeliness

Rule 16(a) requires judges to issue a scheduling order "limit[ing] the time to join other parties, [and] amend the pleadings." That schedule "may be modified only for good cause and with the judge's consent." In this case, the initial standing order on pretrial deadlines required any amended pleadings to be filed by August 14, 2018. ECF No. 4. After ruling on Capitala's motion to dismiss NovaFund's complaint and on NovaFund's motion for prejudgment remedy, I issued a scheduling order on April 16, 2019 resetting the case's discovery and other pretrial deadlines, but I neglected to include an updated deadline to amend pleadings. ECF No. 64.

---

[10] The proposed amended Counterclaim asserts the rescission claim against NovaFund only, and asserts a breach of contract claim against each of the proposed three defendants in the alternative. *See* ECF No. 67-2 at 19–21, 27. The other claims are asserted against all three proposed defendants.

NovaFund argues that "Capitala fails to assert any reason for its failure to comply with the [August 14, 2018] deadline for filing a motion for amendment or joinder." Opp'n to Mot. ot Amend, ECF No. 75 at 8. I disagree. Because its motion to dismiss was pending for several months, Capitala did not file its Answer and Counterclaim until March 27, 2019—six months after the initial deadline for amended pleadings in the standing order. It would be unreasonable to hold Capitala to the August 2018 deadline, particularly since its motion to dismiss contested this Court's personal jurisdiction over it. It was reasonable for Capitala to await the outcome of its motion to dismiss before asserting any counterclaims against NovaFund or any other party in this Court. Capitala moved to amend its Counterclaim only 30 days after filing it, and before NovaFund had filed any response.[11] Moreover, because discovery was stayed during the pendency of Capitala's motion to dismiss, *see* ECF No. 41, Capitala sought to join defendants after only a month and a half of discovery. Finally, following motions to extend the discovery schedule, ECF Nos. 84, 88, discovery is not scheduled to close until April 30, 2020. ECF No. 89. There is no trial date scheduled. NovaFund itself filed a motion to amend its complaint on December 11, 2019. ECF No. 96. Based on all this procedural history, Capitala's motion to amend and to join new parties was not unreasonably delayed, and it had good cause for filing its motion after the deadline set by the initial standing order.

### 2. Futility

NovaFund also argues that Capitala's proposed claims against Columbus and MD Global are "futile." Opp'n, ECF No. 75 at 9. While "leave to amend a complaint may be denied when amendment would be futile," *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014), I do not find the

---

[11] In its reply brief, Capitala notes that it "sought consent from NovaFund to join Columbus and MD Global on April 8, 2019."

proposed amendments to be futile. As discussed above, none of Capitala's counterclaims is completely barred by the release. It is certainly not clear that the language of the Addendum would bar all claims against Columbus or MD Global, since the release applies only to claims "related to *Nova's* services rendered to Capitala, or Capitala's obligations to *Nova*, to date." ECF No. 70-3 at 2. Because I found that the release does not unambiguously bar Capitala's claims, I also find that the release does not render Capitala's proposed amendment futile.

NovaFund also mischaracterizes the relevance of my ruling on its motion for prejudgment remedy to Capitala's motion to amend. As explained in that ruling, a prejudgment remedy is available under Connecticut law upon a finding of probable cause, which is "not as demanding as proof by a fair preponderance of the evidence." ECF No. 58 at 2 (citing *TES Franchising, LLC v. Feldman*, 286 Conn. 132, 137 (2008)). While I found that NovaFund met the probable cause standard, that ruling does not determine which party will ultimately prevail on the merits, after discovery, under a preponderance of the evidence standard. Nothing in that ruling suggests that Capitala should not be allowed to plead counterclaims and take discovery on those claims.

NovaFund's other arguments that Capitala's proposed amendment is futile restate arguments made in its motion to dismiss. *See* ECF No. 75 at 15–16 (arguing that "there was no exclusivity clause in the agreement," that allegations are "internally inconsistent," and that "Capitala fails to sufficiently allege a [post-release] breach and how that breach caused it harm"). For the same reasons I rejected these arguments with respect to NovaFund's motion to dismiss, I reject them with respect to the motion to amend as well and find that Capitala's proposed amendment is not futile.

