# EXHIBIT D

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Connecticut

| | | |
|---|---|---|
| NovaFund Advisors, LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 3:18-cv-1023 (MPS) |
| Capitala Group, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:     STEPSTONE GROUP, LP, 450 Lexington Avenue, 31st Floor, New York, NY 10017

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: SEE: Exhibit A

| Place: | Shipman & Goodwin LLP<br>400 Park Avenue, New York, NY 10022<br>(Deposition to be conducted remotely) | Date and Time:<br>07/09/2020 9:00 am |
|---|---|---|

The deposition will be recorded by this method: Stenographic and video

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 06/15/2020

*CLERK OF COURT*

OR

_____        _____/s/_____
*Signature of Clerk or Deputy Clerk*                   *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff NovaFund Advisors, LLC , who issues or requests this subpoena, are:
Jill O'Toole, Shipman & Goodwin LLP, 1 Constitution Plaza, Hartford, CT 06103, 860-251-5909, jotoole@goodwin.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

# DEFINITIONS

The following definitions apply to the subject matter topics set forth below:

1. The term "Action" means the lawsuit pending under the caption *NovaFund Advisors, LLC v. Capitala Group, LLC*, No. 3:18-cv-1023 (MPS) (D. Conn.).

2. The term "Capitala" means Capitala Group, LLC, CSLC, Capitala Finance Corp., Capitala Private Advisors, LLC, Capitala Investment Advisors, LLC, and CapitalSouth Partners and their officers, directors, employees, partners, corporate parent, subsidiaries, and affiliates.

3. The term "CSLC" means Capitala Specialty Lending Corporation and its officers, directors, employees, partners, corporate parent, subsidiaries, and affiliates.

4. The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

6. The term "Deerpath" means Deerpath Capital Management, LP and their officers, directors, employees, partners, corporate parent, subsidiaries, and affiliates.

7. The term "Document" is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A draft or non-identical copy is a separate document within the meaning of this term.  A request for production of 'documents' shall encompass, and the response shall include, electronically stored information, as included in Federal Rule of Civil Procedure 34.

8. The term "Fund V" means Capitala Private Credit Fund V, L.P.

9. The term "NovaFund" means NovaFund Advisors, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, and affiliates.

10. The term "person" means any natural person or any business, legal, or governmental entity or association.

11. The term "StepStone" means any business associated or affiliated with StepStone Group LP, StepStone Private Equity Partners, L.P., StepStone Private Equity Partners II, L.P., StepStone Private Equity Partners III, L.P., StepStone Group New York, L.P., and Swiss Capital Alternative Investments AG and its and their officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

12. The term "StepStone Investment Advisory Agreements" collectively refers to (1) an Investment Advisory Agreement between Swiss Capital Invest Holding (Dublin) and Capitala Private Advisors, LLC, (Swiss Capital Capitala Private Debt Offshore SP, a Segregated Portfolio of Swiss Capital Private Debt (Offshore) Funds SPC), as amended from time to time and (2) an Investment Advisory Agreement between Swiss Capital Invest Holding (Dublin) Limited and Capitala Private Advisors LLC (Swiss Capital Capitala Private Debt Fund L.P.), as amended from time to time.

13. The terms "You" and "Your" mean StepStone.

## RULE 30(b)(6) DEPOSITION TOPICS
## UPON WHICH EXAMINATION IS REQUESTED

Pursuant to Federal Rule of Civil Procedure Rule 30(b)(6), You shall designate and produce for deposition one or more officers, directors, managing agents, or other persons who consent to testify on Your behalf on each of the following topics:

1. Any and all agreements, whether oral, written, formal or informal, and all amendments thereto, between StepStone and Capitala, including but not limited to the StepStone Investment Advisory Agreements.

2. The identity of persons at StepStone and Capitala responsible for negotiating, implementing, and monitoring the parties' obligations pursuant to: (a) the StepStone Investment Advisory Agreements; (b) all other agreements between StepStone and Capitala; and (c) all amendments, revisions, or supplements to (a) or (b).

3. The StepStone Investment Advisory Agreements, including but not limited to (a) the terms of the StepStone Investment Advisory Agreements; (b) the purpose, structure, and function of the StepStone Investment Advisory Agreements; (c) Your responsibilities under the StepStone Investment Advisory Agreements; (d) Capitala's responsibilities under the StepStone Investment Advisory Agreements; (e) eligible assets under the StepStone Investment Advisory Agreements; (f) investment guidelines and restrictions under the StepStone Investment Advisory Agreements; (g) operating processes under the StepStone Investment Advisory Agreements; (h) reporting responsibilities and data requirements under the StepStone Investment Advisory Agreements; (i) fees and other remuneration paid and to be paid under the StepStone Investment Advisory Agreements; (g) the amount of capital invested, committed, pledged or deployed pursuant to the StepStone Investment Advisory Agreements; and (h) marketing of them.

