UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOVAFUND ADVISORS LLC,<br><br>            Plaintiff,<br><br>  —*against*—<br><br>CAPITALA GROUP, LLC<br><br>            Defendant. | 18 Civ. 1023 (MPS) |

**MOTION OF NON-PARTY STEPSTONE GROUP LP
TO MAINTAIN CERTAIN DOCUMENTS UNDER SEAL**

Non-Party StepStone Group LP ("StepStone") hereby moves under D. Conn. Loc. Civ. R. 5(e)(3) to maintain under seal certain material that non-party StepStone produced in this action and that was recently attached to a motion by plaintiff NovaFund Advisors LLC ("NovaFund"). Specifically, StepStone seeks:

- to maintain entirely under seal or largely redact an Investment Memorandum relating to defendant Capitala Group, LLC ("Capitala") that was filed as Exhibit 6 to NovaFund's Motion for Reconsideration, dated June 12, 2020 (ECF 155-4) (the "Capitala Investment Memorandum"); and

- to maintain under seal (that is, to redact) the irrelevant portions (all except the bottom email) of an email chain that was attached as Exhibit 7 to that same motion, relating to an investment manager referred to as "Deerpath" (ECF 155-5) (the "Deerpath Email Chain").

**I. INTRODUCTION**

As this Court is aware, this is a breach of contract case by which a placement agent, NovaFund, claims to be owed a fee for having made the introductions the ultimately led an affiliate of Capitala to enter into a transaction with an affiliate of StepStone referred to as "Swiss Capital," in which StepStone has a minority, non-controlling ownership interest. StepStone has no stake in the lawsuit, but it, rather than Swiss Capital, was issued a document subpoena and

produced thousands of pages of documents. Two documents StepStone produced were recently attached to a to a motion by which NovaFund asked the Court to reconsider its ruling to allow counsel for Capitala to withdraw from this case. By this motion, StepStone seeks to keep those two documents sealed, in large part.

The first document, the Capitala Investment Memorandum, contains highly sensitive and competitive information that, if disclosed, would give private markets investment managers that StepStone and Swiss Capital are paid to evaluate insight into StepStone's processes—thereby undermining the integrity of future evaluations. The document should remain sealed or, at a minimum, highly redacted to as to reveal only the tiny portion for which it is cited (specifically, that the Capitala-Swiss Capital transaction was described as an "SMA," or "separately managed account").

The second document, the Deerpath Email Chain, is cited only for a narrow proposition—that Deerpath was owed a fee for NovaFund's placement efforts—and StepStone respectfully submits that the remainder of the email chain is irrelevant to the motion and should be redacted.

## II.   STANDARD FOR SEALING

There is a "common law right of public access to judicial documents." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). As the Second Circuit has explained, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Id.* (citation omitted). Rather, among documents that are filed in court, there is a "continuum from matters that directly affect an adjudication"—

that is, those that are clearly judicial documents—"to matters that come within a court's purview solely to insure their irrelevance." *Id*. (citation omitted).

Even in the case of juridical documents, the common law right of access is "not absolute" and can give way to "competing interests." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). Recognizing this point, the Court's Local Rules permit sealing where the Court makes "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons." D. Conn. Loc. Civ. R. 5(e)(3).

### III.  BACKGROUND

StepStone is a global private markets investment firm that provides advisory and asset management services to institutional investors and other clients. (Ment Decl. ¶ 3.) StepStone is often hired, for example, by pension funds to either help create a portfolio of private markets investments, or to monitor and provide advice concerning their existing investments. (*Id*.)

In late 2016, NovaFund was trying to raise money for an investment fund sponsored by Capitala referred to as "Fund V," and approached StepStone. (*Id*. ¶ 4.) StepStone was not interested, but suggested that NovaFund contact StepStone's affiliate in Zurich, Switzerland, Swiss Capital Alternative Investments AG ("Swiss Capital"). (*Id*.) StepStone has a minority, non-controlling ownership interest in Swiss Capital. (*Id*.)

