## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NOVAFUND ADVISORS, LLC,     :
               :  No. 3:18-cv-1023 (MPS)
      Plaintiff,    :
               :
v.               :
               :
CAPITALA GROUP, LLC, et al.    :
               :
      Defendants.   :  AUGUST 31, 2021

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants Capitala Private Advisors ("CPA"), Capitala Investment Advisors ("CIA"), and Capitala Specialty Lending Corp. ("CSLC") (collectively, "Defendants"), by and through their undersigned counsel, hereby answer and set forth their affirmative defenses to Plaintiff NovaFund Advsiors, LLC's ("NovaFund") Second Amended Complaint states as follows:

### Summary of Claims

1.  Denied.

2.  Defendants admit that Capitala Group, LLC ("CGLLC") dissolved in June 2020.  Except as so stated, the remaining allegations contained in Paragraph 2 are denied.

3.  Denied.

4.  Denied.

5.  Denied.

6.  Denied.

7.  Denied.

8.  Denied.

9.  Defendants admit that a press release was issued in April 2018, the contents

of which speak for itself.  Defendants admit that NovaFund asked for information about the identity of investors.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 9.

10.     Defendants admit that CGLLC sued NovaFund in North Carolina State Court, seeking, among other things, a declaratory judgment.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 10.

11.     Denied.

### Parties

12.     Defendants admit that NovaFund is a Delaware limited liability company organized under the laws of Delaware.  Except as so stated, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 and, therefore, leaves NovaFund to its proof.

13.     Defendants admit that CGLLC was a North Carolina limited liability company, that Joseph B. Alala, III was its only member at all relevant times and that CGLLC filed articles of dissolution with the Secretary of State of North Carolina.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 13.

14.     Admitted.

15.     Defendants admit that Mitsui is a corporation organized under the laws of New York with its principal place of business in New York.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 15.

16.     Defendants admit that the term Capitala Group is used as a brand for marketing purposes. Defendants further admit that CIA and CPA, together with its affiliates, organize and manage various types of investment funds and provide investment

advice to institutional investors.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 16.

17.     Admitted.

## Jurisdiction and Venue

18.     Defendants admit that there is complete diversity of citizenship among the parties, and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 18.

19.     Denied.

## Factual Allegations

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Defendants admit that a "carve out" list generally means that a placement agent will be limited or precluded from receiving fees if an investor invests in a fund from those on a carve out list.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 24.

25.     The allegations in Paragraph 25 purport to summarize the contents of emails, the contents of which speak for themselves.  To the extent the allegations in Paragraph 25 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 25.

26.     The allegations in Paragraph 26 purport to summarize the contents of emails, the contents of which speak for themselves.  To the extent the allegations in Paragraph 26 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 26.

## The Agreement

27.     Defendants admit that CGLLC entered into an agreement in May 2016. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 27.

28.     The allegations in Paragraph 28 purport to summarize portions of the Term Sheet, the contents of which speak for themselves.  To the extent the allegations in Paragraph 28 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 28.

29.     The allegations in Paragraph 29 purport to summarize portions of the Term Sheet, the contents of which speak for themselves.  To the extent the allegations in Paragraph 29 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 29.

30.     The allegations in Paragraph 30 purport to summarize portions of the Term Sheet, the contents of which speak for themselves.  To the extent the allegations in Paragraph 30 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 30.

31.    The allegations in Paragraph 31 purport to summarize portions of the Term Sheet, the contents of which speak for themselves.  To the extent the allegations in Paragraph 31 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 31.

32.    The allegations in Paragraph 32 purport to summarize portions of the Term Sheet, the contents of which speak for themselves.  To the extent the allegations in Paragraph 32 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 32.

33.    Denied.

34.    The allegations in Paragraph 34 purport to summarize portions of the Term Sheet, the contents of which speak for themselves.  To the extent the allegations in Paragraph 34 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 34.

35.    The allegations in Paragraph 35 purport to summarize portions of the Term Sheet, the contents of which speak for themselves.  To the extent the allegations in Paragraph 35 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 35.

36.    Defendants admit that NovaFund sent monthly invoices for the monthly retainer fee of $20,000, the contents of which speak for themselves.  Except as so stated,

5

Defendants deny the remaining allegations contained in Paragraph 36.

