# EXHIBIT 83

Page 277

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOVAFUND ADVISORS, LLC | : |
| | : |
| Plaintiff, | : |
| VS. | : |
| | : No. 3:16-cv-1023(MPS) |
| CAPITALA GROUP, LLC | : |
| | : |
| Defendant | : |

_____

| | |
|---|---|
| NO. X03-HHD-CV20-6138062-S | : |
| | : SUPERIOR COURT |
| NOVAFUND ADVISORS, LLC | : |
| | : |
| Plaintiff, | : COMPLEX LITIGATION DOCKET |
| VS. | : |
| | : |
| CAPITALA GROUP, LLC | : JUDICIAL DISTRICT OF |
| | : HARTFORD |
| Defendant | : |

_____

REMOTE VIDEO DEPOSITION OF MARK McANDREWS
VOLUME II

June 21, 2021

HELD AT:

35 East 85th Street
Apt 16-A
New York, New York 10028

Reporter:  Victoria L. Germani, CSR, RPR

Page 436

1  is that Capitala was badmouthing us everywhere in the business.
2  And it's not a huge community out there, you know.
3      Q.  Do you --
4      A.  I mean, some -- I started to say they were disparaging
5  us to replace tens of millions of dollars in funds to other
6  funds.  That has a damage.
7      Q.  I'm sorry?
8      A.  That has a damage associated with it, disparage to that
9  type of investing.
10     Q.  Well, you would agree with me that in 2018 -- Well,
11 withdrawn.
12         NovaFund is no longer an active entity; correct?
13         MR. CORP:  Objection.
14         THE WITNESS:  Pursuing new business for --
15 BY MR. SHAPIRO:
16     Q.  Correct.
17     A.  (No response.)
18     Q.  Is that correct?  No longer pursuing new business;
19 correct?
20     A.  That's correct.
21     Q.  Okay.  And at least in 2018, isn't it correct that
22 the -- all the principals and those involved with NovaFund went
23 their separate ways to do their own -- their own work
24 elsewhere; correct?
25         MR. CORP:  Objection.

Page 437

1          THE WITNESS:  And people were -- were leaving,
2     yes.
3     BY MR. SHAPIRO:
4        Q.  And that occurred sometime around mid-2018; correct?
5        A.  Sometime in 2018.
6        Q.  Why were people leaving sometime in 2018?
7           MR. CORP:  Objection.
8           THE WITNESS:  You know, I think that their view
9     was that Nova at that point had a damaged name, and it
10    was difficult to -- to garner new mandates for
11    fundraising.
12    BY MR. SHAPIRO:
13       Q.  What mandates are you aware of that NovaFund solicited
14    -- new mandates that NovaFund solicited in 2017?
15       A.  Again, I'd have to go back and look at what mandates we
16    were pursuing.  So I can't name anything specific.
17       Q.  All right.  Are you aware of any mandates as you sit
18    here today that Nova was pursuing in 2017?
19       A.  Again, I'm sure we were pursuing things.  I'd have to
20    go back and look and see what -- which ones we were --
21       Q.  I understand you're --
22       A.  -- yes.
23          THE REPORTER:  Excuse me.
24    ///
25    ///

1       THE WITNESS:  Yeah, I'm not sure what you mean by
2    that.  I mean, you know, we were expecting, you know,
3    the fund size was -- you know, the fund goal was
4    somewhere from 300 to 350 million.
5       You know, we knew what the -- you know, what the
6    carve-out cap was.  So that -- that was the basis --
7    you know, that's sort of the basis of our analysis.
8    You know, that -- you know, first-time fund, you
9    couldn't expect that fund to raise, you know, 500
10   million, 600 million; that, you know, most likely it
11   would be a smaller fund, you know.
12      But that was kind of the basis of putting that
13   number together.
14  BY MR. SHAPIRO:
15     Q.  But -- So is it fair to say you just assumed that that
16  minimum number would have been hit?
17      MR. CORP:  Objection.
18      THE WITNESS:  You know, a number -- a number
19   around that size, yes.
20  BY MR. SHAPIRO:
21     Q.  Right.  And so again, how did you make that
22  determination that there would have been $300 million in
23  commitments in Fund V, but for this alleged conduct?
24     A.  You know, again, we thought that this was a fund that
25  could have hit their target, you know.

Page 546

1       And it's a fund that -- on pretty strong conviction on
2   their part put a big carve-out list in; and was, you know,
3   satisfied with $125 million that they could contribute from
4   that.
5       Now, that's -- that's an enormous -- you know, that's
6   an enormous number for a first-time fund, you know, for, you
7   know, private -- trying to get your feet wet.  And that would
8   be a momentum-building thing.
9       So we felt, you know, pretty confident if we got to
10  that point if, in fact, they could deliver on the carve-out
11  numbers, they said they had good investors -- or good
12  relationships with -- that this would be a fundraise that
13  actually could have gotten -- could have gotten to somewhere
14  around the 300 million, somewhere where they wanted to get to
15  for a -- for a first fund.
16    Q.  Well, I understand that.  And let me kind of put it in
17  its context, because I know what you expected at the time you
18  entered into the term sheet and what you thought was possible.
19       But again, going back to -- when you did this damages
20  analysis, when you prepared this report outlining what the
21  damages are; what evaluation did you do, if any, to reach the
22  conclusion -- knowing all the challenges that you have now as
23  you sit here today -- and I'm talking about the challenges
24  about Fund V itself with it being a first time fundraise, with
25  the feedback in the marketplace, and all the things we've

Page 663

1          CERTIFICATE OF REPORTER

2       I, Victoria L. Germani, RPR, LSR, and Notary Public

3    duly commissioned and qualified within and for the State of

4    Connecticut; do hereby certify that pursuant to Notice there

5    appeared before me on June 21, 2021, at [!JOB START TIME] the

6    following named person, to wit: MARK McANDREWS, who was by me

7    duly sworn to testify to the truth and nothing but the truth;

8    that he/she was thereupon carefully examined upon his/her oath;

9    and his/her examination reduced to writing under my

10   supervision; and that the deposition is a true record of the

11   testimony given taken to the best of my ability.

12       I further certify that I am neither attorney nor

13   counsel for, nor related to nor employed by any of the parties

14   to the action in which this deposition is taken; and further

15   that I am not a relative or employee of any attorney or counsel

16   employed by the parties hereto, or financially interested in

17   the action.

18       IN WITNESS THEREOF, I have hereunto set my hand this

19        7th day of July, 2021.



       Victoria L. Germani, Notary Public

       My Commission expires April 30, 2025