### 3. Joinder

Capitala argues that Columbus and MD Global are "required parties" under Rule 19; in the alternative, Capitala also argues that they may be permissively joined under Rule 20. Mot. to Amend, ECF No. 68 at 6, 16. I need not determine, at this point, whether Columbus and MD Global are required parties under Rule 19 because I grant permissive joinder under Rule 20.

Capitala meets the technical requirements of Rule 20 because its proposed claims against NovaFund, Columbus, and MD Global are asserted either jointly and severally or in the alternative, they all arise from the Term Sheet and Addendum and the parties' performance thereunder, and there are many common questions of law and fact. There is no indication that joining Columbus and MD Global would cause unfair prejudice, expense, or delay; as explained above, Capitala sought to join these parties after only a month and a half of discovery, and there is no trial date set in this case as of yet. While joining additional parties will undoubtedly cause some delay, that delay is not the result of any bad faith by Capitala, and Capitala's interest in a full adjudication on the merits outweighs the delay. The delay also will not prejudice NovaFund, which seeks to amend its own complaint as well. ECF No. 96.

### 4. Jurisdiction

In its motion, Capitala asserts that the "joinder of Columbus and MD Global as counterclaim-defendants will not deprive this Court of subject matter jurisdiction" because complete diversity will still exist. ECF No. 68 at 14–15. Though NovaFund does not challenge the Court's subject matter jurisdiction over Capitala's proposed amended Counterclaim, the Court has an "independent duty to examine [its] jurisdiction." *United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square*, 30 F.3d 298, 301 (2d Cir. 1994). As I have previously noted in this case, *see* ECF No. 86, blanket assertions that the

members of an LLC are not citizens of a non-diverse state are insufficient to establish complete diversity. *Avant Capital Partners, LLC v. W108 Dev. LLC*, No. 16-cv-3359 (LLS), 2016 WL 3660756, at *2 (S.D.N.Y. Jun 30, 2016) ("The blanket assertion that none of [defendant LLC]'s members resides in Connecticut [does not] suffice.").

Though the proposed counterclaim does not clearly allege Columbus's citizenship, Capitala's brief states that Columbus is a citizen of New York, and an affidavit filed earlier supports that statement. *Id.* at 15; Murphy Aff., ECF No. 38-1 ¶ 3 (Columbus CEO swearing that "Columbus is a corporation organized under the laws of the State of New York with its principal place of business in New York, New York"). Based on this affidavit, I am satisfied that the joinder of Columbus would not destroy complete diversity in this case.

Capitala's Counterclaim and brief also aver that MD Global is an "entity organized under Delaware law with its principal place of business in New York, New York" and that its "members are not citizens of North Carolina." ECF No. 68 at 15; Proposed Am. Counterclaim, ECF No. 67-2 ¶ 13. This statement does not suffice to establish that MD Global is diverse from Capitala. It is unclear from the proposed amended counterclaim whether MD Global is an LLC or corporation or other entity, and if MD Global is an LLC, the proposed amended counterclaim does not affirmatively allege the citizenship of all MD Global's members. Therefore, within 21 days of this order, Capitala shall file a statement on the docket affirmatively alleging the citizenship of MD Global. If it cannot do so, it may take limited discovery aimed at identifying the citizenship of MD Global.

***

For all these reasons, I grant leave to add Columbus as a counterclaim-defendant. I grant leave to add MD Global as well, but Capitala must file a statement within 21 days adequately

alleging MD Global's citizenship. Capitala shall serve its counterclaims on Columbus and MD Global and file proof of service on the docket within 21 days of this ruling.

## IV.     MOTION TO AMEND COMPLAINT (ECF No. 96)

On December 11, 2019, NovaFund moved to amend its complaint to add additional claims against Capitala for fraud, tortious interference with NovaFund's business expectancies, unfair and deceptive trade practices in violation of North Carolina's UDTPA, and declaratory relief. Mot. to Amend, ECF No. 96-1 at 2. NovaFund argues that the grounds for these claims came to light through discovery. *Id.* Capitala opposes the motion to amend, arguing that NovaFund's proposed amendments are futile and that there has been undue delay in bringing UDTPA claims. NovaFund has not yet filed any reply, but for the reasons discussed below, I rule in its favor.

As discussed above, a party may amend its pleading with the court's leave, which should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  Courts "consider[] factors such as undue delay, bad faith, dilatory motive, undue prejudice, and futility of the amendment in assessing whether to permit a party to file" an amended pleading. *Conquistador*, 2018 WL 6344187, at *2.