4. The identity of each investor in Swiss Capital Capitala Private Debt Offshore SP, a Segregated Portfolio of Swiss Capital Private Debt (Offshore) Funds SPC, Swiss Capital Capitala Private Debt Fund L.P., and CSLC, the amount of capital each investor has or is expected to commit, invest or pledge, and the nature of each such subscription or investment (*i.e.* Class A or Class B).

5. All separately managed accounts, investment vehicles, special purpose vehicles, or warehouses, in which StepStone pledged, committed or invested capital (or considered pledging, committing, or investing capital in), with Capitala, including but not limited to (a)

Your communications with Capitala concerning such separately managed accounts, investment vehicles, special purpose vehicles, or warehouses; (b) how much capital was pledged, committed, invested, or deployed; (c) the investments or loans effectuated with said capital; and (d) Your understanding of how each such separately managed account, investment vehicle, special purpose vehicle, or warehouse operated.

6. All meetings and communications between You and Capitala concerning: (a) Fund V; (b) any investment vehicle or separately managed account sponsored, owned, managed, or associated in any way with Capitala; (c) any investment advisory arrangement with Capitala, including but not limited to the StepStone Investment Advisory Agreements; and/or (d) loan syndications or participations in loans sponsored, managed, arranged or associated in any way with Capitala.

7. NovaFund, including but not limited to (a) Capitala's relationship with NovaFund and its agreement with NovaFund; (b) Your relationship with NovaFund; (c) NovaFund's role as placement agent for Fund V and related separately managed accounts and investment vehicles; (d) NovaFund's role in assisting with any investment or potential investment from You related to Capitala; (e) NovaFund's performance as placement agent for Fund V and related separately managed accounts and investment vehicles; (f) Your communications with Capitala concerning NovaFund; (g) other placement agents that Capitala worked with or sought to work with concerning Fund V and related separately managed accounts and investment vehicles; and (h) fees that were paid or should have been paid by Capitala to NovaFund.

8. Fund V, including but not limited to (a) its investment strategy; (b) its performance; (c) efforts to solicit investors for it; (d) communications between You and Capitala concerning it; (e) communications between You and NovaFund concerning it; (f) Your consideration of a potential investment in Fund V; (g) Capitala's relationship with the anchor investors of Fund V; (h) marketing materials for Fund V; and (i) Capitala's decision to stop raising capital for Fund V.

9. CSLC, including but not limited to: (a) the reason for its formation; (b) its purpose; (c) its function; (d) its investors; (e) Your role in it (if any); (f) the amount of capital pledged, committed, invested, or deployed in, through, or in connection with it; (g) the marketing of it; and (h) communications between You and Capitala concerning it.

10. Payments made or due, or that will or may become due, directly or indirectly, between or among You, Capitala, or CSLC concerning (a) Fund V; (b) all separately managed accounts, investment vehicles, special purpose vehicles, or warehouses sponsored, owned, managed, or associated in any way with Capitala; (c) any investment advisory arrangement with Capitala; (d) loan syndications or participations in loans sponsored, managed, arranged, or associated in any way with Capitala, (e) Swiss Capital Capitala Private Debt Offshore SP, a Segregated Portfolio of Swiss Capital Private Debt (Offshore) Funds SPC; (f) Swiss Capital Capitala Private Debt Fund L.P.; or (g) CSLC, including but not limited to carried interest, closing fees, incentive fees, maintenance fees, management fees, performance fees, monitoring fees, origination fees, success fees, and profit sharing fees from May 1, 2016 to the present.

11.     The deployment of capital from or investments made in connection with CSLC and/or the StepStone Investment Advisory Agreements, including all investments made by Swiss Capital Capitala Private Debt Offshore SP, a Segregated Portfolio of Swiss Capital Private Debt (Offshore) Funds SPC and Swiss Capital Capitala Private Debt Fund L.P., including but not limited to (a) the total amount of debt or equity of such investment; (b) Your share or portion of such investment; (c) the other participants in the loan or syndicate, and their respective shares or portions of such investment; (d) the amounts of unfunded commitments for each such investment; (e) all fees related to those investments; and (f) the performance of each such investment.

12.     Capitala's April 25, 2018 press release announcing "1.0 Billion of New Permanent Capital for New Senior Debt Focus," including but not limited to (a) all drafts of it; (b) communications between You and Capitala before or after such press release was issued concerning it; (c) Your knowledge or approval of the information in such press release; and (d) the truth of the statements in the press release.

13.     Any and all efforts by You and/or Capitala to shield the disclosure of Your relationship with Capitala to NovaFund and any other party, and the reasons for those efforts.

14.     The separately managed account that You established in connection with Deerpath, including but not limited to (a) the amount of Your investment to date; (b) the amounts you anticipate investing in the future; (c) references to the investment vehicle being referred to as a "separately managed account"; and (d) placement agent fees in connection with such separately managed account.

15.     Your preservation, search, collection, and production of documents in this Action.

16.     Admissibility and/or authentication of exhibits introduced by NovaFund during depositions in this action.

17.     All persons, documents, or other material consulted in preparation for this deposition.