In April 2018, affiliates of Swiss Capital and Capitala entered into an Investment Advisory Agreement. (*Id*. ¶ 5.) As we understand it, one of the key disputes in this case is whether NovaFund is owed a fee from Capitala for allegedly having made the introduction leading to this transaction.

NovaFund served StepStone (*i.e.*, rather than Swiss Capital) with a subpoena, and StepStone produced thousands of pages of documents. (*Id*. ¶ 6.)

On June 9, 2020, Capitala's counsel moved to withdraw, previewing that Capitala was prepared to surrender and default. (ECF 151.) The next day, the Court granted the motion. (ECF 152.)

On June 12, 2020, NovaFund moved for reconsideration, arguing, essentially, that Capitala should be forced to defend the case, despite having willingly surrendered. (ECF 154.) As part of that motion, NovaFund cited, and provisionally filed under seal, two documents that StepStone had produced and marked as Confidential under the governing Protective Order. (ECF 155-4; ECF 155-5.)

The first document is the Capitala Investment Memorandum providing, in great detail, Swiss Capital's evaluation of the Capitala investment opportunity that ultimately went forward. (Ment Decl. ¶¶ 7-10.) NovaFund cited the Capitala Investment Memorandum for the very narrow purpose of showing that the Swiss Capital transaction was referred to as an "SMA". (ECF 154, at 8-9 & n.9 (quoting the use of the term "SMA").) According to NovaFund, "Capitala is obligated to pay fees to NovaFund if an investor commits to either Fund V or *an SMA*." (*Id.* at 5 (emphasis added).) NovaFund's point was to emphasize that Capitala was giving up on the case when, according to NovaFund, the case was "unravel[ing]" on the merits, anyway. (*Id.* at 8.)

The second document, the Deerpath Email Chain, is cited for the proposition that "StepStone has acknowledged that NovaFund would be entitled to fees for an identical investment by StepStone with another fund manager (Deerpath Capital Management) for which NovaFund also served as placement agent." (*Id.* at 9.) NovaFund cites only to the first email in in the Deerpath Email Chain, where there is a reference to NovaFund's fees. (*Id.* (citing to page SS0006536).) The chain continues, however, and discusses matters concerning Deerpath that are completely unrelated to NovaFund or its fees and that are confidential. (Ment Decl. ¶ 12.)

## IV.     ARGUMENT

### A.     The Court Should Seal The Capitala Investment Memorandum

"[C]onfidential 'commercial information' of a business—including trade secrets, confidential research, internal business documents and information about a business's operations—has been recognized repeatedly as a proper subject for sealing." *CSL Silicones, Inc. v. Midsun Group Inc*., No. 3:14-CV-1897, 2017 WL 4750701, at *3 (D. Conn. July 12, 2017); *see also Travelers Indem. Co. v. Excalibur Reinsurance Corp*., 11 Civ. 1209, 2013 WL 4012772, at *5 (D. Conn. Aug. 5, 2013) (stating that those who have produced information in a litigation "often have a significant interest in protecting . . . confidential proprietary information, documents and client data").  The Capitala Investment Memorandum fits comfortably within this type of commonly-sealed information, because its contents are highly sensitive, and, if disclosed, would cause damage to StepStone.  (Ment Decl. ¶¶ 7-10.)

By way of background, a critical part of the business of StepStone and Swiss Capitala is to evaluate other private markets investment managers (referred to in the industry as "GPs," as in "general partners") so as to best advise clients about where and how to deploy their money. (*Id*. ¶ 8)  When trying to decide whether to allocate clients' money to a new GPs (or to a GP's new investment vehicle) StepStone or Swiss Capital will prepare a highly-detailed Investment Memorandum like the one at issue here.  (*Id*.)