37.     Denied.

38.     Defendants admit two anchor investors invested in Fund V, that the first close with the two anchor investors occurred in August 2016, and that NovaFund's assistance was not needed in finalizing their participation in Fund V.   Except as so stated, Defendants deny the remaining allegations contained in Paragraph 38.

39.     Denied.

40.     Denied.

41.     Denied.

**The First Closing and Marketing Efforts for Fund V**

42.     Defendants admit that Fund V held its first close in August 2016 with the anchor investors, Hamilton Lane and Kemper.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 42.

43.     Defendants admit that a press release was issued on September 7, 2016, the contents of which speaks for itself.  To the extent the allegations in Paragraph 43 differ in meaning, effect or implication from the referenced documents, such allegations are denied. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 43.

44.     Defendants admit that the target amount of investments for Fund V was $350 million.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 44.

45.     Defendants admit that the balance of the target size for Fund V would be raised in a series of closings after the first close.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 45.

46.     Denied.

47.     The allegations in Paragraph 47 purport to summarize portions of the PPM, the contents of which speak for themselves.  To the extent the allegations in Paragraph 47 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Defendants admit that the PPM indicates that CPA formed Fund V and that public filings identify CPA as the investment advisor to Fund V. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 47.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Defendants lack knowledge or information sufficient to form a belief as to who NovaFund had personal relationships with.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 51.

52.     Defendants admit that Sandler O'Neill performed some limited work in connection with Fund V.  Except as so stated Defendants deny the remaining allegations contained in Paragraph 52.

53.     The allegations in Paragraph 53 purport to summarize the contents of emails, the contents of which speak for themselves.  To the extent the allegations in Paragraph 53 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 53.

54.     Denied.

55.     Defendants admit that Mr. Alala was involved in a divorce trial in late

January and early February 2017.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 55.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

**Capitala's Threats to Fire NovaFund**

60.     Denied.

61.     Denied.

62.     Defendants admit that Mr. Alala was frustrated with NovaFund's performance as the placement agent for Fund V.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 62.

63.     Denied.

64.     Defendants admit that in February 2017, Mr. Alala and Mr. Swercheck became aware that NovaFund was arranging meetings and introductions for one or more competing funds, to the exclusion of Fund V, in direct violation of the exclusive engagement with CGLLC.  NovaFund also gave meetings Fund V was counting on at the Berlin conference to a competitor fund, to the exclusion of Fund V.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 64.

65.     Denied.

66.     Denied.

67.     The allegations in Paragraph 67 purport to summarize the contents of emails, the contents of which speak for themselves.  To the extent the allegations in Paragraph 67

differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 67.

68.     The allegations in Paragraph 68 purport to summarize the contents of emails, the contents of which speak for themselves.  To the extent the allegations in Paragraph 68 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 68.

69.     Defendants admit that, in or about this time, CGLLC stopped paying the monthly retainer.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 69.

70.     Defendants admit that NovaFund's Chief Financial Officer met with Defendants' general counsel. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 70.

71.     Denied.

72.     Defendants admit that CGLLC and NovaFund discussed, among other things, amending the Term Sheet with respect to placement agent services outside of North America. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 72.

73.     Denied.

74.      Defendants admit that CGLLC and NovaFund entered into an addendum to the Term Sheet on or about April 24, 2017 (the "Addendum"), the contents of which speak for itself.  To the extent the allegations in Paragraph 74 differ in meaning, effect or

9

implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 74.

75.     The allegations in Paragraph 75 purport to restate portions of the Addendum, the contents of which speak for itself.  To the extent the allegations in Paragraph 75 differ in meaning, effect or implication from the referenced documents, such allegations are denied. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 75.

76.     The allegations in Paragraph 76 purport to summarize portions of the Addendum, the contents of which speak for itself.  To the extent the allegations in Paragraph 76 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 76.

77.      The allegations in Paragraph 77 purport to summarize portions of the Addendum, the contents of which speak for itself.  To the extent the allegations in Paragraph 77 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 77.

**After Executing the Addendum, Capitala Continues its Bad Faith Conduct.**

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Defendants lack knowledge or information sufficient to form a belief as to

what NovaFund understood why it was retained, and, therefore, leaves NovaFund to its

proof.  Except as so stated, Defendants deny the remaining allegations contained in

Paragraph 83.