### A.  Futility

Capitala argues that several of NovaFund's proposed amendments are futile because they "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Opp'n to Mot. to Amend, ECF No. 100 at 5 (citing *Lavigne v. Michael's Stores, Inc.*, No. 3:14-CV-01717 CSH, 2015 WL 1826169, at *4 (D. Conn. Apr. 22, 2015)).

### 1. *Fraud Claim*

In support of its proposed fraud claim, NovaFund alleges that Capitala "worked with another agent [Sandler O'Neill] after Capitala engaged NovaFund as its exclusive placement agent," "add[ed] names to the carve out list of investors at Sandler O'Neill's behest," and that "NovaFund would not have entered into the contract with Capitala had it known of Capitala's fraudulent misrepresentations." Mot. to Amend, ECF No. 96-1 at 2–3; Proposed Am. Compl., ECF No. 96-2 ¶¶ 97–104.

Capitala first argues that this claim is unambiguously barred by the release in the Addendum, arguing that the release of claims "related to . . . Capitala's obligations to Nova, to date" operated as a "general release" of all claims, including fraud claims. Opp'n to Mot. to Amend, ECF No. 100 at 6–7. I disagree. It is ambiguous whether the language of the release, limiting its scope to claims "related to . . . Capitala's obligations to Nova, to date," includes allegations of fraudulent inducement by Capitala. The term "obligations" could be interpreted to refer only to Capitala's payment of fees. The release does not make explicit reference to the Term Sheet or to the general agreement between the parties, so issues regarding the validity of the agreement are not clearly included in the release's scope. *See supra* Section II.B.4. For many of the same reasons articulated above regarding Capitala's fraud counterclaim, I cannot conclude that the release unambiguously includes NovaFund's allegations of fraud.

I also reject Capitala's argument for judicial estoppel. The doctrine of judicial estoppel typically applies if "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010). I did not

adopt NovaFund's position in its motion to dismiss Capitala's Counterclaim regarding the scope of the release, as discussed above; I did not find that any of Capitala's counterclaims were completely barred by the release. Therefore, NovaFund has gained no unfair advantage and is not estopped from arguing that its new proposed claims are permissible.

Capitala also argues that NovaFund's proposed fraud claim is futile because it is barred by Connecticut's statute of limitations. Opp'n, ECF No. 100 at 9 n.7; Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."). I reject this argument as well. Under Fed. R. Civ. P. 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." "Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. American Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks omitted). But "claims that are based on an 'entirely distinct set' of factual allegations will not relate back." *Id.*

NovaFund's original complaint, like its proposed amended complaint, is centered on the Term Sheet and the parties' performance under it. The original complaint describes entering into the agreement, ECF No. 1 ¶¶ 5–7, notes key provisions such as NovaFund's status as the "exclusive placement agent" for Fund V, *id.* ¶ 5, and the "carved out investors," *id.* ¶ 7, and describes the decision to "enter into an Advisors Addendum" in April 2017, alleging that "Capitala requested that the parties amend the Agreement to allow Capitala to retain one or more additional placement agents focused on investors in specific non-North American jurisdictions,"

*id.* ¶¶ 10–11. NovaFund's proposed fraud claim arises out of this same "conduct, transaction, or occurrence" because it arises from the negotiation of the Term Sheet and Addendum and the performance under both documents. *See* Proposed Am. Compl., ECF No. 96-2 ¶¶ 99–100 ("Capitala misrepresented to NovaFund that NovaFund would be the exclusive placement agent for Fund V" while Capitala was actually "colluding with Sandler O'Neill in connection with Fund V," "conceal[ing] Sandler O'Neill's role and identity from NovaFund," and adding names to the carve out list of investors at Sandler O'Neill's behest.). Capitala was certainly on notice, following NovaFund's original complaint, that its conduct entering into and performing under the Term Sheet and Addendum was under scrutiny. NovaFund's proposed fraud allegations, therefore, relate back to the date of the original pleading under Rule 15(c)(1)(B) and are timely.[12]

### 2. *Tortious Interference Claim*

NovaFund also seeks to add a claim for tortious interference with business expectancy, alleing that "Capitala sought to preclude NovaFund from communicating with prospective investors by placing about 40 names on the carve out list" and making "disparaging comments" about NovaFund to "other investment professionals." Proposed Am. Compl., ECF No. 96-2 ¶¶ 107–08.