An Investment Memorandum will often be 50 or more single-spaced pages that include detailed performance analytics and qualitative due diligence discussion and assessment.  (*Id*. ¶ 9.) These take weeks to prepare, and are a key factor in making the investment decisions that separate StepStone and Swiss Capital from their competition.  (*Id*.) StepStone's Investment Memoranda are based on information obtained from the GP pursuant to confidentiality obligations, as well as from third-party references and StepStone's own industry contacts. In a

very real sense, clients pay fees to StepStone and Swiss Capital for the access to information they are afforded given their stature in the industry, and the work and judgments reflected in Investment Memoranda.  Given the sensitivity of Investment Memoranda, StepStone and Swiss Capitala keep them in the strictest confidence, and do not disclose them publicly.  (*Id*.)  Investment Memoranda (including the Capitala Investment Memorandum) generally bear a "Confidential" legend on each page.  (*Id*.)

If an Investment Memorandum were to become publicly available, other GPs would have a window into how StepStone and Swiss Capital evaluate GPs, which could allow them to skew the process in their favor when trying to gain business from clients of StepStone or Swiss Capital.  (*Id*. ¶ 10.)  The integrity of the evaluation process would thus be greatly compromised, harming the companies' ability to do the work for which they are paid.  (*Id*.)  Given these concrete risks, the Court should maintain the Capitala Investment Memorandum under seal.

> **B.    Alternatively, the Court Should Allow the Capitala Investment Memorandum to Be Redacted Except to the Extent It Refers to the Underlying Transaction as an "SMA**

Alternatively, the Court should authorize StepStone to provide a redacted version of the Capitala Investment Memorandum that reveals only the tiny slice of information even arguably pertinent to the motion—namely, that the Capitala-Swiss Capital transaction was referred to as an "SMA."

Courts will commonly allow portions of a document to be redacted, based on the same type of distinction that separates judicial documents from other types of documents—essentially, whether the portions proposed to be redacted are relevant to underlying motion.  *See*, *e.g*., *Collado v. City of New York*, 193 F. Supp. 3d 286, 291–92 (S.D.N.Y. 2016) (placing "scant weight in the presumption of public access" to material that was "is irrelevant to Defendants' Motion for Summary Judgment").  The Second Circuit has expressly held "that it is proper for a

district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document" only. *Amodeo*, 44 F.3d at 147.

For example, in *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, MDL No. 1358, 2013 WL 3531600 (S.D.N.Y. July 12, 2013), the court was considering whether to seal certain documents pertaining to a defendant's motion to dismiss for lack of jurisdiction. The court allowed portions of the material, including information about the price of business acquisition, to stay sealed, because those portions were irrelevant to that motion. As the court explained: "The public's interest in monitoring the federal courts will not be served in any appreciable way by inspection of the portions of the documents at issue that [the defendant] seeks to maintain under seal [because] the precise amounts paid by . . . for its business acquisitions . . . . have little bearing on its contacts with that forum, which is the focus of the underlying judicial inquiry." *Id*. at *3. So too here. The public's interest in monitoring the courts—and specifically monitoring a motion concerning whether or not Capitala should be permitted to surrender in this case—will not be advanced in the slightest by allowing the world to see all the details of how the Capitala-Swiss Capital transaction was evaluated.

C. **The Court Should Allow StepStone to Redact All But the First Email in the Deerpath Email Chain**

For similar reasons, the Court should allow StepStone to redact the Deerpath Email Chain to reveal only the first email, which is the only one cited in, or conceivably relevant to, the NovaFund motion. The remainder of the chain concerns information about Deerpath that StepStone would ordinarily hold in strict confidence and that would be harmful if disclosed. (Ment Decl. ¶ 12.)

- 8 -

V. CONCLUSION

For the foregoing reasons, the Court should grant StepStone's motion to maintain under seal the material at issue.

Dated: June 26, 2020                                   Respectfully submitted,

                                                       By: /s/ Christopher M. Paparella

Charles Michael*                                       Christopher M. Paparella
STEPTOE & JOHNSON LLP                                  STEPTOE & JOHNSON LLP
1114 Avenue of the Americas                            1114 Avenue of the Americas
New York, New York 10036                               New York, New York 10036
(212) 506-3900                                         (212) 506-3900
cmichael@steptoe.com                                   caparella@steptoe.com

*pro hac vice application forthcoming

*Counsel for Non-Party StepStone Group LP*