84.    Denied.

85.    Denied.

86.    The allegations in Paragraph 86 purport to summarize portions of emails, the

contents of which speak for itself.  To the extent the allegations in Paragraph 86 differ in

meaning, effect or implication from the referenced documents, such allegations are denied.

Except as so stated, Defendants deny the remaining allegations contained in Paragraph 86.

87.    Denied.

88.    Denied.

89.    Denied.

90.    Denied.

91.    Denied.

92.    Denied.

93.    Denied.

94.    Defendants admit that in late 2017, CGLLC and NovaFund effectively

ceased communicating.  Except as so stated, Defendants deny the remaining allegations

contained in Paragraph 94.

95.    Denied.

96.    Denied.

97.    Denied.

98.    Defendants admit that Capitala Specialty Lending Corp. ("CSLC") was

formed in 2018 which was a few months before the extended final close of Fund V.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 98.

99.     Denied.

100.     The allegations in Paragraph 100 purport to summarize portions of SEC filings, the contents of which speak for itself.  To the extent the allegations in Paragraph 100 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 100.

101.     Denied.

102.     Denied.

103.     Denied.

104.     Defendants admit that a press release was issued on April 25, 2018, the contents of which speak for itself.  To the extent the allegations in Paragraph 104 differ in meaning, effect or implication from the referenced document, such allegations are denied. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 104.

105.     The allegations in Paragraph 105 purport to summarize portions of the press release, the contents of which speak for itself.  To the extent the allegations in Paragraph 105 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 105.

106.     Defendants lack knowledge or information sufficient to form a belief as to what NovaFund knew and when. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 106.

107.     Defendants admit that on April 27, 2018, NovaFund's Chief Financial Officer issued an email, the contents of which speak for itself.  To the extent the allegations in Paragraph 107 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 107.

108.     Defendants admit that Mr. Alala issued an email to NovaFund, the contents of which speak for itself.  To the extent the allegations in Paragraph 108 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 108.

109.     Defendants admit that CGLLC commenced a lawsuit by filing a summons without complaint in the North Carolina Superior Court against Columbus Advisory Group, LTD on April 27, 2018, the contents of which speak for itself. Except as so stated, the remaining allegations contained in Paragraph 109 are denied.

110.     Defendants lack knowledge or information sufficient to form a belief as to what NovaFund expected. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 110.

111.     Denied.

112.     Denied.

113.     Denied.

114.     Denied.

115.     Defendants admit that Capitala Finance Corp. announced the formation of Capitala Senior Loan Fund II ("CSLF II") in or around February 27, 2019 and that it is a joint venture between Capitala Finance Corp. and Trinity Universal Insurance Company, a

subsidiary of Kemper Corporation and an anchor investor in Fund V. Except as so stated,

Defendants deny the remaining allegations contained in Paragraph 115.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Defendants deny that they never terminated any relationship with NovaFund

since none of Defendants had any relationship with NovaFund.  Except as so stated,

Defendants deny the remaining allegations contained in Paragraph 120.

121.    Denied.

122.    Denied.

**Capitala Disregards the Corporate Form.**

123.    Denied.

124.    Defendants admit that the term Capitala Group is used Group is used as a

brand for marketing purposes. Except as so stated, Defendants deny the remaining

allegations contained in Paragraph 124.

125.    Defendants admit that the term Capitala Group is used as a brand for

marketing purposes.  The remaining allegations in Paragraph 125 purport to summarize

portions of website pages and SEC filings, the contents of which speak for itself.  To the

extent the allegations in Paragraph 125 differ in meaning, effect or implication from the

referenced documents, such allegations are denied.  Except as so stated, Defendants deny

the remaining allegations contained in Paragraph 125.

126.    The allegations in Paragraph 126 purport to summarize portions of the PPM,

the contents of which speak for itself.  To the extent the allegations in Paragraph 126 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 126.

127.    The allegations in Paragraph 127 purport to summarize press releases, the contents of which speak for itself.  To the extent the allegations in Paragraph 127 differ in meaning, effect or implication from the referenced documents, such allegations are denied. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 127.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Defendants admit that CGLLC signed the Term Sheet.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 134.

135.    The allegations in Paragraph 135 refer to the contents of documents which are not sufficiently identified, the contents of which speak for itself.  To the extent the allegations in Paragraph 135 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 135.