Under Connecticut and New York law, a plaintiff must allege a business relationship between itself and a third party in order to state a claim for tortious interference with "business expectancies" or a business relationship. *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 417–18 (D. Conn. 2018) ("A party setting out a tortious interference with business

---

[12] Even if the proposed fraud allegations did not relate back, NovaFund's proposed amended complaint alleges that Capitala's misrepresentations induced NovaFund to enter into both the Term Sheet and the Addendum. ECF No. 96-2 ¶ 101. Since the Addendum was executed on April 24, 2017, the three-year statute of limitations would not run until April 24, 2020.

relations claim must allege the following elements: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss.") (internal quotation marks omitted) (citing *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 27 (2000)); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) ("To state a claim for this tort under New York law, four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."). The "business relationship" may be either "existing or prospective." *Hi-Ho Tower, Inc.*, 255 Conn. at 31; *Catskill Dev., L.L.C.*, 547 F.3d at 132 (noting that "tortious interference with business relations" includes interference with "prospective contractual relations," provided that the plaintiff allege "wrongful means" in order to balance "a plaintiff's mere interest or expectation in establishing a contractual relationship . . . against the competing interest of the interferer" (internal quotation marks omitted)). In North Carolina, too, a plaintiff need not allege an existing business relationship, but must allege that the "contract would have ensued but for the interference." *Superior Performers, Inc. v. Phelps*, 154 F. Supp. 3d 237, 249 (M.D.N.C. 2016) ("To state a claim for tortious interference with prospective business relations, a plaintiff must allege facts to show that the defendants acted without justification in inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference and that the defendants' conduct proximately caused measurable damages.") (internal quotation marks omitted).

Capitala argues that NovaFund's proposed allegations do not state a claim for tortious interference with business relations because they do not satisfy the elements of a "business relationship," Capitala's knowledge of such a relationship, or actual loss. Opp'n to Mot. to Amend, ECF No. 100 at 13. I disagree and do not find that NovaFund's proposed amendment is futile. In its proposed amended complaint, NovaFund alleges that NovaFund identified one "Connecticut-based investor" as a "top prospect . . .for investing in Fund V." ECF No. 96-2 ¶ 30. Capitala "instructed NovaFund not to pursue that investor," however, because the investor "had been placed on the carve out list by Sandler O'Neill" and Capitala "knew that both Sandler O'Neill and NovaFund sought to pursue this same investor." *Id.* The proposed amended complaint also alleges that Capitala sent an email in February 2017 "to another professional at a well-known investment company – and an investor with which NovaFund had a prior relationship – falsely claiming that Capitala was forced to terminate NovaFund because NovaFund allegedly breached the exclusivity provision in the Agreement." *Id.* ¶ 40. NovaFund later alleges that it "has suffered and will suffer actual losses" as result of Capitala's interference. *Id.* ¶ 112. Finally, NovaFund alleges that it "had been regularly communicating with . . . a leading global private markets firm" regarding Fund V, and that it "suggested to Capitala that it . . . consider a separately managed account for this particular investor." *Id.* ¶ 53. Despite Capitala's knowledge of NovaFund's relationship with this firm investor, Capitala told NovaFund not to attend an onsite visit in October 2017, falsely stating that the purpose of the meeting was limited to "operational diligence." *Id.* ¶ 60. Instead, Capitala had "substantive discussions" with the firm investor and eventually agreed to enter an investment advisory agreement. *Id.* ¶¶ 60–62. NovaFund alleges that Capitala took these steps "for the purpose of excluding NovaFund" so that it "did not have to compensate NovaFund for its efforts," and

NovaFund has not been paid any Success Fees on the investments made by this firm investor. *Id.* ¶ 60, 63.