136.    Defendants admit that CGLLC was not the parent company to any other Capitala branded entity.  Except as so stated, Defendants deny the remaining allegations

contained in Paragraph 136.

137.    Denied.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Denied.

144.    The allegations in Paragraph 144 refer to the contents of documents which are not sufficiently identified, the contents of which speak for itself.  To the extent the allegations in Paragraph 144 differ in meaning, effect or implication from the referenced documents, such allegations are denied.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 144.

145.    Denied.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied.

150.    Denied.

151.    Defendants admit that CGLLC was dissolved effective June 9, 2020. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 151.

152.    The allegations in Paragraph 152 refer to the contents of a text message, the contents of which speak for itself.  To the extent the allegations in Paragraph 152 differ in

meaning, effect or implication from the referenced documents, such allegations are denied. Except as so stated, Defendants deny the remaining allegations contained in Paragraph 152.

153.    Denied.

## COUNT ONE
## BREACH OF CONTRACT
### (Against CGLLC, CPA and CIA)

154.    Defendants incorporate by reference and re-allege its responses to Paragraphs 1 through 153 above as if fully set forth herein.

155.    Denied.

156.    Denied.

157.    Denied.

158.    Denied.

159.    Defendants admit that NovaFund seeks declaratory relief.  The remaining allegations contained in Paragraph 159 state legal conclusions to which no response is required.  To the extent a response is required, denied.

160.    The allegations contained in Paragraph 160 state legal conclusions to which no response is required.  To the extent a response is required, denied.

161.    Denied.

## COUNT TWO
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DELAING
### (Against CGLLC, CPA and CIA)

162.    Defendants incorporate by reference and re-allege its responses to Paragraphs 1 through 161 above as if fully set forth herein.

163.    The allegations contained in Paragraph 163 state legal conclusions to which no response is required.  To the extent a response is required, denied.

164.   Denied.

165.   Denied.

166.   Denied.

## COUNT THREE
## UNJUST ENRICHMENT
### (Against All Defendants)

167.   Defendants incorporate by reference and re-allege its responses to Paragraphs

1 through 166 above as if fully set forth herein.

168.   Denied.

169.   Denied.

170.   Denied.

171.   Denied.

172.   Denied.

173.   Denied.

174.   Denied.

## COUNT FOUR
## FRAUD
### (Against CGLLC, CPA and CIA)

175.   Defendants incorporate by reference and re-allege its responses to Paragraphs

1 through 174 above as if fully set forth herein.

176.   Denied.

177.   Denied.

178.   Denied.

179.   Denied.

180.   Denied.

181.    Denied.

182.    Denied.

183.    Denied.

184.    Denied.

185.    Denied.

186.    Denied.

187.    Denied.

**COUNT FIVE**
**TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES OF CONTRACT**
**(Against All Defendants)**

188.    Defendants incorporate by reference and re-allege its responses to Paragraphs

1 through 187 above as if fully set forth herein.

189.    Denied.

190.    Denied.

191.    Denied.

192.    Denied.

193.    Denied.

194.    Denied.

195.    Denied.

196.    Denied.

197.    Denied.

198.    Denied.

199.    Denied.

200.    Denied.

201.    Defendants lack knowledge or information sufficient to form a belief as to when NovaFund completed its review of documents produced by CGLLC in discovery, and, therefore, leaves NovaFund to its proof.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 201.

202.    Defendants admit NovaFund sought leave to amend its complaint at various points in time.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 202.

## COUNT SIX
## UNFAIR AND DECEPTIVE PRACTICES
### (Against All Defendants)

203.    Defendants incorporate by reference and re-allege its responses to Paragraphs 1 through 202 above as if fully set forth herein.

204.    The allegations contained in Paragraph 204 state legal conclusions to which no response is required.  To the extent a response is required, denied.

205.    Denied.

206.    Denied.

207.    Denied.

208.    Denied.

209.    Denied.

210.    Defendants admit that CGLLC filed a lawsuit in North Carolina.  Except as so stated, Defendants deny the remaining allegations contained in Paragraph 210.

211.    Denied.

212.    Denied.

213.    Denied.

214.    Denied.

215.    Denied.

216.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 216, and, therefore, leaves NovaFund to its proof.