In these paragraphs, NovaFund alleges that Capitala knew that NovaFund had business relations with particular investors, since NovaFund identified them as top prospects or even introduced them to Capitala. It also alleges that Capitala used dishonest means to interfere with those business relations, and that NovaFund was harmed as a result since it did not receive the Success Fees to which it was entitled. The allegation that this firm investor eventually did invest in a separately managed account with Capitala suggests that there is a "reasonable probability" the investor would have made the same decision if NovaFund had continued to be involved. *Goldman v. Feinberg*, 130 Conn. 671, 675 (1944). If North Carolina law applies, NovaFund has identified a particular agreement—NovaFund's agreement with the firm investor to invest in Capitala—that Capitala's interference prevented, and NovaFund has alleged "measurable damages" in its loss of the Success Fee. *Id.* ¶¶ 53–63. Thus, NovaFund's proposed amendment to include a tortious interference claim is not futile.[13]

### 3. *Declaratory Judgment Claim*

NovaFund proposes to seek declaratory relief in its amended complaint and adds a proposed separate count for "declaratory judgment." ECF No. 96-2 ¶¶ 130–33. Specifically, NovaFund seeks a declaration that Capitala is "obligated to pay NovaFund Success Fees" and "Tail Fees" for certain investors NovaFund claims to have solicited. *Id.* ¶ 133. Capitala argues

---

[13] It is possible that NovaFund, even if fully involved in the process, would never have formed any agreement directly with the investor—*i.e.*, that any agreement would have been solely between the investor and Capitala. However, this detail is not clear from the proposed pleadings, and it is plausible that NovaFund would have been a party to the eventual agreement. Therefore, I will not determine that NovaFund's proposed amendment is futile on this basis.

that this claim should be barred for undue delay and because it is "entirely inconsistent with the position NovaFund took regarding Capitala's declaratory judgment claims." ECF No. 100 at 17.

As explained above regarding NovaFund's motion to dismiss Capitala's Counterclaim, "[t]he Declaratory Judgment Act does not . . . . provide an independent cause of action" but "provide[s] a form of relief previously unavailable," such that "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). NovaFund's amended complaint does include a breach of contract claim and also includes a request for declaratory relief in its prayer for relief. Therefore, while I agree that NovaFund's amended complaint should not include a separate count for declaratory judgment, the Court may still award declaratory relief if it is warranted.

**B. Undue Delay as to UDTPA Claims**

NovaFund also seeks to add a claim for "unfair and deceptive trade practices in the event that North Carolina law applies to this action." Mot. to Amend, ECF No. 96-1 at 2. Capitala argues that such an amendment is untimely because NovaFund knew by March 2019 that North Carolina law could apply to this action, but "waited approximately nine months to seek to amend its Complaint" to add a UDTPA claim. Opp'n, ECF No. 100 at 18.

I do not find any "undue delay" sufficient to outweigh the liberal amendment policy. NovaFund makes new allegations in its proposed amended complaint stemming from information obtained during discovery, and it is reasonable to assert new claims or to hold a different view on the choice-of-law analysis based on that new information. The same conduct in the proposed amended complaint supports both NovaFund's CUTPA and UDTPA claims, so Capitala is not unfairly prejudiced by the addition of the UDTPA claim.

***

Therefore, I grant NovaFund's motion for leave to amend its complaint. NovaFund may add claims for fraud, tortious interference, and violations of the UDTPA.

## V.   CONCLUSION

As explained above, the motion to dismiss, ECF No. 70, is GRANTED with respect to Capitala's fraud claim (Claim V), but I grant Capitala leave to replead **within 14 days** of this Order. The motion to dismiss is also GRANTED with respect to the declaratory judgment claim (Claim I), in that the request for declaratory judgment should not be construed as a separate cause of action, but rather as a form of relief sought on Capitala's other contract claims. As to Capitala's other counterclaims for breach of contract, violations of UDTPA or CUTPA, and rescission, the motion to dismiss is DENIED.

Capitala's motion to amend its counterclaims to add Columbus and MD Global, ECF No. 67, is GRANTED. Capitala shall serve its counterclaims on Columbus and MD Global and file proof of service on the docket **within 21 days** of this ruling. Capitala also must file a statement **within 21 days** adequately alleging the citizenship of MD Global.

Finally, NovaFund's motion to amend its complaint, ECF No. 96, is GRANTED. While NovaFund's amended complaint should not include a separate count for declaratory judgment, the Court may award declaratory relief if it is warranted.

While I do grant both parties leave to amend their pleadings, I also note that this case has been pending for 18 months, and discovery is currently scheduled to close on April 30, 2020. ECF No. 89.  No further amendments to the pleadings will be permitted.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
               January 14, 2020