217.    Denied.

218.    Denied.

219.    Denied.

220.    The allegations contained in Paragraph 220 state legal conclusions to which no response is required.  To the extent a response is required, denied.

221.    Denied.

222.    Denied.

## PRAYER FOR RELIEF

Defendants deny that NovaFund is entitled to any relief, including, without limitation, the relief requested in paragraphs (a) through (k) in NovaFund's prayer for relief.

## AFFIRMATIVE DEFENSES

Defendants asserts the following affirmative defenses in response to NovaFund's Second Amended Complaint.  Nothing stated herein is intended or shall be construed as a concession that any particular issue or subject matter is relevant to NovaFund's allegations.

**FIRST AFFIRMATIVE DEFENSE**

NovaFund's Second Amended Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

NovaFund Advisors, LLC is not a real party in interest in that CGLLC did not enter into any contract or agreement with NovaFund Advisors, LLC.

**THIRD AFFIRMATIVE DEFENSE**

NovaFund lacks standing to assert the claims set forth in its Complaint.

**FOURTH AFFIRMATIVE DEFENSE**

NovaFund's claims are barred by the equitable doctrines of laches, waiver, estoppel, or unclean hands due to its own fraudulent and illegal conduct.

**FIFTH AFFIRMATIVE DEFENSE**

NovaFund's unjust enrichment and fraud claims are barred by the economic loss rule.

**SIXTH AFFIRMATIVE DEFENSE**

To the extent NovaFund is a proper party to the Term Sheet, NovaFund is barred from recovery due to its own material breaches of the Term Sheet including its failure to use best efforts to place partnership interests in Fund V and its representation of a competitor while providing placement agent services to CGLLC thereby creating a conflict of interest.

**SEVENTH AFFIRMATIVE DEFENSE**

NovaFund is barred from maintaining this action against Defendants because the Term Sheet upon which the action is based is illegal, void, unenforceable, and subject to rescission.

**EIGHTH AFFIRMATIVE DEFENSE**

NovaFund's claims are barred by the doctrine of credit or setoff.

**NINTH AFFIRMATIVE DEFENSE**

NovaFund's claims are barred as a result of its own fraud and illegality.

**TENTH AFFIRMATIVE DEFENSE**

NovaFund is not entitled to recover any fees for any alleged placement agent services since it is not a registered broker-dealer and is not affiliated with any registered broker-dealer.  Accordingly, its claim for placement agent fees is unlawful in violation of the Securities and Exchange Act of 1934.

**ELEVENTH AFFIRMATIVE DEFENSE**

NovaFund failed to mitigate its damages, if any.

**TWELFTH AFFIRMATIVE DEFENSE**

NovaFund's claims are barred to the extent they were not filed within the applicable statute of limitations.

**THIRTEENTH AFFIRMATIVE DEFENSE**

NovaFund's claims are barred because no contract was formed between it and CGLLC, and no terms were defined as there was no meeting of the minds, an essential element to contract formation.

## COUNTERCLAIM

In accordance with Rule 13 of the Federal Rules of Civil Procedure, Capitala Private Advisors ("CPA"), Capitala Investment Advisors ("CIA"), and Capitala Specialty Lending Corp. ("CSLC", collectively with CPA and CIA "Counterclaim Plaintiffs") hereby allege their counterclaim against NovaFund Advisors, LLC ("NovaFund") as follows:

## INTRODUCTION

1.      Counterclaim Plaintiffs all operate under the Capitala marketing brand platform, and along with other Capitala branded entities manage various types of investment funds and provide investment management advice to institutional investors, portfolio companies, and clients.

2.      In May 2016, Capitala Group, LLC executed a Term Sheet (as defined below) with "NovaFund Advisors, a division of Columbus Advisory Group, LTD, member FINRA and SIPC" to place partnership interests in Capitala Private Credit Fund V, L.P. ("Fund V"), a subordinated/mezzanine debt and common equity investment vehicle.

3.      While NovaFund Advisors, a division of Columbus Advisory Group, LTD was the party to the Term Sheet, NovaFund claims it was the party to the Term Sheet.

4.      NovaFund commenced this action against CGLLC in which NovaFund alleged it was the entity retained by CGLLC, even though the Term Sheet clearly indicated that CGLLC contracted with Columbus and that NovaFund Advisors was a division of Columbus and supervised by Columbus. CGLLC never entered into any contractual relationship with NovaFund, which is not a broker-dealer and therefore not licensed to perform the work contemplated by the Term Sheet, and doings so would be a violation of federal law.

5.      As of November 2016, NovaFund claimed it was a division of MD Global and that, upon information and belief, CGLLC's Term Sheet was assigned to MD Global.

6.      CGLLC fully performed its obligations under the Term Sheet.

7.      However, (i) NovaFund failed to make best efforts to place partnership interests in Fund V; (ii) accepted engagements from competitors of CGLLC to act as placement agent for competing funds also seeking debt and equity investments in lower middle market companies, similar to Fund V, breaching its promise of exclusive placement services to CGLLC, and (iii) provided introductions and opportunities for competitors and competing funds to the exclusion and detriment of Fund V.

8.      Despite its failures and breaches under the Term Sheet with CGLLC, including the failure to place any partnership interests in Fund V, NovaFund claims it is owed fees in connection with capital vehicles that are unrelated and dissimilar to Fund V, and that utilize a substantially different investment strategy than Fund V.

9.      Moreover, NovaFund claims it is entitled to fees pursuant to the Term Sheet entered into between CGLLC and NovaFund Advisors, a division of Columbus Advisory Group, LTD, member FINRA and SIPC, in perpetuity if any investor that was solicited in connection with Fund V ever invests with any Capitala branded entity unless such investor was on the carve out list.

10.      NovaFund also claims that Counterclaim Plaintiffs are responsible for the payment of fees pursuant to the Term Sheet even though Counterclaim Plaintiffs were not parties to the Term Sheet.

11.      Accordingly, Counterclaim Plaintiffs brings this counterclaim action seeking (i) a declaratory judgment that Counterclaim Plaintiffs are not required to pay NovaFund

any fees, and (ii) that the Term Sheet is an illegal and unenforceable contract for which

NovaFund cannot receive any fees.

## PARTIES AND JURISDICTION

12.     CIA is a limited liability company organized under the laws of Delaware with

a principal place of business in North Carolina.

13.     CPA is a limited liability company organized under the laws of Delaware

with a principal place of business in North Carolina.  CIA is the only member of CPA.

14.     CSLC is a corporation organized under the laws of Delaware, with its

principal place of business in North Carolina.  CPA is the sole shareholder of CSLC.

15.     Upon information and belief, Counterclaim-Defendant NovaFund Advisors,

LLC is a Delaware limited liability company with its principal place of business at 17 Old

Kings Highway, Suite 140, Darien, Connecticut 06820. Counterclaim Plaintiffs have

conducted a reasonable inquiry to determine the citizenship of NovaFund's members and

upon information and belief NovaFunds members are citizens of Delaware and

Connecticut.

## FACTUAL ALLEGATIONS

16.     In early 2016, CGLLC planned to launch a new credit fund to be known as

Capitala Private Credit Fund V, L.P. ("Fund V").

17.     CGLLC intended to hire a placement agent to assist in raising capital for

Fund V.

18.     The investment strategy for Fund V was opportunistic to invest primarily in

mezzanine loans and subordinated debt, along with equity co-investments.

19.     On May 9, 2016, CGLLC entered into a Term Sheet (the "Term Sheet") with "NovaFund Advisors, a division of Columbus Advisory Group, LTD, member FINRA and SIPC" to provide placement agent services for Fund V.

20.     The Securities and Exchange Act of 1934 ("the Act") and other state laws require that the placement agent activities contemplated by the Term Sheet be performed by a registered broker-dealer.

21.     In addition, fees for placement agent services must be paid to a broker-dealer pursuant to the Act.

22.     FINRA rules prescribe specific requirements regarding supervision by broker-dealers, including a written supervisory system to ensure all associated persons are properly qualified, compliance with rules and regulations applicable to broker-dealers, and various record retention requirements. FINRA also requires annual compliance meetings with all designated persons to discuss the relevant activities of the representative, as well as correspondence (internal and external) reviews.

23.     Prior to entering into the Term Sheet, NovaFund representatives repeatedly assured and promised CGLLC that they would not represent funds competitive with Fund V while engaged as a placement agent by CGLLC. For example, in promotional materials, NovaFund represented that "NovaFund aligns interests with clients – no conflicting strategies."

24.     NovaFund's representations regarding its intent to refrain from working with competitive funds while engaged by CGLLC were false at the time they were made. In fact, the day prior to signing the Term Sheet with CGLLC, NovaFund signed an agreement to

serve as a placement agent with a competitive fund. Moreover, the next month NovaFund signed up another competitive fund.

25.     In fact, NovaFund pressured CGLLC to enter into the Term Sheet earlier than it wanted and start making retainer payments under the guise that NovaFund was also considering other funds to work with which were competitive with Fund V and execution was necessary to prevent NovaFund from taking on a competitive mandate.

26.     The Term Sheet originally contained only two signature blocks: One for "NovaFund Advisors" and one for "Capitala Group, LLC."

27.     At no point during this exchange of signatures was there a block or signature for Columbus as a separate entity.

28.     After the Term Sheet was fully executed, the Term Sheet was altered by NovaFund and Columbus. Specifically, after CGLLC signed the agreement and and it was returned fully executed, representatives of NovaFund sent the fully executed Term Sheet to Columbus and NovaFund or Columbus added a third signature block—for Columbus Advisory Group, Ltd—to the fully-executed Term Sheet. The Chief Executive Officer of Columbus, Michael Murphy, then added his signature to the Term Sheet. Neither NovaFund nor Columbus provided CGLLC with this altered Term Sheet at the time of execution.

29.     Pursuant to the Term Sheet, it required NovaFund to use its best efforts to place partnership interests in Fund V with North American, European, Australian and Asian investors.

30.     Pursuant to the Term Sheet, NovaFund promised to provide "exclusive placement services," meaning NovaFund would not be engaged in providing placement

services for another fund focused primarily on debt investments targeting lower middle market and middle market companies and therefore competitive with Fund V.

31.     CGLLC agreed to pay a monthly retainer of $20,000, as well as a Success Fee equal to 1.5% of the amount of equity capital that Target Investors (as defined in the Term Sheet) committed to Fund V or a separately managed account associated with Fund V. The Term Sheet also allowed a tail fee, which provided a smaller fee, at the rate of 50 basis points, if an investor that NovaFund procured were to invest in Fund V and also commit equity capital to the next Capitala sponsored vehicle with a "substantially similar strategy" to Fund V.

32.     From the inception of its engagement, NovaFund's performance for CGLLC was inadequate. It provided little advice and made very few introductions to potential Fund V limited partners.

33.     For example, NovaFund failed to set up meetings at important industry conferences, and instead prioritized meetings with investors for the other competitive mandates NovaFund was representing.

34.     In February 2017, it was revealed that NovaFund was arranging meetings and introductions for one or more competing funds, to the detriment of Fund V, in direct violation of NovaFund's exclusive engagement with CGLLC. NovaFund also gave meetings Fund V was counting on at a Berlin conference to a competitor fund, to the exclusion of Fund V.

35.     When confronted with this conflict, NovaFund admitted that it was representing competing engagements, despite the promise of exclusivity to CGLLC.

36.     On or about April 24, 2017, CGLLC and NovaFund executed an Addendum to the Term Sheet ("Addendum"), which set forth additional agreements between the parties to the Term Sheet.

37.     NovaFund's performance did not improve, and it failed to use best efforts to place partnership interests in Fund V.

38.     NovaFund even took potential investor suggestions provided to it and arranged for capital commitments from those investors to funds that were in direct competition with Fund V.

39.     By September 2017, NovaFund completely abandoned Fund V and informed CGLLC that it was limiting its efforts to pursuing capital commitments from potential investors it had already introduced to CGLLC. In fact, no further efforts were made by NovaFund and NovaFund admits that it has not performed any work in connection with Fund V in years.

40.     Other than the anchor investors with whom NovaFund had no involvement, no other investors invested in Fund V. In short, NovaFund failed to bring any investors to the table that invested in Fund V or a separately managed account associated with Fund V.

41.     Nonetheless, despite its failures and breaches under the Term Sheet with CGLLC, including the failure to place any partnership interests in Fund V or a separately managed account associated with Fund V, NovaFund claims it is owed fees in connection with capital vehicles and contractual arrangements that are unrelated and dissimilar to Fund V, and that utilize a substantially different investment strategy than Fund V.

42.     For example, NovaFund claims it is entitled to a fee for a separate vehicle focused exclusively on investing in senior debt issued by lower middle market companies—a substantially different strategy than prior Capitala branded entity funds.

43.     This vehicle is not a "fund" nor is it associated with Fund V. Rather, CPA serves in a contractual sub-advisory capacity (pursuant to an investment advisory agreement) to an unaffiliated, third-party fund manager.

44.     NovaFund also claims it is entitled to fees for a joint venture between Capitala Finance Corp. and Trinity Universal Insurance Company, a subsidiary of Kemper Corporation, known as Capitala Senior Loan Fund II ("CSLF II") which is also not a "fund" nor a successor vehicle to Fund V.

45.     Moreover, NovaFund claims it is entitled to fees pursuant to the Term Sheet entered into between CGLLC and NovaFund Advisors, a division of Columbus Advisory Group, LTD, member FINRA and SIPC, in perpetuity if any investor that was solicited in connection with Fund V ever invests with any Capitala branded entity unless such investor was on the carve out list.

46.     The Term Sheet does not contemplate payment of fees to NovaFund for arrangements unrelated to Fund V as NovaFund now claims.

47.     NovaFund is not associated with any broker-dealer and therefore may not receive any placement agent fees.

## COUNTERCLAIM ONE
### Declaratory Judgment

48.     Under 28 U.S.C. § 2201, the Court has the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" where an actual controversy exists.

31

49.     An actual controversy exists between Counterclaim Plaintiffs and NovaFund concerning payment for fees under the Term Sheet as NovaFund claims it is entitled to fees from Counterclaim Plaintiffs pursuant to the Term Sheet even though Counterclaim Plaintiffs were not parties to the Term Sheet.

50.     Counterclaim Plaintiffs dispute that NovaFund has a right to fees from them and seeks resolution of such claims, including NovaFund's claim that it has a right to fees in perpetuity for any investor that was solicited for Fund V that may invest in a future Capitala branded entity vehicle unless such investor was on the carve out list.

51.     NovaFund's position is contrary to the terms of the Term Sheet and Addendum.

52.     Counterclaim Plaintiffs have no agreements or contractual relationship with NovaFund.

53.     Moreover, the Term Sheet upon which the action is based is illegal, void and unenforceable as a matter of law, and, by the actions of the parties, the Term Sheet has terminated.

54.     As a result of the foregoing, an actual controversy has arisen and now exists between Counterclaim Plaintiffs and NovaFund concerning their respective rights and duties under the Term Sheet, if any, including whether NovaFund is entitled to any fees pursuant to the Term Sheet, under what circumstances it is entitled to fees pursuant to the Term Sheet, and whether Counterclaim Plaintiffs are responsible for such fees.

55.     Counterclaim Plaintiffs desire a judicial determination of its rights and duties, if any, under the Term Sheet.

56.     A judicial declaration is necessary and appropriate at this time and under the

circumstances in order that Counterclaim Plaintiffs may ascertain its rights and duties.

**CLAIM FOR RELIEF**

WHEREFORE, Counterclaim Plaintiffs respectfully requests that the Court enter judgment in its favor against Counterclaim Defendants and grant the following relief:

1.      A declaratory judgment holding that Counterclaim-Defendant is not entitled to any fees under the Term Sheet or Addendum from Counterclaim Plaintiffs;

2.      A declaratory judgment holding that Counterclaim-Defendant is not entitled to any fees under the Term Sheet or Addendum;

3.      A declaratory judgment holding that the Term Sheet and Addendum are terminated and NovaFund is not entitled to any other fees under the Term Sheet or Addendum; and

4.      Such other relief as the Court may deem just and proper.

Respectfully submitted,

CAPITALA PRIVATE ADVISORS, LLC, CAPITALA INVESTMENT ADVISORS, LLC AND CAPITALA SPECIALTY LENDING CORP.

By:      /s/ Jonathan Shapiro ct24075
N. Kane Bennett and
Jonathan Shapiro of
Aeton Law Partners LLP
311 Centerpoint Drive
Middletown, CT 06475
T: 860-724-2160
F: 860-724-2161
nkb@aetonlaw.com
jms@aetonlaw.com
Its Attorneys

**CERTIFICATION**

I hereby certify that on the date set forth above a copy of the foregoing was served by CM/ECF and/or mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System

/s/Jonathan Shapiro ct24075
Jonathan Shapiro